Honorable Jim Rogers
Friday, January 26, 2024

**SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

| | |
|---|---|
| TATYANA LYSYY, VASILIY LYSYY, et al., ) | NO.  22-2-11294-8 KNT |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **DECLARATION OF** |
| ) | **RICHARD L. POPE, JR.** |
| DEUTSCHE BANK NATIONAL TRUST ) | |
| COMPANY and DEUTSCHE BANK NATIONAL) | |
| TRUST COMPANY, as Trustee etc., et al., ) | |
| ) | |
| Defendants. ) | |

1.      I am Richard L. Pope, Jr., attorney for Plaintiffs Tatyana Lysyy and Vasiliy Lysyy. I am over the age of 18 years and competent to testify to the facts herein.

2.      Exhibit 1 (Pages 2-7) is a true and correct copy of a promissory note (entitled "Adjustable Rate Note"), dated November 9, 2006 in the amount of $249,500.00, payable to "***PMC Bancorp (a California corporation)***", executed by Debtor Tatyana Lysyy.  The last page of the document (presumably the back side of the final page) contains two undated special indorsements, each assigning the note to "***Impac Funding Corporation***".

3.      Exhibit 2 (Pages 9-29) is a true and correct copy of a Deed of Trust, executed by Tatyana Lysyy and Vasiliy Lysyy on November 13, 2006, granting a security interest in favor of "***Mortgage Electronic Registration Systems***" ("MERS") as Beneficiary, against a King County, Washington property located at 12921 SE 318th Way, Auburn, WA 98092 (the "Property"), to secure the $249,500.00 promissory note dated November 9, 2006.  This Deed of Trust was recorded with the King County Recorder on November 17, 2006, file number 20061117002321.

DECLARATION OF RICHARD L. POPE, JR. -- 1

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

4.     Exhibit 3 (Page 31) is a true and correct copy of an Assignment of Deed of Trust, executed by MERS on September 14, 2011, which assigned the previously referenced Deed of Trust  (King County recording 20061117002321) to "***Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement relating to IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates Series 2007-1***" ("Trust # 1") as Beneficiary.  This Assignment of Deed of Trust was recorded with the King County Recorder on September 19, 2011, file number 20110919000413.  I have searched the records, including the index, of the King County Recorder and no further assignments of this 2006 Deed of Trust are recorded.

5.     Exhibit 4 (Pages 33-36) is a true and correct copy of a Notice of Trustee's Sale, executed on June 8, 2023 on behalf of an entity different than listed in the previous paragraph, namely "***Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1***". ("Trust # 2") This Notice of Trustee's Sale purported to announce an October 20, 2023 sale date for the Property to satisfy obligations allegedly owed on the November 9, 2023 Promissory Note and allegedly secured by the Deed of Trust recorded on December 17, 2006 (actually held by a different trust entity as Beneficiary).  This Notice of Trustee's Sale was recorded with the King County Recorder on June 9, 2023, file number 20230609000151.

6.     Exhibit 5 (Pages 38-40) is a true and correct copy of an opinion and decision entered by the United States District Court for the District of Nevada, 2:16-cv-00536-MMD-GWF on March 18, 2019.  This decision involved a deed of trust also held under this same name "***Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement relating to IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates Series 2007-1***" (Trust # 1) as Beneficiary, and held that a Deutsche Bank trust entity, with name basically identical to Trust # 2, had no standing to enforce the deed of trust.  This decision is binding against Deutsche Bank and their purported trust entity in this action, under doctrines of res judicata and collateral estoppel, as the party suffering adverse action is identical to Trust # 2 here.  There were no appeals from the March 18, 2019 decision and it is final.

DECLARATION OF RICHARD L. POPE, JR. -- 2

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

7.    This lawsuit was originally filed on July 20, 2022, and is presently set for trial on May 20, 2024.  Trust # 2 and its servicer Select Portfolio Servicing Inc. ("SPS") have not filed any counterclaims, or summary judgment motions seeking to adjudicate Plaintiff's claims.

8.    SPS, as required by loan servicers of loans that are delinquent when acquired, is a collection agency licensed by the Washington Department of Licensing, as required under RCW 19.16.100.  Exhibit 6 (Pages 42-44) is a printout from the Washington Department of Revenue website, showing SPS has held the required collection agency license since September 3, 1999.

9.    The Lyssy's believe that SPS has committed a number of practices prohibited by RCW 19.16.250 in the servicing and collection attempts on this loan.  If the Lysyy's are correct, then RCW 19.16.450 will result in SPS and its client Deutsche Bank forfeiting all right to interest or other charges on this loan, and will be able to collect only the principal amount.

10.    The most egregious unlawful act by SPS was committed a few days after Tatyana Lysyy filed Chapter 13 in Case No. 19-13736 on October 11, 2019, which granted Tatyana Lysyy (and spouse) an automatic stay against almost all adverse actions by a creditor.

11.    Exhibit 7 (Pages 46-48) is the official Notice of Chapter 13 Bankruptcy Case issued by the U.S. Bankruptcy Court for the Western District of Washington in Case No. 19-13736, along with a Certificate of Notice by the Bankruptcy Noticing Center, stating that SPS was notified by electronic transmission, to jennifer.chacon@spservicing.com (the SPS designated service method) on October 12, 2019 at 01:56:30, of this bankruptcy filing.

12.    Even though SPS had notice through several different means of Debtor's bankruptcy filing, SPS unlawfully took possession of the Lyssy's property on October 15, 2019, changed the locks to the property, posted "No Trespassing Signs", and threatened the Lyssy's with criminal trespassing charges if they entered their own property.  SPS sent the Lyssy's a letter, stating that eviction proceedings were being filed against them, and that they would be billed for the costs of these eviction proceedings.  SPS then billed the Lyssy's $700.00 for the costs of these purported eviction proceedings.  SPS has maintained "No Trespassing" signs on the Lyssy's property to this very day, and has never formally restored possession to the Lyssy's.

DECLARATION OF RICHARD L. POPE, JR. -- 3

13.     Exhibit 8 (Pages 50-62) is a collection of documents and images relating to SPS's illegal seizure of the Lysyy's home in October 2019 and their continued dominion and control to the present.  This includes the October 16, 2019 letter threatening eviction, a November 11, 2019 billing of the Lysyy's for $700.00 in eviction fees, various photographs of the lockbox and "No Trespassing" notice placed on the Lysyy's property, and a May 2, 2022 e-mail from McCarthy Holthus, lawyers for SPS and Deutsche Bank, showing continued control over the lockbox.

14.     In Jordan v. Nationstar Mortgage, LLC, 185 Wn.2d 876, 374 P.3d 1195 (2016), the Washington Supreme Court held that it was illegal for a lender to seize residential property when the mortgage loan was delinquent.  The Jordan court held that a lender could only takeover possession once 20 days had passed since an actual trustee sale, and then only by voluntary relinquishment by the former owner or by execution of unlawful detainer writ of restitution.

15.     These actions of SPS and Deutsche Bank appear to violate RCW 19.16.250(16) by threatening eviction (and also illegally threatening the Lysyy's against retaking their property), an action which could not legally be taken at the time, and also to violate RCW 19.16.250(15) and RCW 19.16.250(21), by attempting to collect a charge which could not legally be imposed against the Lysyy's, namely the $700.00 fee for the unauthorized "eviction" action.

16.     The Lysyy promissory note (Exhibit 1, Pages 2-7) is interest only, with the $249,500.00 principal due as a balloon payment on maturity on December 1, 2036.  If all interest and other charges (except for principal) are forfeited under RCW 19.16.450, then the Lysyy's would not be delinquent on their payments, since nothing would be due if no interest is allowed to be charged, and would owe nothing until their December 1, 2036 balloon payment.

17.     The seizure of the Lysyy property by SPS and Deutsche Bank on October 15, 2019 violated the bankruptcy automatic stay imposed under 11 U.S.C. 362 as well.

18.     Tatyana Lysyy was forced into an emergency bankruptcy filing due to serious violations of Consumer Financial Protection Bureau (CFPB) regulations by SPS and Trust # 2.

19.     On April 5, 2023, SPS invited Tatyana Lysyy to file a foreclosure loss mitigation assistance review application, to stop the pending May 19, 2023 sale. (Exhibit 9, Pages 64-67)

DECLARATION OF RICHARD L. POPE, JR. -- 4

20.     On April 7, 2023, Tatyana Lysyy filed a foreclosure loss mitigation assistance review application with SPS.  Exhibit 10 (Pages 69-70), is the cover letter for the application. (The remaining materials consisted of numerous personal financial documents, not relevant at the present time, which would require extensive redaction.)  This was more than 37 days before the prior May 19, 2023 foreclosure sale scheduled date.  We assume this was the reason why SPS and Trust # 2 cancelled the prior May 19, 2023 sale date (King County # 20230424000628).

21.     Under CFPB regulations, 12 CFR 1024.41 loan servicers must not start foreclosure proceeding if an application is pending for a loan modification or other alternative to foreclosure.

22.     SPS violated these CFPB regulations by unlawfully starting a new foreclosure proceeding on June 9, 2023 (Exhibit 4, Pages 33-36), which set a sale date for October 20, 2023. No such action should have been taken while April 7, 2023 application was still pending.

23.     On September 14, 2023 (Exhibit 11, Pages 72-73), SPS sent Tatyana Lysyy a letter rejecting her loss mitigation assistance review application.  This letter gave Tatyana Lysyy 30 days to appeal this decision, and further promised that no foreclosure sale would be conducted during the 30 days allowed to appeal, plus the time required for consideration of the appeal.  The SPS letter specifically promised Tatyana Lysyy, inter alia:  "***If a foreclosure sale has already been scheduled we will instruct our attorney to file a motion to postpone such sale.***"  The September 14, 2023 letter from SPS also claimed the loss mitigation assistance review application was somehow incomplete, but did not specify which required materials were absent.

24.     Tatyana Lysyy filed a timely appeal on October 10, 2023 (Exhibit 12, Pages 75-77).  SPS acknowledged the appeal on October 16, 2023 (Exhibit 13, Page 79, and promised that a decision would be made on the appeal within 30 days.  To date, no decision on the appeal has been communicated to Tatyana Lysyy.

25.     Unfortunately, in addition to violating CFPB regulations by first start a new foreclosure proceeding on June 9, 2023, while the April 7, 2023 loss mitigation application was still pending, and further failing to postpone the already unlawful October 20, 2023 sale date while Tatyana Lysyy's appeal of the loss mitigation denial was still pending, SPS also

DECLARATION OF RICHARD L. POPE, JR. -- 5

misrepresented in their September 14, letter (Exhibit 11, Pages 72-73) to Tatyana Lysyy saying they would instruct the foreclosure trustee to postpone the October 20, 2023 sale.

26.    Tatyana Lysyy discovered the definitive falsity of the SPS misrepresentations and that the foreclosure sale was still scheduled for October 20, 2023.   This left Tatyana Lysyy no practical alternative other than filing an emergency Chapter 13 bankruptcy petition in Case No. 23-41811-BDL to protect herself from these unlawful actions.

27.    SPS and Trust # 2 instructed the foreclosure trustee continue the foreclosure sale until February 9, 2024 as the result of the Chapter 13 bankruptcy petition filing.

28.    Also, none of the last three letters from SPS to Tatyana Lysyy – April 5, 2023 (Exhibit 9, Pages 64-67); September 14, 2023 (Exhibit 11, Pages 72-73); and October 16, 2023 (Exhibit 13, Page 79) – contain the licensed street address at which SPS hold its collection agency license.  That address, from the DOR website printout, happens to be 3217 S DECKER LK DR, WEST VALLEY CITY UT 84119 – but that appears nowhere on the SPS letters.

29.    These omissions violate RCW 19.16.250(8)(a), requiring all communications from a collection agency to contain the "name of the licensee and the city, street, and number at which he or she is licensed to do business".  These violations of RCW 19.16.250(8)(a) would be an additional reason to strip the loan down to principal only pursuant to RCW 19.16.450.

## Declaration

I declare under penalty of perjury under the laws of the State of Washington that the above and foregoing facts are true and correct to the best of my knowledge and belief.

Signed at Bellevue, Washington this 29th day of December 2023.

/s/ *Richard L. Pope, Jr.*
RICHARD L. POPE, JR.
WSBA # 21118
Attorney for Plaintiffs

Lake Hills Legal Services P.C.
15600 N.E. 8th Street, Suite B1-358
Bellevue, Washington  98008
Tel:  (425) 829-5305
Fax: (425) 526-5714
E-Mail:  rp98007@gmail.com

DECLARATION OF RICHARD L. POPE, JR. -- 6

EXHIBIT 1

EXHIBIT 1

MIN: ███████████        Loan Number: █████████

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

NOVEMBER 9, 2006            CITY OF INDUSTRY        CALIFORNIA
[Date]                      [City]                  [State]

12921 SOUTHEAST 318TH WAY, AUBURN, WASHINGTON 98092
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $249,500.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is PMC BANCORP, A CALIFORNIA CORPORATION (CFL # 603 8012).
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.375 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st    day of each month beginning on JANUARY 1    , 2007        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 1, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 17800 CASTLETON ST., #488
CITY OF INDUSTRY, CALIFORNIA 91748
                                    or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $1,556.56        . This amount may change. ** See attached Interest Only Note Addendum.

---

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                    Page 1 of 5

DocMagic eForms  800-649-1362
www.docmagic.com

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st    day of DECEMBER, 2011    , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND 750/1000                                    percentage point(s) (    2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than            9.375 % or less than        3.375 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE AND 000/1000                              percentage point(s) (        1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than        12.375 %. My interest rate will never be less than     2.750%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

---

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                    Page 2 of 5

*DocMagic* *eForms*  800-649-1362
*www.docmagic.com*

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations,

---

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                          Page 3 of 5

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

Us5520.ect-a

Page 4 of 79

Case 23-41811-BDL    Doc 15-1    Filed 11/01/23    Ent. 11/01/23 14:01:22    Pg. 4 of 36

including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                                             Page 4 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us5520.not:a

Page 5 of 79
Case 23-41811-BDL    Doc 15-1    Filed 11/01/23    Ent. 11/01/23 14:01:22    Pg. 5 of 56

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)       _____ (Seal)
TATYANA LYSYY     -Borrower                                    -Borrower

_____ (Seal)       _____ (Seal)
-Borrower                                       -Borrower

_____ (Seal)       _____ (Seal)
-Borrower                                       -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                Page 5 of 5

DocMagic *eForms*  800-649-1362
www.docmagic.com

PAY TO THE ORDER OF

WITHOUT RECOURSE
IMPAC FUNDING CORPORATION

BY:
LUIS DURON, AUTHORIZED SIGNATORY

WITHOUT RECOURSE, PAY TO THE ORDER OF
IMPAC FUNDING CORPORATION

BY: PMC BANCORP
A CALIFORNIA CORPORATION
YVONNE RAZO
Asst. Vice President

EXHIBIT 2

EXHIBIT 2

20061117002321.001

After Recording Return To:
PMC BANCORP
17800 CASTLETON ST., #488
CITY OF INDUSTRY, CALIFORNIA 91748

**20061117002321**
THE TALON GROU DT
PAGE001 OF 021                    53.00
11/17/2006 15:55
KING COUNTY, WA

[Space Above This l

Loan Number: ▋▋▋▋▋▋▋▋▋

MIN: ▋▋▋▋▋▋▋▋▋▋▋▋

**DEED OF TRUST**

21/54
Talon Group
906218

A division of First
American Title Insurance
Company

Grantor(s) (Last name first, then first and initials):
1. LYSYY, TATYANA
2. LYSYY, VASILIY
3.
4.
5.
6.
☐  Additional names on page        of document.

Grantee(s) (Last name first, then first and initials):
1. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS)
2.
3. PMC BANCORP
4.
5.
6.
☐  Additional names on page        of document.

Legal Description (abbreviated: i.e., lot, block, plat or section, township, range):

LOT 30, RAINIER RIDGE AV. NO. II

Full legal description on page    3    of document.

Assessor's Property Tax Parcel(s) or Account Number(s): ~~713790-0300~~

Reference Number(s) Assigned or Released:    713791-0300

☐  Additional references on page        of document.

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                        Page 1 of 16

DocMagic *eFarms* 800-649-1362
www.docmagic.com

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A)    "Security Instrument" means this document, which is dated  NOVEMBER 9, 2006   , together
with all Riders to this document.
(B)    "Borrower" is   TATYANA LYSYY   AND VASILIY LYSYY, HUSBAND AND
WIFE

Borrower is the trustor under this Security Instrument.
(C)    "Lender" is   PMC BANCORP

Lender is a   CALIFORNIA CORPORATION                                    organized
and existing under the laws of   CALIFORNIA
Lender's address is   17800 CASTLETON ST., #488, CITY OF INDUSTRY,
CALIFORNIA 91748

(D)    "Trustee" is   THE TALON GROUP
11400 SE 8TH STREET, SUITE 250, BELLEVUE, WASHINGTON 98004

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under
this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address
and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)    "Note" means the promissory note signed by Borrower and dated  NOVEMBER 9, 2006  .
The Note states that Borrower owes Lender   TWO HUNDRED FORTY-NINE THOUSAND
FIVE HUNDRED AND 00/100    Dollars (U.S. $ 249,500.00      ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
DECEMBER 1, 2036                  .
(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I)     "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following
Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider        [ ] Planned Unit Development Rider
[ ] Balloon Rider                [ ] Biweekly Payment Rider
[ ] 1-4 Family Rider             [ ] Second Home Rider
[ ] Condominium Rider            [x] Other(s) [specify]    INTEREST ONLY
                                     ADDENDUM TO RIDER

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

---

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                                Page 2 of 16

DocMagic *e⨍⨍orⓜⓢ* 800-649-1362
*www.docmagic.com*

Order:               Search Doc: KC:2006 20061117002321                Created By: eemunoz   Printed: 6/16/2015 10:35:42 AM PST

(K)    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "**Escrow Items**" means those items that are described in Section 3.

(N)    "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|          | COUNTY          | of   |   KING          |   |
|----------|-----------------|------|-----------------|---|
|          | [Type of Recording Jurisdiction] |    | [Name of Recording Jurisdiction] |   |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 713790-0300

which currently has the address of          12921 SOUTHEAST 318TH WAY
                                                                        [Street]

AUBURN                          , Washington 98092 ("Property Address"):
[City]                                            [Zip Code]

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                          Page 3 of 16

DocMagic *eⓇForms* 800-649-1362
www.docmagic.com

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                          Page 4 of 16

DocMagic *eFores* 800-549-1362
www.docmagic.com

20061117002321.005

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall

20061117002321.006

be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                    Page 6 of 16

*DocMagic* ☎ 800-649-1362
*www.docmagic.com*

insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                                    Page 7 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

20061117002321.008

the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage

substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the

20061117002321.010

repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original

20061117002321.011

Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  **Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  **Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                              Page 11 of 16

*DocMagic* ☎ 800-649-1362
*www.docmagic.com*

20061117002321.012

required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                    Page 12 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

20061117002321.013

acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental

or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.**

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. **Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Use of Property.** The Property is not used principally for agricultural purposes.

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                                    Page 14 of 16

DocMagic *eFormss* 800-649-1362
www.docmagic.com

20061117002321.015

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

 

_____ (Seal)
TATYANA LYSYY                    -Borrower

_____ (Seal)
VASILIY LYSYY                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____          _____
Witness                           Witness

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                              Page 15 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

Order: _____ Search Doc: KC:2006 20061117002321        Created By: eemunoz   Printed: 6/16/2015 10:35:43 AM PST

State of Washington                )
County of    KING                  )

    On this day personally appeared before me    TATYANA LYSYY , VASILIY LYSYY

                                                                          , to me known to be the individual or individuals described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

    Given under my hand and official seal this  13  day of November 2006.

Notary Public in and for the state of Washington, residing at: King County

(Seal)

My commission expires: 3-10-09

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                           Page 16 of 16

DocMagic €\F@rms\ 800-649-1362
www.docmagic.com

MIN: ███████████      Loan Number: ██████████

# ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS ADJUSTABLE RATE RIDER is made this 9th day of NOVEMBER, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure the Borrower's Adjustable Rate Note (the "Note") to  PMC BANCORP, A
CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

12921 SOUTHEAST 318TH WAY, AUBURN, WASHINGTON 98092

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of       6.375 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the 1st   day of  DECEMBER, 2011 ,
and may change on that day every sixth month thereafter.  Each date on which my interest rate could change
is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the
six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for
six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*.
The most recent Index figure available as of the first business day of the month immediately preceding the
month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon
comparable information.  The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index          DocMagic *eFmmms* 800-649-1362
(Assumable During Life of Loan) (First Business Day Lookback)          *www.docmagic.com*
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5120 3/04                          Page 1 of 3

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 750/1000 percentage point(s) ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.375 % or less than 3.375 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.375 %. My interest rate will never be less than 2.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5120 3/04                    Page 2 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

2006111700232l.019

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

THE PROVISIONS CONTAINED IN THE "ADDENDUM TO THE RIDER", SIGNED BY ALL BORROWERS NAMED HEREIN, ARE HEREBY INCORPORATED INTO SHALL AMEND AND SUPPLEMENT THIS RIDER

_____ (Seal)                    _____ (Seal)
TATYANA LYSYY          -Borrower                    VASILIY LYSYY          -Borrower

_____ (Seal)                    _____ (Seal)
                       -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                       -Borrower                                          -Borrower

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index         DocMagic *Zforms* 800-649-1362
(Assumable During Life of Loan) (First Business Day Lookback)           www.docmagic.com
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5120 3/04                          Page 3 of 3

2006**1**117002321.020

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

Loan Number: ███████████

Property Address: 12921 SOUTHEAST 318TH WAY, AUBURN, WASHINGTON 98092

**THIS ADDENDUM** is made this 9th day of NOVEMBER 2006  and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as the Addendum executed by the undersigned and payable to PMC BANCORP

(the "Lender").

**THIS ADDENDUM** supersedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(C) Calculations of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 750/1000         percentage point(s) (2.750      %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the first     TEN     ( 10  ) years after loan closing ("interest-only period"), the Note Holder will determine the amount of the monthly payment that would be sufficient to pay accrued interest on the unpaid principal balance. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the interest-only period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the interest-only period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower unpaid principal balance.

At the end of the interest-only period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal balance that I am expected to owe in substantially equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the interest-only period, my payment amount will not be adjusted due to voluntary principal payments.

DATED: *11.13.06*

_____
TATYANA LYSYY

_____
VASILIY LYSYY

_____          _____

_____          _____

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 45 08/26/04

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

20061117002321.021

Loan Number: ████████████

Date: NOVEMBER 9, 2006

Property Address:  12921 SOUTHEAST 318TH WAY, AUBURN, WASHINGTON 98092

## EXHIBIT "A"

### LEGAL DESCRIPTION

#### Exhibit "A"

Real property in the  County of King, State of Washington, described as follows:

LOT 30, RAINIER RIDGE DIVISION NO. II, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME
164 OF PLATS, PAGES 64 THROUGH 66, RECORDS OF KING COUNTY, WASHINGTON.

Tax Parcel Number: 7137910300

A.P.N. # : 713790-0300

DocMagic eForms  800-649-1362
www.docmagic.com

EXHIBIT 3

**Electronically Recorded**
**20110919000413**

INGEO SYSTEMS INC          ADT          14 00
Page 001 of 001
09/19/2011 10:26
King County, WA

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

This space for Recorder's use

Recording Requested By:
**Bank of America**
Prepared By:
**Cecilia Rodriguez**
**888-603-9011**
**450 E. Boundary St.**
**Chapin, SC 29036**

Tax ID:    713791-0300

Property Address:
12921 SE 318TH WAY
Auburn, WA 98092
WA0-ADT

MIN #                              MERS Phone #:  888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300
S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto
**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER THE POOLING AND**
**SERVICING AGREEMENT RELATING TO IMPAC SECURED ASSETS CORP., MORTGAGE**
**PASS-THROUGH CERTIFICATES, SERIES 2007-1** whose address is 19500 JAMBOREE RD3RD,
IRVINE, CA 92612 all beneficial interest under that certain Deed of Trust described below together with
the note(s) and obligations therein described and the money due and to become due thereon with interest and
all rights accrued or to accrue under said Deed of Trust.

Original Lender:           **PMC BANCORP**
Made By:                   **TATYANA LYSYY AND VASILIY LYSYY, HUSBAND AND WIFE**
Original Trustee:          **THE TALON GROUP**
Date of Deed of Trust:     **11/9/2006**
Original Loan Amount:      **$249,500.00**
Recorded in King County, WA on: 11/17/2006, book N/A, page N/A and instrument number
20061117002321
Property Legal Description:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
9/14/11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____
**Bud Kamyabi, Assistant Secretary**

State of California
County of Ventura

On 9/14/11 before me, _____, Notary Public, personally
appeared Bud Kamyabi, who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____
My Commission Expires: _____          (Seal)

DESIREE CARSON
Commission # 1873687
Notary Public - California
Ventura County
My Comm. Expires Dec 19, 2013

# EXHIBIT 4

Instrument Number: 20230609000151  Document:NTS Rec: $206.50 Page-1 of 4
Record Date:6/9/2023 8:51 AM
Electronically Recorded  King County, WA

WHEN RECORDED MAIL TO:
**QUALITY LOAN SERVICE CORPORATION**
**F/K/A QUALITY LOAN SERVICE**
**CORPORATION OF WASHINGTON**
**108 1st Ave South, Suite 450**
**Seattle, WA 98104**

Trustee Sale No.: **WA-15-675789-SW**
Title Order No.:  **150165623-WA-MSI**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

Pursuant to the Revised Code of Washington 61.24, et seq.

Reference Number of Deed of Trust: **Instrument No. 20061117002321**
Parcel Number(s): **713791-0300-08**
Grantor(s) for Recording Purposes under RCW 65.04.015: **TATYANA LYSYY AND VASILIY LYSYY,**
**HUSBAND AND WIFE**
Current Beneficiary of the Deed of Trust and Grantee (for Recording Purposes under RCW 65.04.015):
**Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured**
**Assets Corp. Mortgage Pass-Through Certificates Series 2007-1**
Current Trustee of the Deed of Trust: **QUALITY LOAN SERVICE CORPORATION F/K/A**
**QUALITY LOAN SERVICE CORPORATION OF WASHINGTON**
Current Loan Mortgage Servicer of the Deed of Trust: **Select Portfolio Servicing, Inc.**

I.      **NOTICE IS HEREBY GIVEN** that QUALITY LOAN SERVICE CORPORATION F/K/A
QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, the undersigned Trustee, will on
**10/20/2023**, at **9:00 AM At the Main Entrance to the King County Administration Building, 500 4th**
**Avenue, Seattle, WA 98104** sell at public auction to the highest and best bidder, payable in the form of credit
bid or cash bid in the form of cashier's check or certified checks from federally or State chartered banks, at the
time of sale the following described real property, situated in the County of **KING**, State of **Washington,** to-
wit:

**LOT 30, RAINIER RIDGE DIVISION NO. II, ACCORDING TO THE PLAT THEREOF**
**RECORDED IN VOLUME 164 OF PLATS, PAGES 64 THROUGH 66, RECORDS OF KING**
**COUNTY, WASHINGTON.**

More commonly known as: **12921 SE 318TH WAY, AUBURN, WA 98092**

Subject to that certain Deed of Trust dated **11/9/2006**, recorded **11/17/2006**, under **Instrument No.**
**20061117002321** records of **KING** County, **Washington**, from **TATYANA LYSYY AND VASILIY**
**LYSYY, HUSBAND AND WIFE**, as grantor(s), to **THE TALON GROUP**, as original trustee, to secure an
obligation in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE**
**FOR PMC BANCORP, ITS SUCCESSORS AND ASSIGNS**, as original beneficiary, the beneficial interest
in which was subsequently assigned to **Deutsche Bank National Trust Company, as trustee, on behalf of**
**the holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1**, the
Beneficiary, under an assignment recorded under Auditors File Number **20110919000413**

II.    No action commenced by the Beneficiary of the Deed of Trust as referenced in RCW 61.21.030(4) is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.    The default(s) for which this foreclosure is made is/are as follows: Failure to pay when due the following amounts which are now in arrears: **$259,237.30**.

IV.    The sum owing on the obligation secured by the Deed of Trust is: The principal sum of **$249,500.00**, together with interest as provided in the Note from **3/1/2010** on, and such other costs, fees, and charges as are due under the Note, Deed of Trust, or other instrument secured, and as are provided by statute.

V.    The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on **10/20/2023**. The defaults referred to in Paragraph III must be cured by **10/9/2023** (11 days before the sale date), or by other date as permitted in the Note or Deed of Trust, to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before **10/9/2023** (11 days before the sale), or by other date as permitted in the Note or Deed of Trust, the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashiers or certified checks from a State or federally chartered bank. The sale may be terminated any time after the **10/9/2023** (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.    A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower(s) and Grantor(s) by both first class and certified mail, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting. The list of recipients of the Notice of Default is listed within the Notice of Foreclosure provided to the Borrower(s) and Grantor(s). These requirements were completed as of **5/22/2017**.

VII.    The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.    The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.    Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.    NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME.**

You may be eligible for mediation. You have only 20 DAYS from the recording date of this notice to pursue mediation.

Instrument Number: 20230609000151  Document:NTS Rec: $206.50 Page-3 of 4
Record Date:6/9/2023 8:51 AM King County, WA

**DO NOT DELAY. CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you are eligible and it may help you save your home. See below for safe sources of help.

**SEEKING ASSISTANCE**

Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission: Toll-free: **1-877-894-HOME (1-877-894-4663)** or Web site: http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm

The United States Department of Housing and Urban Development: Toll-free: **1-800-569-4287** or National Web Site: http://portal.hud.gov/hudportal/HUD or for Local counseling agencies in Washington: http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys: Telephone: **1-800-606-4819** or Web site: http://nwjustice.org/what-clear

**Additional information provided by the Trustee:** If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the noteholders rights against the real property only. The Trustee's Sale Number is WA-15-675789-SW.

Instrument Number: 20230609000151  Document:NTS Rec: $206.50 Page-4 of 4
Record Date:6/9/2023 8:51 AM King County, WA

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

Dated: 6/8/23

QUALITY LOAN SERVICE CORPORATION F/K/A QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, as Trustee
By: Jeff Stenman, President

Trustee's Address:
QUALITY LOAN SERVICE CORPORATION F/K/A
QUALITY LOAN SERVICE CORPORATION OF WASHINGTON
108 1st Ave South, Suite 450, Seattle, WA 98104

For questions call toll-free: (866) 925-0241     Trustee Sale Number: WA-15-675789-SW

Sale Line: 800-280-2832 or Login to: http://www.qualityloan.com

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: Washington )
County of: King )

On JUN 0 8 2023 before me, Aili Stenman a notary public, personally

appeared Jeff Stenman who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.          (Seal)

Signature

AILI STENMAN
Notary Public
State of Washington
Commission # 20101179
My Comm. Expires Dec 13, 2023

# EXHIBIT 5

Case No. 2:16-cv-00536-MMD-GWF
UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

# Deutsche Bank Nat'l Trust Co. v. Independence II Homeowners' Ass'n

Decided Mar 18, 2019

Case No. 2:16-cv-00536-MMD-GWF

03-18-2019

DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF IMPAC SECURED ASSETS CORP, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-1, Plaintiff, v. INDEPENDENCE II HOMEOWNERS' ASSOCIATION; SFR INVESTMENTS POOL 1, LLC; and NEVADA ASSOCIATION SERVICES, Defendants. SFR INVESTMENTS POOL 1, LLC, Counter/Cross Claimant, v. DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR THE CERTIFICATEHOLDRES OF IMPAC SECURED ASSETS CORP, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-01; and CAROLINA OSPINA MEDINA, Counter/Cross Defendants.

MIRANDA M. DU UNITED STATES DISTRICT JUDGE

ORDER

# I. SUMMARY

This dispute arises from the foreclosure sale of property to satisfy a homeowners' association lien. Before the Court are Plaintiff Deutsche Bank National Trust Company ("Deutsche Bank") as Trustee for the Certificateholders of IMPAC Secured Assets Corp, Mortgage Pass-Through Certificates, Series 2007-1's motion for summary judgment (ECF *2 No. 107) and Defendant SFR Investments Pool 1, LLC's ("SFR") motion for summary judgment (ECF No. 108). The Court has reviewed the parties' responses (ECF Nos. 109, 110) and replies (ECF Nos. 113, 114). For the following reasons, the Court dismisses the Complaint for lack of subject matter jurisdiction.

# II. BACKGROUND

The following facts are undisputed unless otherwise indicated.

Dora Ardolino and Carolina Ospina Medina ("Borrowers") purchased real property ("Property") located within Independence II Homeowners' Association ("HOA") on December 11, 2006. (ECF No. 107-1 at 3-4, 22-24.) The Borrowers financed the purchase with a $263,150 loan ("Loan") evidenced by a note ("Note") and secured by a first deed of trust ("DOT"). (*Id.* at 3-4.) The DOT names Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee beneficiary. (*Id.* at 4.)

Plaintiff asserts that MERS assigned the DOT to Plaintiff on February 16, 2012 ("2012 Assignment"). (ECF No. 107 at 2 (citing ECF No. 107-2 at 2-3 (2012 Assignment)).) This is the only assignment that Plaintiff attached to its motion for summary judgment. SFR asserts that Plaintiff is not the beneficiary of the DOT and that the 2012 Assignment is invalid based on another assignment dated April 14, 2011 ("2011 Assignment") that Plaintiff did not attach to its motion. (ECF No. 110 at 2-4, 10-14; ECF No. 108-22 at 2 (2011 Assignment).)

The Borrowers failed to pay HOA assessments, and the HOA eventually foreclosed on the Property, presumably extinguishing the DOT. (ECF No. 107-7 at 2-4.)

casetext

1

Deutsche Bank filed the Complaint on March 10, 2016, asserting the following claims: (1) quiet title/declaratory judgment against all Defendants; (2) breach of NRS § 116.1113 against the HOA and Nevada Association Services, Inc. ("NAS"); (3) wrongful foreclosure against the HOA and NAS; and (4) injunctive relief against SFR. (ECF No. 1 at 6-12.) SFR asserts counterclaims for declaratory relief/quiet title and injunctive relief. (ECF No. 20 at 14-15.) /// *3

## III. DISCUSSION

SFR challenges Plaintiff's Article III standing and prudential standing, arguing that Plaintiff is not the current beneficiary of the DOT. (ECF No. 110 at 2-4, 10-14.)

"Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). "To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, *Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The party invoking federal jurisdiction bears the burden of establishing these elements. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1179 (D. Nev. 2015) (quoting *United States v. Lazarenko*, 476 F.3d 642, 649-50 (9th Cir. 2007)). "The question of prudential standing is often resolved by the nature and source of the claim. Essentially, the standing question in such cases is whether the [statute] on which the claim [relies] properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* (quoting *The Wilderness Soc'y v. Kane County*, 632 F.3d 1162, 1169 (10th Cir. 2011)).

SFR bases its argument on the 2011 Assignment and 2012 Assignment. (*See* ECF No. 110 at 2-4, 10-14.) At first glance, both assignments seem to name Deutsche Bank as the assignee, but SFR asserts this is not the case. In the 2011 Assignment, MERS assigned the DOT to "Deutsche Bank National Trust Company, *as Trustee under the *4 Pooling and Servicing Agreement Relating to* IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2007-1" (ECF No. 108-22 at 2 (emphasis added)). In the 2012 Assignment, MERS assigned the DOT to "Deutsche Bank National Trust Company *as Trustee for the Certificateholders of* IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2007-1" (ECF No. 108-25 at 2 (emphasis added)). SFR contends that the first assignee is a different entity than the second assignee. (ECF No. 110 at 3-4.) SFR also argues that the 2012 Assignment must be invalid because MERS had already transferred its interest in the 2011 Assignment. (*Id.*)

Plaintiff suggests that both assignments refer to Deutsche Bank. (*See* ECF No. 113 at 3.) This is true, but both assignments also refer to different trusts. And Plaintiff produces no evidence to support its contention that "Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement Relating to IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2007-1" is the same legal entity as "Deutsche Bank National Trust Company as Trustee for the Certificateholders of IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2007-1," the latter of

which is how Plaintiff identified itself in the Complaint. (*See id.*; ECF No. 1 at 1.) Plaintiff may be the trustee for both trust entities and can sue on behalf of both trusts, but Plaintiff offers no evidence to show that the two trusts—bearing two similar but not identical names—are one and the same trust. It is only through a trustee that either of these trusts (assuming they are different) could take any action to enforce the DOT. *See Mathis v. Cty. of Lyon*, No. 2:07-cv-00628-APG-GWF, 2014 WL 1413608, at *2 (D. Nev. Apr. 11, 2014), *aff'd*, 591 F. App'x 635 (9th Cir. 2015) ("A trust . . . is not a natural person capable of taking action on its own behalf.").

"To have standing to assert a quiet title claim, a plaintiff must have a current claim to the land in dispute." *GMAT Legal Title Tr. v. Fitchner*, No. 3:15-cv-00044-HDM-WGC, 2015 WL 7312881, at *3 (D. Nev. Nov. 19, 2015) (citing *Daly v. Lahontan Mines Co.*, 151 P. 514, 516 (Nev. 1915), *aff'd on reh'g*, 158 P. 285 (1916)). Plaintiff asserts that it acquired title when it was assigned the DOT from MERS in the 2012 Assignment (ECF No. 107 at *5 2), but Plaintiff has produced no evidence to rebut SFR's evidence that MERS had no interest in the DOT to transfer in the 2012 Assignment. In addition, Plaintiff has not produced evidence to substantiate its implication that the 2011 Assignment transferred the DOT to Deutsche Bank, as trustee of the trust on whose behalf Plaintiff is bringing this action. (*See* ECF No. 113 at 3.) If Plaintiff was not the beneficiary of the DOT that was allegedly extinguished in the foreclosure sale, then Plaintiff did not suffer any injury and is not the proper party to bring this lawsuit. Accordingly, the Court dismisses the Complaint without prejudice for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Plaintiff's Complaint (ECF No. 1) is dismissed without prejudice for lack of subject matter jurisdiction.

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 107) is denied as moot.

It is further ordered that SFR's motion for summary judgment (ECF No. 108) is denied as moot.

It is further ordered that the Clerk of the Court close this case.

DATED THIS 18th day of March 2019.

/s/

MIRANDA M. DU

UNITED STATES DISTRICT JUDGE

casetext

# EXHIBIT 6

12/29/23, 3:08 AM    Washington State Department of Revenue

Washington State Department of Revenue

New search    Back to results

‹ Business Lookup

# License Information:

**Entity name:** SELECT PORTFOLIO SERVICING, INC.

**Business name:** SELECT PORTFOLIO SERVICING, INC.

**Entity type:** Profit Corporation

**UBI #:** 601-844-781

**Business ID:** 001

**Location ID:** 0001

**Location:** Active

**Location address:** 3217 S DECKER LK DR
WEST VALLEY CITY UT 84119

**Mailing address:** 3217 DECKER LAKE DR
SALT LAKE CITY UT 84119-3284

https://secure.dor.wa.gov/gteunauth/_/#2

1/3

**Excise tax and reseller permit status:**     Click here

**Secretary of State status:**     Click here

# Endorsements

| Endorsements held at this lo | License # | Count | Details | Status | Expiration da | First issuance |
|---|---|---|---|---|---|---|
| Out of State Collection Agency | | | | Active | Jan-31-2025 | Sep-03-1999 |

# Governing People  *May include governing people not registered with Secretary of State*

| Governing people | Title |
|---|---|
| CROWLEY, JUSTIN | |
| GANDHI, RANDHIR | |
| REMMERT, PATRICK | |
| WARD, CAMERON | |

View Additional Locations

The Business Lookup information is updated nightly. Search date and time: 12/29/2023 3:07:58 AM

Washington State Department of Revenue

**Contact us**

How are we doing?
**Take our survey!**

Don't see what you expected?
**Check if your browser is supported**

# EXHIBIT 7

United States Bankruptcy Court
Western District of Washington

In re:                                                                    Case No. 19-13736-TWD
Tatyana Lysyy                                                             Chapter 13
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0981-2          User: admin              Page 1 of 1          Date Rcvd: Oct 11, 2019
                              Form ID: 309I            Total Noticed: 6

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Oct 13, 2019.
db              +Tatyana Lysyy,    4109 68th Ave E,   Fife, WA 98424-3815
tr              +Jason Wilson-Aguilar,    600 University St #1300,    Seattle, WA 98101-4102
956714773        Specialized Loan Servicing LLC,    PO Box 636005,    Littleton, CO 80163-6005

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
smg              EDI: WADEPREV.COM Oct 12 2019 05:43:00     State of Washington,   Department of Revenue,
                 2101 4th Ave, Ste 1400,   Seattle, WA 98121-2300
ust             +E-mail/Text: USTPREGION18.SE.ECF@USDOJ.GOV Oct 12 2019 01:56:10     United States Trustee,
                 700 Stewart St Ste 5103,   Seattle, WA 98101-4438
956714772        E-mail/Text: jennifer.chacon@spservicing.com Oct 12 2019 01:56:30
                 Select Portfolio Servicing, Inc.,   PO Box 65250,   Salt Lake City, UT 84165-0250
                                                                                            TOTAL: 3

         ***** BYPASSED RECIPIENTS *****
NONE.                                                                                        TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social
Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required
by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Oct 13, 2019                            Signature:   /s/Joseph Speetjens

_____

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on October 11, 2019 at the address(es) listed below:
         Jason   Wilson-Aguilar     courtmail@seattlech13.com
         United States Trustee    USTPRegion18.SE.ECF@usdoj.gov
                                                                           TOTAL: 2

| Information to identify the case: | | | |
|---|---|---|---|
| Debtor 1 | **Tatyana Lysyy** | Social Security number or ITIN: | xxx–xx–4568 |
| | First Name   Middle Name   Last Name | EIN: __–_____ | |
| Debtor 2 (Spouse, if filing) | First Name   Middle Name   Last Name | Social Security number or ITIN: ____ | |
| | | EIN: __–_____ | |
| United States Bankruptcy Court: | Western District of Washington | Date case filed for chapter: | 13   10/11/19 |
| Case number: | 19–13736–TWD | | |

## Official Form 309I

## Notice of Chapter 13 Bankruptcy Case                     12/2017

---

**For the debtors listed above, a case has been filed under chapter 13 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

Confirmation of a chapter 13 plan may result in a discharge. Creditors who assert that the debtors are not entitled to a discharge under 11 U.S.C. § 1328(f) must file a motion objecting to discharge in the bankruptcy clerk's office within the deadline specified in this notice. Creditors who want to have their debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office by the same deadline. (See line 13 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at  www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.**

**Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.**

| | | About Debtor 1: | About Debtor 2: |
|---|---|---|---|
| **1.** | **Debtor's full name** | Tatyana Lysyy | |
| **2.** | **All other names used in the last 8 years** | | |
| **3.** | **Address** | 4109 68th Ave E<br>Fife, WA 98424 | |
| **4.** | **Debtor's attorney**<br>Name and address | Tatyana Lysyy<br>4109 68th Ave E<br>Fife, WA 98424 | Contact phone _____<br>Email: **None** |
| **5.** | **Bankruptcy trustee**<br>Name and address | Jason Wilson–Aguilar<br>600 University St #1300<br>Seattle, WA 98101 | Contact phone 206–624–5124<br>Email:  courtmail@seattlech13.com |
| **6.** | **Bankruptcy clerk's office**<br>Documents in this case may be filed at this address.<br>You may inspect all records filed in this case at this office or online at  www.pacer.gov. | 700 Stewart St, Room 6301<br>Seattle, WA 98101 | Hours open 8:30 am – 4:30 pm Monday – Friday<br>Contact phone 206–370–5200<br>Date: 10/11/19 |

**For more information, see page 2**

Debtor **Tatyana Lysyy**                                                                                                   Case number **19–13736–TWD**

| | | |
|---|---|---|
| **7. Meeting of creditors**<br>Debtors must attend the meeting to be questioned under oath. In a joint case, both spouses must attend. Creditors may attend, but are not required to do so. | **November 25, 2019 at 09:45 AM**<br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | **Location:**<br>**US Courthouse, Room 4107, 700 Stewart St, Seattle, WA 98101** |

| | | |
|---|---|---|
| **8. Deadlines**<br>The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **Deadline to file a complaint to challenge dischargeability of certain debts:** | **Filing deadline: 1/24/20** |
| | **You must file:**<br>• a motion if you assert that the debtors are not entitled to receive a discharge under U.S.C. § 1328(f) or<br>• a complaint if you want to have a particular debt excepted from discharge under 11 U.S.C. § 523(a)(2) or (4). | |
| | **Deadline for all creditors to file a proof of claim (except governmental units):** | **Filing deadline: 12/20/19** |
| | **Deadline for governmental units to file a proof of claim:** | **Filing deadline: 4/8/20** |
| | **Deadlines for filing proof of claim:**<br>A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office.<br>If you do not file a proof of claim by the deadline, you might not be paid on your claim. To be paid, you must file a proof of claim even if your claim is listed in the schedules that the debtor filed.<br>Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial.<br>If your claim is secured by a security interest in the debtor's principal residence, see Fed. R. Bankr. P. 3002(c)(7) for claim filing deadlines. | |
| | **Deadline to object to exemptions:**<br>The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | Filing deadline: 30 days after the *conclusion* of the meeting of creditors |

| | |
|---|---|
| **9. Filing of plan** | The debtor has not filed a plan. The hearing on confirmation will be held on: **12/18/19** at **09:30 AM** , Location: **U.S. Courthouse, Room 8106, 700 Stewart St, Seattle, WA 98101.** |
| **10. Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadline in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. |
| **11. Filing a chapter 13 bankruptcy case** | Chapter 13 allows an individual with regular income and debts below a specified amount to adjust debts according to a plan. A plan is not effective unless the court confirms it. You may object to confirmation of the plan and appear at the confirmation hearing. A copy of the plan, if not enclosed, will be sent to you later, and if the confirmation hearing is not indicated on this notice, the debtor will be sent notice of the confirmation hearing. The debtor will remain in possession of the property and may continue to operate the business, if any, unless the court orders otherwise. |
| **12. Exempt property** | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors, even if the case is converted to chapter 7. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at www.pacer.gov. If you believe that the law does not authorize an exemption that debtors claimed, you may file an objection by the deadline. |
| **13. Discharge of debts** | Confirmation of a chapter 13 plan may result in a discharge of debts, which may include all or part of a debt. However, unless the court orders otherwise, the debts will not be discharged until all payments under the plan are made. A discharge means that creditors may never try to collect the debt from the debtors personally except as provided in the plan. If you want to have a particular debt excepted from discharge under 11 U.S.C. § 523(a)(2) or (4), you must file a complaint and pay the filing fee in the bankruptcy clerk's office by the deadline. If you believe that the debtors are not entitled to a discharge of any of their debts under 11 U.S.C. § 1328(f), you must file a motion. The bankruptcy clerk's office must receive the objection by the deadline to object to exemptions in line 8. |

Notice of Potential Dismissal

If the debtor fails to file required schedules, statements or lists within 15 days from the date the petition is filed, or object to dismissal of the case indicating why dismissal is not appropriate, the case may be dismissed without further notice. If the Debtor(s) fails to appear at the meeting of creditors, the U.S. Trustee may apply for an order of dismissal without further notice.

Anyone can register for the Electronic Bankruptcy Noticing program at ebn.uscourts.gov OR (2) Debtors can register for DeBN by filing local form DeBN Request Form with the Clerk of Court. Both options are FREE and allow the clerk to quickly send you court-issued notices and orders by email.

# EXHIBIT 8


**SPS** SELECT
Portfolio
SERVICING, inc.

October 17, 2019

 Occupant(s)
12921 SE 318TH WAY
AUBURN, WA 98092

Dear Occupant(s):

Select Portfolio Servicing, Inc. (SPS) is writing to inform you that eviction proceedings on the above referenced property have been initiated on 10/16/2019. However, while eviction proceedings have been initiated, or are to be initiated, you may still be eligible for relocation assistance programs.

If you have questions or concerns regarding the eviction proceedings or possible relocation assistance options, please contact SPS immediately. Our associates will review and work with you regarding your situation.

Please contact SPS at 800-962-6010 Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**





February 2, 2022

TATYANA LYSYY
4109 68TH AVENUE E
FIFE, WA 98424-3815

**Account Number:**     0019505445
**Property Address:**    12921 SE 318TH WAY
                             AUBURN, WA 98092

Dear TATYANA LYSYY,

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, received your inquiries on January 13, 2022, and January 14, 2022. In your inquiries, you raised question(s) regarding:

- Loss Mitigation
- Property Damage

We have completed a full review of your inquiries and the account. Our response is below.

**Loss Mitigation**

In your inquiries, you requested loss mitigation assistance. You previously indicated that you have been impacted by COVID-19. On April 1, 2020, SPS sent you the enclosed Forbearance Plan. As outlined in the Forbearance Plan, your mortgage account has been approved for a three-month Temporary Hardship Forbearance Plan beginning on March 1, 2020.

Our records show that you have completed the Post-COVID-19 Application, and based on the information provided, a Post-COVID-19 Assistance Review was initiated July 30, 2020. You were sent the enclosed Required Information Notice – COVID-19 on August 6, 2020. This application listed all the documents required from you to complete the COVID-19 Assistance Review. The Required Information Notice – COVID-19 clearly stated the September 5, 2020, deadline to submit the required documentation. As indicated in the enclosed COVID-19 Decision Notice dated September 30, 2020, the COVID-19 Assistance Review was closed because we did not receive the required documents on or before the specified due date.

In addition, on September 21, 2021, a Short Payoff Review was initiated. SPS received an offer for $205,000.00. On January 7, 2022, an interior inspection of the property was completed with a return value of $520,000.00. SPS completed a review of Mikes Home Inspection Report dated July 10, 2019. However, the inspection report was over two years old and was not considered; therefore, no property value adjustment was considered. SPS sent you the enclosed Short Payoff Counter-Offer dated November 2, 2021, which advised the offer was insufficient.

On January 27, 2022, the Short Payoff was denied because the offer received was not sufficient. Enclosed is a copy of the Assistance Review Denial dated January 27, 2022, for your review.

If you can <mark>increase your offer,</mark> please call SPS to discuss. If you disagree with the property value, please provide appropriate documents so we may review. These documents may include <mark>recent appraisal, licensed contractor bids, color photos, and local comparables.</mark>



00256063000013021000

AD999  1104                                                   0019505445

You requested investor guidelines. SPS conducts its reviews in accordance with applicable laws and investor eligibility rules; however, where your inquiries requested information that is either proprietary or confidential, we will not be providing such information.

If you have any questions about the review process, you may contact SPS at the number listed below or visit our website for more information.

**Property Damage**

In your inquiries, you stated SPS changed the locks to the property without warning and in error. You further stated that we broke into the home, removed some possessions from the home and outbuilding, and water pipes were cut which caused damages. You also stated that an eviction had taken place in error, and you weren't provided access to the home for a period of time. Please be advised this was secured per request from SPS on October 15, 2019, as it was a Real Estate Owned (REO) property in evictions at this time. The property was winterized and secured, but no personal property was removed or pipes cut by Residential RealEstate Review, Inc. (RRR). There was also a code violation in February 2020 in which exterior work was also completed.

As of the date of this letter, the account is due for April 1, 2010.

SPS has reviewed and responded to your inquiries as discussed above. We have provided all documentation relied upon in reaching our determination. If a document was not provided it is because it is privileged or proprietary.

We appreciate the opportunity to address the issue(s) noted in your inquiries. The account has been assigned a Relationship Manager to assist with the resolution process. The assigned Relationship Manager, Nasimah Yunus, can be reached at 888-818-6032, extension 39122, or by email at relationship.manager@spservicing.com. If the Relationship Manager is not available, any of our trained servicing representatives can assist with answers to questions regarding the account. Representatives are available Monday through Thursday between the hours of 8:00 a.m. and 11:00 p.m., Friday from 8:00 a.m. to 9:00 p.m., and Saturday from 8:00 a.m. to 2:00 p.m., Eastern Time. You may also access account information, schedule payments, and review loss mitigation status on the SPS website www.spservicing.com.

Sincerely,

Benjamin Rosenbaum
Customer Advocate

Enclosure(s)

Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llámennos al número 800-831-0118 y seleccione/marque la opción 2

**This is in response to your request for information**

AD999 1104                                                                                    0019505445

# SPS SELECT PORTFOLIO SERVICING, INC.

## Corporate Advance History

Date: March 10, 2021

Loan Number:

| Transaction Date | Transaction Code | Transaction Desc | Transaction Sequence Code | Transaction Sequence Desc | Amount | Reason Code | Reason Desc | Payee Code | Payee Desc | Processor ID | Corporate | Recoverable Code | Recoverable Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/12/2019 | 745 | Corporate Advance Adjustment | | | $ -250.00 | TCNL | TITLE CANCEL TN | | | BAG | 01R01 | R | Recoverable |
| 11/11/2019 | 631 | Property Preservation Disbursement (Corporate Advance) | | | $ 250.00 | TCNL | TITLE CANCEL TN | MSPA SLSNKT | SERVICELINK TITLE COMP | NIR | 01R01 | R | Recoverable |
| 11/11/2019 | 630 | Attorney Advance Disbursement (Corporate Advance) | | | $ 700.00 | ATEF | EVICTION FEES | ATGA MQSAL | MCCALLA RAYMER LEIBERT | NIR | 01R01 | R | Recoverable |
| 10/21/2019 | 630 | Attorney Advance Disbursement (Corporate Advance) | | | $ 600.00 | FATT | FC ATTY FEES | ATGA MQSART | MCCARTHY & HOLTHUS LLP | NIV | 01R01 | R | Recoverable |
| 10/21/2019 | 632 | Statutory Expense Disbursement (Corporate Advance) | | | $ 94.40 | FCST | FC COSTS | ATGA MQSART | MCCARTHY & HOLTHUS LLP | NIV | 01R01 | R | Recoverable |
| 10/09/2019 | 631 | Property Preservation Disbursement (Corporate Advance) | | | $ 140.00 | FBPO | PROP VALUATION | RRR | RESIDENTIAL REAL ESTATE | BPO | 79R80 | R | Recoverable |
| 09/06/2019 | 632 | Statutory Expense Disbursement (Corporate Advance) | | | $ 402.70 | FCST | FC COSTS | ATGA MQSART | MCCARTHY & HOLTHUS LLP | NIV | 01R01 | R | Recoverable |
| 08/29/2019 | 630 | Attorney Advance Disbursement (Corporate Advance) | | | $ 50.00 | FATT | FC ATTY FEES | ATGA MQSART | MCCARTHY & HOLTHUS LLP | NIV | 01R01 | R | Recoverable |
| 07/15/2019 | 632 | Statutory Expense Disbursement (Corporate Advance) | | | $ 90.00 | FCST | FC COSTS | ATGA MQSART | MCCARTHY & HOLTHUS LLP | NIV | 01R01 | R | Recoverable |



## REO Property Sign-in Sheet

This sign in sheet has been posted by Safeguard Properties. It is required that all Safeguard vendors entering this property provide an explanation of the visit and sign/date this form.

*Should there be multiple visits to this property in a single day, the sheet must be filled out for EACH visit.

*Should the property be visited multiple/consecutive days to complete an order, the sheet must be filled out EACH day.

*Please notify Safeguard Property at 800-852-8306 ext. 2160 immediately if an emergency situation is discovered.

*Safeguard Vendors: Follow your work order instructions to address any emergency on-site while at the property.

**Property Address:** 12921   SE 318th   St Auburn Wa.

**By signing the below, you certify that this property was confirmed as vacant upon your arrival.**

| Date of Service | Time of Entry | Service Provided (Initial Service, Wint., etc.) | Signature | Vendor Code |
|---|---|---|---|---|
| 10-28-19 | 2pm | Initial service | | Grpreg. |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# WINTERIZED

**WARNING:** A winterization was performed at this property pursuant to a work order issued by your mortgage company. The sole purpose of a winterization is to prevent damage from freezing pipes. The winterization completed at this property was a system shut-down only; the plumbing system was not tested for damage or leaks. This procedure is not a guaranty or warranty of any kind with respect to the HVAC, plumbing, or any other mechanical systems at this property. The plumbing system should be dewinterized by a licensed contractor or plumber before the water is turned back on, to assure that the system is operational.

## ACONDICIONADO PARA EL INVIERNO

**LA ADVERTENCIA:** Un acondicionado para el invierno fue realizado en esta propiedad según una orden de trabajo publicada por su sociedad hipotecaria. El único propósito de un Acondicionado para el invierno es de prevenir daño de tubos helados. El Acondicionado para el invierno completó en esta propiedad fue un cierre de sistema solo. El sistema de plomería no fue probado para el daño ni filtraciones. Este procedimiento no es una fianza ni la garantía de cualquier tipo con respecto al HVAC, sistema de plomería, ni cualquier otro sistemas mecánicos en esta propiedad. El acondicionado para el invierno de la sistema que se hizo a la plomería debe ser invertido por un contratista o el plomero licenciados antes que el agua sea devuelta en, para asegurarse de que el sistema es operacional.

**Winterized by (Acondicionada para el invierno por)** YBWCO 10 |17|19

NAME (NOMBRE)                              DATE (FECHA)

SAFEGUARD PROPERTIES WINTERIZATION TAG    SPI-012/09-11
(SAFEGUARD PROPERTIES ACONDICIONADA PARA EL INVIERNO ETIQUETA)

---

# WINTERIZED

**WARNING:** A winterization was performed at this property pursuant to a work order issued by your mortgage company. The sole purpose of a winterization is to prevent damage from freezing pipes. The winterization completed at this property was a system shut-down only; the plumbing system was not tested for damage or leaks. This procedure is not a guaranty or warranty of any kind with respect to the HVAC, plumbing, or any other mechanical systems at this property. The plumbing system should be dewinterized by a licensed contractor or plumber before the water is turned back on, to assure that the system is operational.

## ACONDICIONADO PARA EL INVIERNO

**LA ADVERTENCIA:** Un acondicionado para el invierno fue realizado en esta propiedad según una orden de trabajo publicada por su sociedad hipotecaria. El único propósito de un Acondicionado para el invierno es de prevenir daño de tubos helados. El Acondicionado para el invierno completó en esta propiedad fue un cierre de sistema solo. El sistema de plomería no fue probado para el daño ni filtraciones. Este procedimiento no es una fianza ni la garantía de cualquier tipo con respecto al HVAC, sistema de plomería, ni cualquier otro sistemas mecánicos en esta propiedad. El acondicionado para el invierno de la sistema que se hizo a la plomería debe ser invertido por un contratista o el plomero licenciados antes que el agua sea devuelta en, para asegurarse de que el sistema es operacional.

**Winterized by (Acondicionada para el invierno por)** YBWCO 10 117 19

NAME (NOMBRE)                              DATE (FECHA)

SAFEGUARD PROPERTIES WINTERIZATION TAG    SPI-012/09-11
(SAFEGUARD PROPERTIES ACONDICIONADA PARA EL INVIERNO ETIQUETA)





Page 57 of 79









From: Grace Chu <gchu@McCarthyHolthus.com>
Sent: Monday, May 2, 2022 1:32 PM
To: Angela Anderson <aanderson@myfinancialgoals.org>; MediationDocIntake
<MediationDocIntake@McCarthyHolthus.com>; 'Terrence Connor' <wamedserv@gmail.com>
Cc: 'lp2005@live.com' <lp2005@live.com>; IDSMH <IDSMH@McCarthyHolthus.com>
Subject: RE: HOLD 5/5/22 @ 1:00: Lysyy | WA-21-894963-MED

Here is the lockbox code:
There was a lockbox placed on the property, code:3902.



| Loan Number: 19505445 | Address: | Cor |
|---|---|---|
| Invoice Number: 91139462 | 12921 SE 318TH WAY AUBURN, WA 98092 | Des |

In addition, my client does not agree to continue the session- thank you.

**Grace Chu** | Associate Attorney | Member State Bar of WA



**McCarthy ◆ Holthus, LLP**
m. 108 1st Avenue South, Ste. 300, Seattle WA 98104
d. 206.596.4854 | c. 206.902.8513
e. gchu@mccarthyholthus.com
w. http://www.mccarthyholthus.com

"Service Second to None"

Offices in: AR | AZ | CA | CO | ID | NV | NM | OR | TX | WA

# EXHIBIT 9

 SELECT Portfolio SERVICING, Inc.

Sign up for paperless delivery
at www.spservicing.com

Paperless

April 5, 2023

 TATYANA LYSYY
4109 68TH AVENUE E
FIFE, WA 98424-3815

**Account Number:**
**Property Address:**          12921 SE 318TH WAY
                              AUBURN, WA 98092

Dear Customer(s):

We understand that you may be experiencing a temporary or permanent hardship and we are here to support you. We have several options that may be available to assist you, such as:

- **Reinstatement** – With a reinstatement, you would repay all of the missed payments at the end of the forbearance plan and you would resume making your regular monthly mortgage payments as scheduled.

- **Repayment Plan** – This plan would allow you to pay back the missed payments over an extended period of time by paying your regular monthly mortgage payment plus an extra amount.

- **Modification** – We may be able to provide you with a more affordable monthly payment by making changes to the terms of your mortgage loan. These changes may include a reduction of your interest rate, a partial payment deferral or an extension to the maturity date of your mortgage loan.

- **Short Sale** – If you decide that you can no longer afford to keep your home, this may be a good option for you. With a short sale, you would list the property for sale at a fair market price. If the property is sold, the proceeds from the sale are applied to pay off your mortgage, even if the proceeds are less than the account balance. This option requires approval from the lienholder.

- **Deed in Lieu of Foreclosure** – With this option, you, as the homeowner, would voluntarily transfer the ownership of the property to the owner of your mortgage in exchange for a release from your mortgage loan and payments. This is often a good choice if you no longer want to stay in the home or you can no longer afford to stay in the home, but you want to avoid foreclosure.

As a reminder, you are still obligated to make all future account payments as they come due, even while we are evaluating the account for assistance programs that may be available to you. Please be advised that there is no guarantee that you will be eligible to receive any (or a particular type of) assistance through one of these programs.

You must submit a complete loss mitigation application, including all required information, at least thirty-seven (37) days prior to a scheduled foreclosure sale date for your account to be eligible for any available loss mitigation options. **Your account will not be eligible for loss mitigation if a complete loss mitigation application, including all required information, is not received prior to that time and your application will be deemed incomplete.** However, even if you provide a complete application more than thirty-seven (37) days before a scheduled foreclosure sale date, your account may not have any available options.

If you are unsure if there is a foreclosure sale scheduled for the property in the next thirty-seven (37) days or if there are available loss mitigation options, please contact us immediately at 888-818-6032.

We want to help you find the best possible solution. In order to do that, we will need some information about your specific situation. You can start by completing an application for assistance. You can log on to our website at www.spservicing.com to start the application process.



LR040 2985

If you have any questions, your assigned Relationship Manager, Nasimah, can be reached toll free at (888) 818-6032 x 39122 or by email at Relationship.Manager@spservicing.com.

At SPS, any of our Customer Care Experts can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact SPS. Our toll-free number is 800-258-8602 and representatives are available Monday through Friday between the hours of 8 a.m. and 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time. You may also contact us by mail at:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

HUD approved home ownership counseling may be available to you. You should call 800-569-4287 or TDD 800-877-8339, or go to HUD's website at www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm to find the HUD-approved housing counseling agency nearest you.

### Servicemembers Civil Relief Act (SCRA)

SPS is committed to home ownership assistance for active servicemembers and veterans of the United States military. You may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.) regarding your interest rate and the risk of foreclosure if you are a servicemember or a dependent of a servicemember. Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil). Note: your state may have more expansive eligibility criteria than below. Please contact us as soon as possible if you have any questions or believe you may be eligible.

Eligible service may include, but is not limited to:

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Space Force, Marine Corps and Coast Guard), or
- Reserve and National Guard personnel who have been activated and are on Federal active duty, or
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds, or
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, or
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

Please send written notice of military service as soon as possible to:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

If you have questions regarding eligibility and application requirements, please call us at 800-258-8602.

Please find enclosed additional information regarding the legal rights and protections of servicemembers and their dependents under the Servicemembers Civil Relief Act (the "SCRA"). This SCRA notice will assist you in understanding SCRA eligibility, protections, and organizations that you can contact for more information.

### Notice of Error or Information Request

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

We look forward to discussing options that may be available to you to avoid foreclosure.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

**New York City - Collection Agency License # 1170514**

LR040 2985

# Get Homeowner Assistance Fund help

**1) WHAT IS THE HOMEOWNER ASSISTANCE FUND (HAF)?**
The Homeowner Assistance Fund (HAF) is a federal assistance program that helps homeowners who have been financially impacted by COVID-19 pay their mortgage or other home expenses.
The HAF program available to you will depend on your area. Each state or territory developed its own program. Programs were also developed by Tribes (or their Tribally Designated Housing Entity), the Department of Hawaiian Home Lands, and the District of Columbia.

**2) AM I ELIGIBLE?**
To be eligible, you must:
- Have experienced a financial hardship associated with the COVID-19 pandemic.
- Apply for assistance for your primary residence.
- Have household income at or below your state's program requirements. Most state programs limit eligibility to households with less than 150% of the median income in your area or $79,900, whichever is higher. Some programs have established lower limits, so check your program's income requirements before applying.
- Meet additional requirements specific to the program where you are applying.

**3) HOW DO I APPLY?**
Visit www.consumerfinance.gov/haf/ to check your local program. Application processes may vary by location. You will need to verify that you meet income requirements and may need to provide additional necessary documentation.

**4) QUESTIONS?**
For any other questions, see www.consumerfinance.gov/haf/ or contact a HUD-approved housing counseling agency at www.consumerfinance.gov/find-a-housing-counselor or (800) 569-4287. They can help guide you through the application process.



LR040 2985

# Obtenga ayuda del Fondo de Asistencia para Propietarios de Vivienda

**1) ¿QUÉ ES EL FONDO DE ASISTENCIA PARA PROPIETARIOS DE VIVIENDA (HAF, POR SUS SIGLAS EN INGLÉS)?**

El Fondo de Asistencia para Propietarios de Vivienda (HAF, por sus siglas en inglés) es un programa de asistencia federal que ayuda a pagar la hipoteca u otros gastos del hogar de aquellos propietarios de vivienda que han sido afectados económicamente por el COVID-19.

El programa HAF que esté disponible para usted dependerá del área en donde vive. Cada estado o territorio ha desarrollado su propio programa. También existen programas desarrollados por Tribus (o su Entidad de Vivienda Designada por la Tribu), el Departamento de Tierras de Origen de Hawái y el Distrito de Columbia.

**2) ¿SOY ELEGIBLE PARA PARTICIPAR?**

Para ser elegible, usted debe:

- Haber experimentado dificultades financieras asociadas con la pandemia del COVID-19.
- Solicitar ayuda para su residencia principal.
- Tener un ingreso familiar igual o inferior a los requisitos del programa de su área. La mayoría de los programas limitan la elegibilidad a los hogares con menos del 150% del ingreso medio en el área o $79,900, lo que sea más alto. Algunos programas han establecido límites más bajos, así que verifique los requisitos de ingresos de su programa antes de presentar la solicitud (en inglés).
- Es posible que también tenga que cumplir requisitos adicionales específicos del programa al que solicita.

**3) ¿CÓMO PRESENTO UNA SOLICITUD?**

Visite www.consumerfinance.gov/haf/ a consulte su programa local. Los procesos de solicitud pueden variar según la ubicación. Usted deberá comprobar que cumple con los requisitos de ingresos y es posible que tenga que proporcionar documentación adicional necesaria.

**4) ¿PREGUNTAS?**

Para cualquier otra pregunta, visite www.consumerfinance.gov/haf/ o póngase en contacto con una agencia de asesoramiento en materia de vivienda aprobada por el Departamento de Vivienda y Desarrollo Urbano de Estados Unidos (HUD, por sus siglas in inglés) a www.consumerfinance.gov/find-a-housing-counselor o (800) 569-4287.

LR040 2985

# EXHIBIT 10

April 7, 2023

To:   Select Portfolio Servicing Inc

      PO Box 65277

      Salt Lake City, UT 84165-0277


Re:   Tatyana Lysyy

      Property address: 12921 SE 318TH Way, Auburn, Washington 98092

      **SPS  Loan #:**


Pages


# HARDSHIP LETTER/ REQUEST FOR ASSISTANCE

        1   RMA
        2   Proof of Income
        3   Tax Returns

I Tatyana Lyssy homeowner of the property located at 12921 SE 318TH WAY, AUBURN, WA
98092.   In 2006 I finance the purchase of my home with financing from PMC mortgage.   It
was Interest Only, Adjustable-Rate Mortgage. After economic downturn in 2008 my mortgage's
interest rate become very high. As a result, Monthly Mortgage payment increased a lot. I was
also impacted by economic slowdown; my income was reduced, and I couldn't afford the
significantly increased mortgage payment and meet financial needs of my family same time. As
a result, in 2009 I felt behind on my mortgages.


 I have been adversely impacted by COVID-19 pandemic. I have been experiencing hardship
related to COVID-19 pandemic and in need for assistance for my mortgage.

I informed Select Portfolio Servicing about our continued COVID-19 related hardship verbally
and in writing.



There is also **second mortgage/lien.** Current servicer Planet Home Lending. Also requested Loss Mitigation with second lien holder.

There is foreclosure sale sscheduled for May 19, 2023 for home.   I requesting Select Portfolio Servicing for Assistance in my Hardship and help with Short Sale Loss Mitigation process to avoid foreclosure.

Sincerellly

_____        4,7.23

Tatyana Lysyy

# EXHIBIT 11

 SELECT Portfolio SERVICING, inc.

Sign up for paperless delivery at www.spservicing.com

Paperless

September 14, 2023

 TATYANA LYSYY
4109 68TH AVENUE E
FIFE, WA 98424-3815

Account Number:
Property Address:        12921 SE 318TH WAY
                        AUBURN, WA 98092

Dear Customer(s):

SPS has completed our review of this account for the loss mitigation assistance requested. Our reviews are conducted in accordance with applicable laws and investor eligibility rules. SPS is committed to a policy of nondiscrimination in all aspects of its servicing practices.

You were sent an Assistance Review Application on 07/26/2022. This application listed all documents required from you to complete a loss mitigation application so we could evaluate your account for loss mitigation assistance. The notice clearly stated  the deadline for returning these documents.

**SPS did not receive the required documents within the timeline specified. As such, we did not evaluate this account for loss mitigation and have closed this request for review.**

### Right to Appeal

You have the right to appeal any non-approval by providing a written explanation of why you believe our determination was incorrect, along with all supporting evidence, within thirty (30) days of the date of this letter to:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250
Relationship.Manager@SPServicing.com

You have thirty (30) calendar days from the date of this notice to contact SPS to discuss the reason for non-approval.  Any pending foreclosure action may continue; however, no foreclosure sale will be conducted and you will not lose your home during this 30-day period or any longer period required for us to review supplemental material you may provide in response to this notice. If a foreclosure sale has already been scheduled we will instruct our attorney to file a motion to postpone such sale. It is possible however that a court will deny the motion and the sale will proceed.  If that happens we will be unable to provide loss mitigation.



You must submit a complete loss mitigation application, including all required information, at least thirty-seven (37) days prior to a scheduled foreclosure sale date for your account to be eligible for any available loss mitigation options. **Your account will not be eligible for loss mitigation if a complete loss mitigation application, including all required information, is not received prior to that time. Your application will be deemed incomplete.** However, even if you provide a complete application more than thirty-seven (37) days before a scheduled foreclosure sale date, your account may not have any available options.

If you are unsure if there is a foreclosure sale scheduled for the property in the next thirty-seven (37) days or if there are available loss mitigation options, please contact us immediately at 888-818-6032.

## Notice of Error or Information Request

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

## Contact Us

If you have any questions, your assigned Relationship Manager, Nasimah, can be reached toll free at (888) 818-6032 x 39122 or by email at Relationship.Manager@spservicing.com.

At SPS, any of our Customer Care Experts can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact SPS. Our toll-free number is 888-818-6032 and representatives are available Monday through Friday between the hours of 8 a.m. and 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you would like counseling or assistance you can contact the following:  U.S. Department of Housing and Urban Development.  For a list of homeownership counselors or counseling organizations in your area, go to https://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or you can call HUD at 1-800-569-4287.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición  para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

**New York City - Collection Agency License # 1170514**

Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agencies that administer compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW., Washington, DC 20552 and Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue NW, Washington, DC 20580.



# EXHIBIT 12

October 10, 2023


TO:  Select Portfolio Servicing Inc


RE:  TATYANA LYSYY
     Property Address: 12921 SE 318th Way, Auburn,
WA 98092

     SPS Loan Number:



     APPEAL OF THE SPS's LETTER/DECISION of OUR
HARDSHIP LOSS MITIGATION APPLICATION REVIEW DATED
9.14.2023



We experiencing expreme hardship with our mortgage
now serviced by SPS do to previous financial
hardship and do to adversely impucted by COVID-19
pandemic

On April 5, 2023 SPS sent us a Letter offering to
assist us in our hardship to find resolution with

our mortgage and avoid foreclosure (attached)

We did apply for assistance and sent Complete Loss Mitigation Application in April, 2023

We sent Complete Loss Mitigation Application via email to relationship.manager@spservicing.com. Also  Complete Loss Mitigation Application was uppoaded directly to the SPS website / portal (copy attached)

SPS did reciew Complete Loss Mitigation Application many more days than 37 days prior the foreclosure date scheduled on October 20, 2023.

CFPB rules and regulations requires Servicers to review borrowers request for assistance

We did follow up and did call SPS.  SPS did aknowledged Complete Loss Mitigation Application was recieved and promised SPS will review documents and provide assistance to avoid foreclosure.


WE DISAGREE WITH THE DECISION LETTER DATED 9.14.2023 BECAUSE OUR Complete Loss Mitigation Application WAS RECIEVED BY SPS BUT NOT REVIEWED. OUR APPLICATION FOR
ASSISTANCE WAS SUBMITTED AND FORECLOSURE SHOULD BE ON HOLD AND REQUEST FOR ASSISTANCE REVIEWED AS SPS

PROMISED.

WE ASKING SPS TO REVIEW OUR Complete Loss
Mitigation Application

Sincerely

Tatyana Lysyy

# EXHIBIT 13



Sign up for paperless delivery
at www.spservicing.com

Paperless

October 16, 2023

 TATYANA LYSYY
4109 68TH AVENUE E
FIFE, WA 98424-3815

**Account Number:**
**Customer Name:**        TATYANA LYSYY
**Property Address:**     12921 SE 318TH WAY
                          AUBURN, WA 98092

Dear TATYANA LYSYY:

SPS received your recent inquiry(ies) on 10/13/2023. We will review your request(s) and route to the appropriate department for handling.  If a response is required, one will be provided to you within 30 days from the date we received your inquiry(ies).

SPS is committed to home retention and offers many assistance options designed for customers who are experiencing temporary or permanent hardship. These options are offered at no cost to our customers and may include special payment arrangements, structured repayment plans, or loan modifications. If you are experiencing a financial hardship, please call us as soon as possible at the number listed below to discuss your situation and options that may be available to you.

At SPS, any of our Customer Care Experts can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact SPS. Our toll-free number is 800-258-8602 and representatives are available Monday through Friday between the hours of 8 a.m. and 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición  para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

