1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   TATYANA LYSYY, et al.,                     CASE NO. C24-0062JLR

11                        Plaintiff,           ORDER

12        v.

13   DEUTSCHE BANK NATIONAL
     TRUST COMPANY, et al.,

14
                          Defendant.
15

## I.   INTRODUCTION

Before the court are two motions:  (1) Plaintiffs Tatyana Lysyy and Vasiliy

Lysyy's (together, "Plaintiffs") motion to remand (MTR (Dkt. # 31); MTR Reply (Dkt.

# 51)); and (2) Defendants Deutsche Bank National Trust Company, as Trustee on Behalf

of the Holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates

Series 2007-1 (the "Trust"), Select Portfolio Servicing, Inc. ("SPS"), Mortgage Electronic

Registration Systems, Inc. ("MERS"), Safeguard Properties Management, LLC

1    ("Safeguard") and Residential RealEstate Review, Inc.'s ("RRR") (together, "MSJ

2    Defendants") motion for summary judgment (MSJ (Dkt. # 14); MSJ Reply (Dkt. # 49)[1]).

3    MSJ Defendants oppose Plaintiffs' motion to remand (MTR Resp. (Dkt. # 40)), and

4    Plaintiffs oppose MSJ Defendants' motion for summary judgment (MSJ Resp. (Dkt.

5    # 45)).  Plaintiffs have also filed a surreply in which they ask the court to strike certain

6    evidence and arguments that, they assert, MSJ Defendants raised for the first time in their

7    reply in support of their motion for summary judgment.  (MSJ Surreply (Dkt. # 53).[2])

8    The court has considered the parties' submissions, the relevant portions of the record, and

9    the governing law.  Being fully advised,[3] the court (1) DENIES Plaintiffs' motion to

10   remand; (2) GRANTS in part and DENIES in part MSJ Defendants' motion for summary

11   judgment; and (3) ORDERS Plaintiffs to show cause why the court should not grant

12   summary judgment in MSJ Defendants' favor on their claims for violations of due

13   process under the United States and Washington Constitutions and violation of an

14   automatic bankruptcy stay.

15

16   [1] Although the caption of MSJ Defendants' reply indicates that it includes a motion to
     strike, MSJ Defendants do not move to strike in that filing.  (*See generally id.*)

17   [2] MSJ Defendants also filed a surreply in opposition to Plaintiffs' motion to remand in
18   which they purport to "submit additional briefing" opposing the motion.  (MTR Surreply (Dkt.
     # 52).)  This District's local rules, however, authorize surreplies only for the purpose of asking
     the court to "strike material contained in or attached to a reply brief" and "strictly limit[]"
19   surreplies "to addressing the request to strike."  Local Rules W.D. Wash. LCR 7(g).  Therefore,
     the court STRIKES MSJ Defendants' improper surreply and has not considered it in deciding the
20   motion.

21   [3] Both parties requested oral argument on MSJ Defendants' motion for summary
     judgment.  (MSJ at 1; MSJ Resp. at 1.)  No party requested oral argument on Plaintiffs' motion
22   to remand.  (*See* MTR at 1; MTR Resp. at 1.)  The court finds that oral argument would not be
     helpful to its resolution of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1

## II.   BACKGROUND

2      This lawsuit arises from Plaintiffs' attempts to avoid a trustee's sale and regain

3   access to a home in Auburn, Washington (the "Property").  (*See generally* Am. Compl.

4   (Dkt. # 1-3).)  Below, the court sets forth the factual and procedural background relevant

5   to this motion.

6   **A.   Factual Background**

7      On November 9, 2006, Ms. Lysyy executed a promissory note in the amount of

8   $249,500 in favor of PMC Bancorp (the "Note").  (Pittman Decl. (Dkt. # 18) ¶ 7, Ex. A

9   ("Note").[4])  To secure repayment of the Note, Plaintiffs executed a deed of trust (together

10   with the Note, the "Loan") that granted a security interest in favor of MERS on the

11   Property.  (*Id.* ¶ 8, Ex. B.)  MERS assigned the deed of trust to the Trust on September

12   14, 2011.  (*Id.* ¶ 9, Ex. C.)

13      Plaintiffs have made no payments on the Loan since April 1, 2010 and, as a result,

14   the Loan is in default.  (*Id.* ¶ 10; *see* T. Lysyy Decl. (Dkt. # 43) ¶¶ 5-6 (acknowledging

15   that Plaintiffs have made no payments on the Loan since 2010).)  Bank of America, then

16   the servicer of the loan, issued a notice of default on August 7, 2015, and the foreclosure

17   trustee, Quality Loan Service of Washington ("QLS"), filed the first Notice of Trustee's

18

19

20      [4] Plaintiffs argue that the "purported reserve side of Page 5 [of the Note] does not appear to match up to the front" and ask for an order compelling MSJ Defendants to produce the

21   original promissory note.  (MSJ Resp. at 3 (citing Note; 3/4/24 Pope Decl. (Dkt. # 42) ¶¶ 3-4, Ex. 2).)  Plaintiffs acknowledge, however, that this issue is "not actually relevant to the issues

22   raised in [MSJ] Defendants' motion" for summary judgment.  (3/4/24 Pope Decl. ¶ 3.) Therefore, the court does not discuss this issue further in this order.

1  Sale on the Property on September 25, 2015.  (T. Lysyy Decl. ¶ 5, Ex. 2.[5])  Servicing of

2  the loan was transferred from Bank of America to SPS on November 16, 2016.  (*Id.* ¶ 6,

3  Ex. 3.)

4      In 2019, Plaintiffs had two inspections conducted at the Property.[6]  On March 22,

5  2019, Rezcom Contractors inspected the Property and provided an estimate for repairs,

6  including the replacement of a leaky roof, rotten siding, garage doors, warped flooring,

7  and water damage.  (Kanonik Decl. (Dkt. # 16) ¶ 7, Ex. E ("Rezcom Estimate").)  On

8  July 10, 2019, Michael Marquardt of Mike's Home Inspection inspected the Property on

9  the request of Plaintiffs' agent, Peter Kuzmenko, and produced an inspection report.

10  (Marquardt Decl. (Dkt. # 17) ¶¶ 2-3.)  In his report, he noted numerous "critical"

11  concerns about the Property, including a leaky roof, leaking gutters, failing siding,

12  overgrown vegetation, rotted deck and steps, outdoor electrical hazards, rotted garage

13  doors, damaged basement, an expired HVAC unit, an unsafe water heater, and damaged

14  walls, ceilings and floors.  (*Id.* ¶ 5, Ex. A ("Marquardt Report") at 2-3.)  Noting that none

15  of the utilities were turned on, Mr. Marquardt concluded that the Property was vacant and

16  in poor condition.  (Marquardt Decl. ¶¶ 6-7.)

17      On Friday, October 11, 2019, a trustee's sale "was called" and the Trust purchased

18  the Property.  (Pittman Decl. ¶ 12.)  Approximately one hour before the trustee's sale

19

20      [5] There is no evidence before the court that this trustee's sale went forward.

21      [6] There is no evidence before the court regarding events that transpired between
    November 2016 and March 2019 or the facts leading up to Plaintiffs' decision to conduct these
22  inspections.  Plaintiffs allege, however, that QLS issued "at least nine successive notices of its
    trustee sale" between September 2015 and July 2022.  (*See* Am. Compl. ¶ 4.13.)

1     took place, however, Ms. Lysyy filed for Chapter 13 bankruptcy in the United States

2     Bankruptcy Court for the Western District of Washington, thus triggering an automatic

3     stay of the foreclosure proceedings.  (*Id.*); *see In re Tatyana Lysyy*, No. 19-13736-TWD

4     (Bankr. W.D. Wash.); 11 U.S.C. § 362(a).  According to MSJ Defendants, neither QLS

5     nor SPS received notice of the bankruptcy filing before the trustee's sale.  (Pittman Decl.

6     ¶ 12.)  As a result, SPS referred the Property to its Real Estate Owned ("REO")

7     Department for handling.  (*Id.*)

8          On Saturday, October 12, 2019, the Bankruptcy Noticing Center sent notice of Ms.

9     Lysyy's filing to SPS "by electronic transmission" to the email address

10     jennifer.chacon@spservicing.com.  (12/29/23 Pope Decl. (Dkt. # 2-2) ¶ 11, Ex. 7.)  SPS

11     asserts, however, that its Bankruptcy Department did not receive "adequate notification"

12     of Ms. Lysyy's bankruptcy on October 12 because Ms. Chacon was "solely employed by

13     SPS's HR Training Department" at the time and "had no responsibilities for handling

14     bankruptcy notices."  (Pittman Decl. ¶ 13.)  Ms. Lysyy counters that she did not provide

15     Ms. Chacon's email address to the bankruptcy court and, thus, the address must have

16     come from SPS.  (T. Lysyy Decl. ¶ 7[7]; *see id.*, Ex. 4 (Ms. Lysyy's bankruptcy petition).)

17          On Monday, October 14, 2019, QLS sent notice of Ms. Lysyy's bankruptcy filing

18     to SPS's Foreclosure Department.  (Pittman Decl. ¶ 14.)  According to MSJ Defendants,

19     SPS was "unaware [when it received notice] whether the Bankruptcy was filed prior to

20     the Trustee's Sale and whether the filing impacted the validity of the Sale."  (*Id.*)  On

21

22        _____

[7] This citation refers to the first of two paragraphs labeled "7" in Ms. Lysyy's declaration.

1    October 15, 2019, SPS's Bankruptcy Department received an automated notice about Ms.

2    Lysyy's bankruptcy filing.  (*Id.* ¶ 15.)  SPS "immediately" asked its local bankruptcy

3    counsel, McCarthy Holthus, LLP ("McCarthy Holthus"), to "determine what impact, if

4    any, [Ms. Lysyy's bankruptcy filing] had on the Trustee's Sale."  (*Id.*)

5        Meanwhile, SPS's REO vendor, RRR, automatically sent a request to Safeguard

6    "to inspect the Property to determine whether the Property was occupied or vacant."  (*Id.*

7    ¶ 16.)  On October 17, 2019, Safeguard "confirmed that the Property was vacant and

8    secured the Property at the direction of RRR in order to avoid waste or damage to the

9    Property."  (*Id.*; *see also* Meyer Decl. (Dkt. # 19) ¶ 7[8]; T. Lysyy Decl. ¶ 8[9], Ex. 7

10    (February 2, 2022 letter from SPS, confirming that the Property was "secured per request

11    from SPS on October 15, 2019, as it was a Real Estate Owned (REO) property in

12    evictions at th[at] time"); V. Lysyy Decl. (Dkt. # 44) ¶ 6, Ex. 1 (photos Mr. Lysyy took in

13    October 2019, showing a lockbox on the front door and a "No Trespassing" sign in the

14    window).)  Also on October 17, 2019, SPS informed Plaintiffs that it had initiated

15    eviction proceedings on the Property on October 16, 2019.  (T. Lysyy Decl. ¶ 8[10], Ex. 5.)

16        On November 1, 2019, McCarthy Holthus confirmed that the October 11, 2019

17    trustee's sale was void due to Ms. Lysyy's bankruptcy filing.  (Pittman Decl. ¶ 17.)  SPS

18

19    _____

     [8] Although Mr. Meyer states that he attached a copy of the completion notes for RRR's
     work order to his declaration, no exhibit was filed with that declaration.  (*See id.* ¶ 7.)

20
     [9] This citation refers to the second of two paragraphs labeled "8" in Ms. Lysyy's
21    declaration.

     [10] This citation refers to the first of two paragraphs labeled "8" in Ms. Lysyy's
22    declaration.

"immediately put a hold on all REO activity and removed the Property out of REO status." (*Id.*)  No further action was required to rescind the trustee's sale because QLS "had not recorded a Trustee's Deed." (*Id.* ¶ 18.)  According to SPS, "no further REO activity has occurred" at the Property since November 1, 2019; "SPS and its vendors have not maintained possession or control over the Property"; and SPS has not "taken any action or instructed its vendors to take action in which it knowingly violated the automatic bankruptcy stay." (*Id.* ¶ 19; *see also* Meyer Decl. ¶ 8 ("By the end of October 2019, Safeguard did not receive any work order requests from RRR to complete any interior work at the Property."); *id.* ¶ 9 (stating that Safeguard's contractors never placed a "No Trespassing" sign at the Property).)  Plaintiffs assert, however, that correspondence from McCarthy Holthus and photographs taken by their attorney demonstrate that MSJ Defendants maintained possession or control over the Property from October 17, 2019, until at least May 2, 2022, and possibly until the present day.  (*See* 12/29/23 Pope Decl. ¶ 13, Ex. 8 at 68[11] (May 2, 2022 email from McCarthy Holthus providing the code to a lockbox at the Property); 2/26/24 Pope Decl. (Dkt. # 35) ¶ 4[12], Ex. 1 (photos Plaintiffs' attorney took on December 31, 2023 ("Pope Photos"), showing a lockbox on the front door of the property and a "No Trespassing" sign).[13])

_____

[11] The court cites to the page numbers in the CM/ECF header when referring to exhibits to Mr. Pope's December 29, 2023 declaration.

[12] This citation refers to the first of two paragraphs labeled "4" in Mr. Pope's declaration.

[13] MSJ Defendants point out that the "No Trespassing" sign "references the Auburn Police Department" and is thus "clearly attributable" to the City of Auburn.  (MSJ at 7, 19 (citing 2/5/24 Sagara Decl. (Dkt. # 20) ¶ 3, Ex. A (Mr. Pope's December 31, 2023 photos of the Property)).)  Plaintiffs' counsel counters that he "found" a form that a property owner can use to

1    Appraisals of the Property were conducted on January 21, 2020, and February 5,

2    2022.  First, on January 21, 2020, Edward Huletz provided a Broker Price Opinion for the

3    Property that included photos of the Property.  (Huletz Decl. (Dkt. # 15) ¶ 2, Ex. A

4    ("Huletz Appraisal").)  Second, on February 5, 2022, Aleksandr Kanonik inspected the

5    property at Mr. Kuzmenko's request.  (Kanonik Decl. ¶ 4.)  Mr. Kuzmenko let Mr.

6    Kanonik into the Property and gave him four documents to review.  (*Id.* ¶ 7, Exs. B (copy

7    of Huletz Appraisal), C (copy of Marquardt Report), D (copy of June 7, 2019 NW Roof

8    Service roof repair estimate), E (copy of Rezcom Estimate).)  Mr. Kanonik completed his

9    appraisal on February 11, 2022.  (*Id.* ¶ 3, Ex. A ("Kanonik Appraisal").)  MSJ

10   Defendants assert that the photos accompanying these appraisals show that there was no

11   lockbox on the front door when the appraisals were completed.  (MSJ at 7 (citing Huletz

12   Appraisal at 9; Kanonik Appraisal at 16).)  Plaintiffs counter, however, that a storm door

13   obstructed the view of the front door handle in these photos, and thus the photos MSJ

14   Defendants rely upon are misleading as to whether the lockbox was in place.  (MSJ Resp.

15   at 20-21; *see* 2/26/24 Pope Decl. ¶ 3; Pope Photos.)

16   **B.    Procedural Background**

17        On July 20, 2022, Plaintiffs, proceeding *pro se*, filed their original complaint

18   against the Trust, SPS, MERS, Safeguard, QLS, MERSCORP Holdings Inc.,

19   //

20   //

---

21   request a "No Trespassing" sign like the one posted on the Property, and avers that "a discovery
     request to Auburn Police Department would likely reveal who ordered this sign." (2/26/24 Pope

22   Decl. ¶ 13, Ex. 2.)  There is no evidence in the record that Plaintiffs have made such a request.

1   ("MERSCORP"),[14] and two banking entities in King County Superior Court.  (*See*

2   Compl. (Dkt. # 1-2) ¶¶ 2.2-2.9.)  They amended their complaint to add RRR and two

3   additional banking entities as named defendants on July 29, 2022.  (*See* Am. Compl. at 1,

4   ¶¶ 2.2-2.12.)  Plaintiffs raise 19 purported causes of action in their amended complaint.

5   (*See id.* at 9-23 ("COA").)

6       Counsel appeared on behalf of Plaintiffs in March 2023.  (*See* 2/26/24 Pope Decl.

7   ¶ 5.)  On December 28, 2023, Plaintiffs and QLS filed a Stipulation of Nonparticipation

8   in the superior court action.  (*See* 3/4/24 Sagara Decl. (Dkt. # 41) ¶ 5, Ex. C ("Stipulation

9   of Nonparticipation").)  In relevant part, the Stipulation of Nonparticipation provides:

10          2.      Plaintiffs agree that [QLS] has been named in the above-entitled
11      action solely in its capacity as Trustee under the Deed of Trust.  Plaintiffs are
        not and shall not be seeking any monetary damages against [QLS].  Plaintiffs
12      agree that [QLS] shall not be required to participate in the litigation
        proceedings in any manner, except as provided below.  Accordingly, [QLS]
13      shall not be required to file any responses, attend any hearings, mediation,
        trial, or settlement conferences, or respond in any other way to the litigation
        except as set forth below.

14
15          3.      Plaintiffs and [QLS] acknowledge and agree that [QLS] shall be
        bound by whatever order or judgment is issued in the Action by the Court
16      regarding the Property and Deed of Trust, provided that such order or
        judgment is for nonmonetary relief only.  Further, [QLS] shall respond to any
        reasonable discovery requests of the parties.

17   (Stipulation of Nonparticipation ¶¶ 2-3.)  Plaintiffs did not, however, dismiss QLS from

18   this action.  (*See generally id.*; King County Dkt. (Dkt. # 2-6); Dkt.)  On December 29,

19   //

20   //

21   ────────────────

22       [14] The superior court dismissed MERSCORP from this action on February 24, 2023.
     (*See* King County Dkt. (Dkt. # 2-6) at 3, Sub. No. 25.)

1   2023, Plaintiffs filed a motion for partial summary judgment.  (*See* 1/12/24 Notice (Dkt.

2   # 2) (re-filing Plaintiffs' motion in this court); Pls. MSJ (Dkt. # 2-1).)

3        On January 12, 2024, MSJ Defendants removed the action to this court, asserting

4   that removal was warranted based on both diversity jurisdiction and federal question

5   jurisdiction.  (*See generally* Not. of Removal (Dkt. # 1).)  Plaintiffs re-filed their motion

6   for partial summary judgment in this court that same day.  (*See* 1/12/24 Notice.)  MSJ

7   Defendants filed their motion for summary judgment on February 5, 2024, and Plaintiffs

8   filed their motion to remand on February 12, 2024.  (MSJ; MTR.)

9        On February 26, 2024, Plaintiffs voluntarily dismissed the four defendant banking

10  entities from this action, and on February 29, 2024, the court granted the parties'

11  stipulated motion to dismiss MERS from this action.  (*See* 2/26/24 Notice (Dkt. # 32);

12  MERS Order (Dkt. # 38).)  Thus, the only remaining Defendants are the Trust, SPS,

13  Safeguard, RRR, and QLS.  (*See generally* Dkt.)

14       Plaintiffs withdrew their motion for partial summary judgment on March 1, 2024.

15  (*See* 3/1/24 Notice (Dkt. # 39).)  Briefing on the parties' motions was completed on

16  March 13, 2024, after both parties filed surreplies.  (*See generally* Dkt.)  The motions are

17  now ripe for decision.

18                        **III.   ANALYSIS**

19       The court begins by considering Plaintiffs' motion to remand and then addresses

20  MSJ Defendants' motion for summary judgment.

21  //

22  //

1   **A.     Motion to Remand**

2          A defendant may remove any civil action filed in state court over which federal

3   district courts have original jurisdiction.  28 U.S.C. § 1441(a)(1).  District courts have

4   original federal question subject matter jurisdiction over "all civil actions arising under

5   the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  They have

6   original diversity subject matter jurisdiction, in relevant part, over "all civil actions where

7   the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

8   costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a).  Federal

9   courts strictly construe the removal statute and must reject jurisdiction if there is any

10  doubt as to the right of removal in the first instance.  *Hawaii ex rel. Louie v. HSBC Bank*

11  *Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566

12  (9th Cir. 1992); *see also Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir.

13  2005) ("[R]emoval statutes should be construed narrowly in favor of remand to protect

14  the jurisdiction of state courts." (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S.

15  100, 108-09 (1941))).  The removing defendant faces a "strong presumption" against

16  removal and bears the burden of establishing, by a preponderance of the evidence, that

17  removal was proper.  *Gaus*, 980 F.2d at 566-67.

18          When a case "stated by the initial pleading is removable on its face," 28 U.S.C.

19  § 1446(b)(1) gives a defendant 30 days from service of that pleading to file a notice of

20  removal.  *Harris*, 425 F.3d at 694; *see also* 28 U.S.C. § 1446(b)(1).  This 30-day deadline

21  is triggered only if the basis for removal "is ascertainable from 'examination of the four

22  corners of the applicable pleadings, not through subjective knowledge or a duty to make

1    further inquiry.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886 (9th Cir.

2    2010) (quoting *Harris*, 425 F.3d at 694).  If the case is not removable based on the initial

3    pleading but the defendant later receives an "amended pleading, motion, order or other

4    paper" that makes a ground for removal "unequivocally clear and certain," 28 U.S.C.

5    § 1446(b)(3) gives the defendant 30 days from receipt of that document to file a notice of

6    removal. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1090-91 (9th Cir. 2021) (quoting

7    28 U.S.C. § 1446(b)(3)).  In diversity cases only, 28 U.S.C. § 1446(c)(1) prohibits

8    defendants from removing a case pursuant to 28 U.S.C. § 1446(b)(3) more than one year

9    after the commencement of the action.  28 U.S.C. § 1446(c)(1).

10         Plaintiffs argue that the court must remand this case for six reasons:  (1) lack of

11   complete diversity of citizenship among the parties; (2) untimely removal more than one

12   year after the commencement of the action under 28 U.S.C. § 1446(c)(1); (3) untimely

13   removal more than 30 days after receipt of the complaint or amended complaint under

14   28 U.S.C. § 1446(b)(1) or 28 U.S.C. § 1446(b)(3); (4) failure to obtain QLS's consent to

15   removal under 28 U.S.C. § 1446(b)(2)(A); (5) violation of 28 U.S.C. § 1446(a)'s

16   requirement to include "a copy of all process, pleadings, and orders served upon" the

17   removing defendant with the notice of removal; and (6) failure to include a copy of

18   Plaintiffs' jury demand with the notice of removal as required by Local Rules W.D.

19   Wash. LCR 101(b)(3).  (MTR at 1.)

20         The court can quickly dispose of most of these arguments.  Plaintiffs' first and

21   second arguments fail because MSJ Defendants removed this case on the basis of federal

22   question jurisdiction in addition to diversity jurisdiction.  (*See* Not. of Removal ¶¶ 3-5

1   (removing on the basis of federal question jurisdiction); Am. Compl. ¶¶ 7.1-7.4 (alleging

2   violations of the automatic bankruptcy stay), 9.1-9.5 (alleging violations of the Fair Debt

3   Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f), 18.1-18.5 (alleging violations

4   of Plaintiffs' due process rights under the U.S. Constitution). *See generally* MTR

5   (making no mention of federal question jurisdiction); MTR Reply (same).)  Thus, neither

6   a lack of complete diversity nor the one-year removal time-bar set forth in 28 U.S.C.

7   § 1446(c)(1) prohibit MSJ Defendants from removing this action. *See* 28 U.S.C.

8   § 1446(c)(1) (applying the one-year time bar only to removal on the basis of diversity).

9   Plaintiffs' fourth argument fails because Plaintiffs themselves stipulated that QLS need

10  not "participate in the litigation proceedings in any manner" except to comply with orders

11  for non-monetary relief and cooperate with discovery.  (*See* Stipulation of

12  Nonparticipation ¶¶ 2-3.)  Plaintiffs' fourth argument also fails, as do their fifth and sixth

13  arguments, because "*de minimis*" procedural defects in removal are curable, even after

14  the 30-day removal deadlines set forth in  28 U.S.C. § 1446(b)(1) and 28 U.S.C.

15  § 1446(b)(3) expire.  *See Destfino v. Reiswig*, 630 F.3d 952, 956-57 (9th Cir. 2011)

16  (noting that if all properly served defendants did not join in the notice of removal, the

17  district court may allow the removing defendants to cure that defect);  *Kuxhausen v.*

18  *BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013) (rejecting plaintiff's

19  argument that defendant's "failure to attach her original complaint to its notice of

20  removal [was] an infirmity warranting remand"); *Chen v. Vertical Screen, Inc.*, No.

21  C17-0938JLR, 2017 WL 3704836, at *6 (W.D. Wash. Aug. 28, 2017) (denying

22

1   plaintiff's motion to remand because defendant's failure to include state court documents

2   with its notice of removal was a curable procedural defect).

3       Only Plaintiffs' third argument merits further consideration.  Plaintiffs assert that

4   remand is required because MSJ Defendants failed to remove this case either 30 days

5   after their receipt of the initial complaint under 28 U.S.C. § 1446(b)(1) or 30 days after

6   receipt of a paper from which removability could be ascertained under 28 U.S.C.

7   § 1446(b)(3).  (MTR at 5-7.)  They assert that they served the amended complaint on

8   RRR, Safeguard, and SPS on October 27, 2022, and that, as a result, these Defendants'

9   right to remove expired in late November 2022.  (*Id.*; *see* Service Affs. (Dkt. ## 28-30).)

10  Plaintiffs further assert that all of the MSJ Defendants received the complaint or the

11  amended complaint as exhibits to other pleadings "well over 30 days before they

12  removed the lawsuit on January 12, 2024."  (MTR at 5-7; MTR Reply at 3-5.)  As a

13  result, Plaintiffs argue, none of the MSJ Defendants filed a timely notice of removal and

14  the court must grant the motion to remand.  (MTR at 5-7.)  RRR, Safeguard, and SPS

15  counter that Plaintiffs did not properly serve them until December 28, 2023, and the Trust

16  and MERS point out that Plaintiffs never properly served them at all.  (Not. of Removal

17  at 5; MTR Resp. at 2, 6.)

18      The court need not resolve the parties' dispute about when Plaintiffs served RRR,

19  Safeguard, and SPS because Plaintiffs acknowledge that they never "formally served" the

20  Trust and MERS.  (MTR at 5.)  "[A] named defendant's time to remove is triggered by

21  simultaneous service of the summons and complaint, or receipt of the complaint, 'through

22  service or otherwise,' after and apart from service of the summons, but not by mere

ORDER - 14

1  receipt of the complaint unattended by any formal service." *Murphy Bros. v. Michetti*

2  *Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).  Thus, MSJ Defendants' attorney's

3  mere receipt of copies of Plaintiffs' complaints as exhibits to pleadings did not trigger the

4  30-day removal deadline for the Trust and MERS.  *See Sharma v. HSI Asset Loan*

5  *Obligation Tr. 2007-1 by Deutsche Bank Nat'l Tr. Co.*, 23 F.4th 1167, 1172 (9th Cir.

6  2022) (noting that under *Murphy Brothers*, "mere unofficial notice of a lawsuit is not

7  enough" to start the removal clock); *see also Krier v. Washington*, No. C21-5331BHS,

8  2021 WL 2682565, at *2 (W.D. Wash. June 30, 2021) (denying motion to remand where

9  plaintiff had not served any of the defendants because "[a]bsent service, the 30-day

10  period for removal does not begin to run").  As a result, the court concludes that the Trust

11  and MERS timely removed this case and that removal was proper on the basis of federal

12  question subject matter jurisdiction.  Accordingly, the court DENIES Plaintiffs' motion

13  to remand.

14  **B.    Motion for Summary Judgment**

15       MSJ Defendants assert that the court must grant their motion for summary

16  judgment and dismiss certain of Plaintiffs' claims because (1) the claims are barred by

17  the relevant statutes of limitations, (2) Plaintiffs cannot establish a genuine issue of

18  material fact regarding MSJ Defendants' liability, or (3) Plaintiffs cannot demonstrate

19  that they were damaged by MSJ Defendants' conduct.  (*See* MSJ at 1-2.)  Plaintiffs

20  oppose the motion and move to strike portions of MSJ Defendants' reply.  (*See* MSJ

21

22

Resp.[15]; MSJ Surreply.)  Below, the court begins by addressing Plaintiffs' motion to strike, then sets forth the relevant standard of review and considers the merits of MSJ Defendants' motion.

  1. <u>Motion to Strike</u>

  Plaintiffs move the court to strike portions of MSJ Defendants' reply brief and supporting materials.  (*See generally* MSJ Surreply.)  The court grants in part and denies in part the motion to strike.

  First, Plaintiffs assert that Exhibit B to the March 8, 2024 declaration of MSJ Defendants' attorney Midori Sagara must be excluded as improper evidence of settlement negotiations pursuant to Federal Rule of Evidence 408(a).  (*See* MSJ Surreply at 1-2; 3/8/24 Sagara Decl. (Dkt. # 50), ¶ 5, Ex. B.)  The court agrees.  Federal Rule of Civil Procedure 56(c)(2) provides that "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Federal Rule of Evidence 408(a) provides that evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the

---

[15] Plaintiffs raise a number of arguments in their response that are not responsive to MSJ Defendants' motion or that seek affirmative relief.  (*See, e.g.*, MSJ Resp. at 1-2 (listing six requests for relief); *id.* at 2-3, 20 (arguing that there are irregularities with the Note); *id.* at 3-4, 18-19 (arguing that there are two separate trusts involved in this matter); *id.* at 2, 11-12 (seeking a finding that SPS is a "debt collector" under the FDCPA); *id.* at 13-16 (arguing that the Loan should be "stripped down to principal only" due to violations of the Washington Collection Agency Act ("WCAA"), RCW 19.16.250; *id.* at 16 (arguing that the court should enjoin any future trustee's sale of the Property).)  The court has not considered any arguments or requests for affirmative relief that do not address the issues raised in MSJ Defendants' motion.  (*See* 3/6/24 Order (Dkt. # 48) (so warning).)

claim" and "conduct or a statement made during compromise negotiations about the

claim" is not admissible.  Fed. R. Evid. 408(a).  Here, Ms. Sagara describes Exhibit B as

a "true and correct copy of all settlement communications [she] initiated and participated

in from December 2022 to December 29, 2023," and the email messages in that exhibit

indeed relate to settlement negotiations.  (*See* 3/8/24 Sagara Decl. ¶ 5; *see generally id.*,

Ex. B.)  Therefore, the court GRANTS Plaintiffs' request to strike Exhibit B to Ms.

Sagara's March 8, 2024 declaration.

Second, Plaintiffs ask the court to strike MSJ Defendants' "false improper

arguments" regarding whether SPS was a "debt collector" under the FDCPA.  (MSJ

Surreply at 2-3.)  Plaintiffs' request is more accurately characterized as argument and

thus is not properly included in a surreply.  *See* Local Rules W.D. Wash. LCR 7(g).  The

court therefore denies this request.

Third, Plaintiffs ask the court to strike MSJ Defendants' "improper new 'lack of

diligent prosecution' argument" because, they assert, MSJ Defendants raised it for the

first time in their reply.  (MSJ Surreply at 3-4 (citing MSJ Reply at 14-15).)  The

arguments to which Plaintiffs object, however, are closely related to arguments that MSJ

Defendants raised in their motion and that Plaintiffs addressed in their response.  (*See*

MSJ at 11-12; MSJ Resp. at 7-10.)  Therefore, the court denies Plaintiffs' request to

strike MSJ Defendants' "lack of diligent prosecution" argument.

Fourth, Plaintiffs ask the court to strike MSJ Defendants' "improper argument on

'quiet title' availability" as raised for the first time in their reply.  (MSJ Surreply at 4.)

MSJ Defendants did not move for summary judgment on Plaintiffs' claim for quiet title

1    and mention that term only once in their motion.  (*See generally* MSJ.)  In their reply,

2    however, MSJ Defendants argue for the first time that "Plaintiffs' quiet title and due

3    process claims are derivative of their other claims, which [MSJ] Defendants squarely

4    addressed." (MSJ Reply at 15.)  The court agrees that MSJ Defendants' belated attempt

5    to shoehorn Plaintiffs' quiet title and due process claims into the scope of their motion for

6    summary judgment was improperly raised for the first time in reply.  The court grants

7    Plaintiffs' request to strike this argument.

8          Finally, Plaintiffs state that they "wish to inspect [the] alleged original promissory

9    note." (MSJ Surreply at 4.)  Plaintiffs' request is not a proper subject for a surreply.  *See*

10   Local Rules W.D. Wash. LCR 7(g).  Therefore, the court denies this request.

11         Having considered Plaintiffs' motion to strike, the court proceeds to consider

12   Defendants' motion for summary judgment.

13         2.    Summary Judgment Standard

14         Summary judgment is appropriate if the evidence viewed in the light most

15   favorable to the non-moving party shows "that there is no genuine dispute as to any

16   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

17   56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it

18   might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

19   (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a

20   reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*,

21   247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).  The moving

22   party bears the initial burden of showing there is no genuine dispute of material fact and

1   that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving

2   party does not bear the ultimate burden of persuasion at trial, it can show the absence of

3   such a dispute in two ways:  (1) by producing evidence negating an essential element of

4   the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence

5   of an essential element of its claim or defense.  *Nissan Fire & Marine Ins. Co. v. Fritz*

6   *Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party meets its burden of

7   production, the burden then shifts to the nonmoving party to identify specific facts from

8   which a factfinder could reasonably find in the nonmoving party's favor.  *Celotex*, 477

9   U.S. at 324; *Anderson*, 477 U.S. at 250.

10          3.      Statutes of Limitations

11          First, MSJ Defendants assert that Plaintiffs' claims for civil conspiracy, trespass,

12   declaratory relief, conversion, invasion of private affairs, violation of the WCPA,

13   violation of the FDCPA, and outrage must be dismissed as time-barred because

14   Plaintiffs' service of QLS in August 2022 did not toll the relevant statutes of limitations.

15   (MSJ at 10-16.)  Plaintiffs agree that their FDCPA claim is barred by the one-year statute

16   of limitations applicable to that claim.  (*See* MSJ Resp. at 11 (acknowledging that

17   "Plaintiffs' FDCPA claims (as pleaded in the lawsuit) are time barred and should be

18   dismissed for that reason")); 15 U.S.C. §1692k(d).  Based on this concession, the court

19   grants Defendants' motion for summary judgment on Plaintiffs' FDPCA claim.  Plaintiffs

20   argue, however, that the statutes of limitations for their remaining claims have been tolled

21   because they timely served QLS and have not dismissed it from this lawsuit (MSJ Resp.

22

at 7-8), and because they served SPS, Safeguard, and RRR on October 27, 2022 (*id.* at 7 (citing Service Affs.)).

Because Plaintiffs' service of QLS, SPS, Safeguard, and RRR predated MSJ Defendants' removal of this case, Washington procedural law governs the tolling of the statutes of limitations. *DePalmer v. Jian Zhu*, No. C19-1449JLR, 2020 WL 7059233, at *3 n.3 (W.D. Wash. Dec. 2, 2020) (citing *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir. 1980); Fed. R. Civ. P. 81(c) ("These rules apply to a civil action after it is removed from a state court.")).  Under Washington law, service on one defendant in a multidefendant action within 90 days of filing the complaint tolls the statutes of limitations as to other defendants who have not yet been served.  *DePalmer*, 2020 WL 7059233, at *3 (citing *Sidis v. Brodie/Dormann, Inc.*, 815 P.2d 781, 783 (Wash. 1991)); RCW 4.16.170.  For tolling to apply, however, the served defendant must be properly named in the lawsuit.  *Head v. Kommandit-Gesellschaft MS San Alvaro Offen Reederei GmbH & Co.*, 17 F. Supp. 3d 1099, 1105 (W.D. Wash. 2014) (first citing K. Tegland, 14 Wash. Prac., Civil Procedure § 7:12 n.15.50 (2d ed. 2009 & Supp. 2013); and then citing *Teller v. APM Terminals Pac., Ltd.*, 142 P.3d 179, 188 (Wash. Ct. App. 2006)).  In addition, "[a] plaintiff who fails to serve each defendant risks losing the right to proceed against unserved defendants if the served defendant is dismissed."  *Sidis*, 815 P.2d at 783.

MSJ Defendants argue that the court should construe the Stipulation of Nonparticipation between Plaintiffs and QLS as an admission that Plaintiffs never had any claims against QLS and an "effective dismissal" of QLS from this lawsuit.  (MSJ at 12-13.)  As a result, according to MSJ Defendants, Plaintiffs' August 11, 2022 service on

1    QLS did not toll the statutes of limitations because QLS "was not a properly named

2    Defendant" and even if the statutes of limitations were tolled, that tolling ended when

3    Plaintiffs' "effectively dismissed" QLS from the lawsuit.  (*Id.*)

4          The court declines MSJ Defendants' invitation to construe the Stipulation of

5    Nonparticipation as either an admission that QLS was an improper defendant or an

6    effective dismissal.  (*See* MSJ at 12-13.)  To the contrary, as multiple courts have held,

7    the filing of a stipulation of nonparticipation renders QLS, at most, a nominal defendant;

8    it does not result in a finding that QLS was an improper defendant, nor does it dismiss

9    QLS from the case.  *See, e.g.*, *Renfroe v. Citibank, NA as trustee of NRZ Pass-Through*

10   *Tr. VI*, 776 F. App'x 415, 417 (9th Cir. 2019) (affirming denial of motion to remand

11   because stipulation of nonparticipation rendered QLS a nominal party and thus its

12   Washington citizenship did not destroy diversity); *John v. Quality Loan Serv. Corp. of*

13   *Wash.*, No. 4:20-CV-05008-SAB, 2020 WL 2896545, at *4 (E.D. Wash. May 4, 2020)

14   ("QLS is a nominal defendant, as demonstrated by the Stipulation of Nonparticipation

15   filed in Benton County Superior Court prior to removal."); *Adrain v. Wells Fargo Bank,*

16   *N.A.*, 2:16-cv-00142-SAB, 2016 WL 4059231, at *1 (E.D. Wash. July 27, 2016) (finding

17   stipulation of nonparticipation sufficient to demonstrate that QLS was a nominal party);

18   *cf. Choi v. Quality Loan Serv. Corp.*, C16-1745JLR, 2017 WL 659966, at *1-2 (W.D.

19   Wash. Feb. 14, 2017) (holding that stipulation of nonparticipation did not render QLS a

20   nominal party and thus the court lacked diversity subject matter jurisdiction over the

21   action).  MSJ Defendants have not cited (and the court has not found) any Washington

22   authority holding that service of a nominal defendant fails to toll the applicable statutes of

1    limitations.  (*See generally* MSJ; MSJ Reply.)  Furthermore, because Plaintiffs have not

2    dismissed QLS from this action, the statutes of limitations on their claims against the

3    unserved Defendants remain tolled.  *See Sidis*, 815 P.2d at 783.  Accordingly, the court

4    denies MSJ Defendants' motion for summary judgment on the basis of the expiration of

5    the statutes of limitations on Plaintiffs' civil conspiracy, trespass, declaratory relief,

6    conversion, invasion of private affairs, WCPA, and outrage claims.

7          4.    Wrongful Foreclosure, Deeds of Trust Act, and Foreclosure Fairness Act
               Claims

8
          Defendants assert that Plaintiffs cannot maintain their wrongful foreclosure, Deeds

9
     of Trust Act ("DTA"), and Foreclosure Fairness Act ("FFA") claims because no

10
     foreclosure sale has taken place.  (MSJ at 17.)  Plaintiffs agree that no foreclosure sale

11
     has been completed and, as a result, they concede that "anything in the lawsuit [that]

12
     might be construed as a claim for wrongfully completing a foreclosure sale . . . simply

13
     cannot proceed."  (MSJ Resp. at 11.)  Plaintiffs argue, however, that their FFA claim

14
     survives summary judgment because Defendants have not demonstrated that they

15
     complied with the FFA.  (*Id.*)

16
          The Washington Supreme Court has made clear that a plaintiff has no cause of

17
     action under the DTA absent a completed foreclosure sale.  *Frias v. Asset Foreclosure*

18
     *Servs., Inc.*, 334 P.3d 529, 534 (Wash. 2014).  Relying on *Frias*, the Ninth Circuit has

19
     held that there is also no independent cause of action under the FFA absent a completed

20
     foreclosure sale.  *Adrain v. Wells Fargo Bank, N.A.*, 784 F. App'x 554, 555 (9th Cir.

21
     2019) (citing *Frias*, 334 P.3d at 533-34).  Plaintiffs cite no authority supporting their

22

ORDER - 22

1    position that an independent FFA claim can survive where, as here, no foreclosure sale

2    has been completed.  (*See generally* MSJ Resp.)  Therefore, the court GRANTS MSJ

3    Defendants' motion for summary judgment on Plaintiffs' wrongful foreclosure, DTA,

4    and FFA claims.

5        5.    Damages

6        MSJ Defendants argue that Plaintiffs' civil conspiracy, trespass, theft, conversion,

7    outrage, and WCPA claims must be dismissed because Plaintiffs cannot prove that MSJ

8    Defendants' actions caused them to suffer damages.  (MSJ at 18-21.)  MSJ Defendants

9    assert—and Plaintiffs do not disagree—that these claims arise from their alleged

10   unlawful entry of the Property after the October 11, 2019 trustee's sale.  (*Id.* at 19; *see*

11   *generally* MSJ Resp.)  MSJ Defendants contend that they are entitled to summary

12   judgment because Plaintiffs cannot establish a genuine issue of material fact regarding

13   causation and damages based on the information they produced in discovery.  (MSJ at

14   18-21.)  Plaintiffs counter that they have sufficient evidence of damages to survive

15   summary judgment.  (*See id.* at 22.)  In the alternative, Plaintiffs ask the court to defer a

16   decision on the motion for summary judgment and allow them to conduct discovery

17   pursuant to Federal Rule of Civil Procedure 56(d).  (MSJ Resp. at 2, 21.[16])

18

19   _____

     [16] Plaintiffs argue at length that they need not show damages to have the Loan "stripped

20   down to principal only" based on alleged violations of the WCAA.  (MSJ Resp. at 13-16.)  As
     the court noted above, this argument is not responsive to MSJ Defendants' motion for summary
     judgment.  (*See supra* n.15.)  Furthermore, Plaintiffs do not mention the WCAA in their

21   amended complaint, let alone allege that MSJ Defendants violated that statute.  (*See generally*
     Am. Compl.)  They may not attempt to add this claim now through their response to the motion
     for summary judgment.  *See Riser v. Cent. Portfolio Control Inc.*, No. C21-5238LK, 2022 WL

22   2209648, at *4 n.1 (W.D. Wash. June 21, 2022) (so holding with respect to a motion to dismiss).

Plaintiffs allege in their amended complaint that MSJ Defendants' possession of

the Property resulted in the following damage:

> 4.32    With regard to the real property, the roof is damaged and it has
> allowed interior damage; the gutters are leaking; the siding is damaged with
> resulting wood rot and mold; the shrubbery is overgrown and has caused
> wood destroying insects to invade the property; the deck and its accessories
> have incurred wood rot and moisture damage; the back step railing is
> defective and dangerous; there is exposed electric wiring-a hazard; there is
> insulation damage, missing vapor barrier sheeting, damaged insulation to the
> cooling ducts, damaged insulation to the copper supply plumbing in the
> crawlspace; the attic reveals roof leaks; the water heater's T-P drain line has
> been cut so as to create a safety hazard; there are roof leaks to the ceiling in
> the master bath and the hall bath; the drywall ceiling is separating at the seam
> in the kitchen, and the hardwood flooring in the family room and hallway has
> swelled so as to make the flooring wavy.

> 4.33    The above-described property defects, safety hazards, and
> mold/insect infestations were caused by Defendants' lack of maintenance so
> as to render the property uninhabitable.

(Am. Compl. ¶¶ 4.32-4.33.)  Plaintiffs further allege that MSJ Defendants "ultimately

removed and disposed of all of Mr. and Mrs. Lysyy's personal property that [was] located

within the home."  (*Id.* ¶ 4.30.)

At some point, Safeguard served a first set of interrogatories and requests for

production on Plaintiffs, in which it asked for information and documents regarding their

alleged damages.  (2/5/24 Sagara Decl. ¶ 8, Ex. F (Plaintiffs' responses to Safeguard's

first set of interrogatories and requests for production); *see id.* at Interrogatory 6 (asking

Plaintiffs to identify possessions or personal property removed from the Property),

Interrogatory 15 (asking Plaintiffs to identify all "personal property damages and injuries

each Plaintiff is claiming and how each Plaintiff's damages were calculated"), Request

for Production 13 (asking Plaintiffs to "produce all documents related to or supporting

1   your alleged damages").)  On June 30, 2023, Plaintiffs responded by writing "See

2   attached" beneath each interrogatory and request for production.  (*See generally id.*)

3   Plaintiffs produced the Rezcom Estimate, the Marquardt Report, the Huletz Appraisal,

4   and the Kanonik Appraisal and did not supplement their discovery responses thereafter.

5   (*See* 2/5/24 Sagara Decl. ¶ 8.)  MSJ Defendants argue that the Rezcom Estimate, the

6   Marquardt Report, and Northwest Roof estimate attached to the Kanonik Appraisal

7   demonstrate that all of the damage to the Property described in paragraph 4.32 of

8   Plaintiffs' amended complaint already existed before the October 11, 2019 trustee's sale.

9   (MSJ at 20-21.)  They further point out that Plaintiffs have never identified what

10  "personal property" they allege was removed from the Property and never informed MSJ

11  Defendants' attorney that they believed that the Property was still under MSJ Defendants'

12  possession and control.  (*Id.* (citing 2/5/24 Sagara Decl. ¶ 8, Ex. F); Reply at 6-7 (citing

13  3/8/24 Sagara Decl. ¶ 5).)

14      Plaintiffs' response to MSJ Defendants' motion is difficult to parse and light on

15  citations to the record.  (*See generally* MSJ Resp.)  Nevertheless, the court has identified

16  four arguments that are responsive to MSJ Defendants' damages arguments and

17  addresses them in turn.

18      First, Plaintiffs argue that their photographs and the February 2, 2022 email from

19  McCarthy Holthus demonstrate that MSJ Defendants "exercised dominion and control

20  over" the Property at least between October 17, 2019 and May 2, 2022, and possibly

21  through the present, "by maintaining a lockbox on the front door."  (MSJ Resp. at 20

22  (citing 2/26/23 Pope Decl. ¶ 2, Ex. 1; T. Lysyy Decl. ¶ 2, V. Lysyy Decl. ¶ 2, Ex. 3).)

1    They assert that "[g]iven the poor conditions documented previously, it can only be

2    assumed [the conditions] have gotten even worse."  (*Id.* at 21.)  Plaintiffs do not,

3    however, direct the court to evidence of new or exacerbated damage to the Property

4    during that time period, let alone expert testimony regarding the cause of such damage.[17]

5    (*See id.* at 20-22); *see* Fed. R. Civ. P. 56(c)(1)(A) (providing that "[a] party asserting that

6    a fact cannot be or is genuinely disputed must support the assertion by . . . citing to

7    particular parts of materials in the record"); Fed. R. Civ. P. 56(c)(4) ("An affidavit or

8    declaration used to support or oppose a motion must be made on personal knowledge, set

9    out facts that would be admissible in evidence, and show that the affiant or declarant is

10   competent to testify on the matters stated.")  Plaintiffs' *assumption* that conditions at the

11   Property "have gotten even worse" is not *evidence* of the same.

12        Second, Plaintiffs assert that "[l]oss of dominion and control . . . damages

13   Plaintiffs through loss of use."  (*Id.* at 21.)  They argue that if they had possession of the

14   Property, they "could have used [the Property], lived in it, or rented it out"; "repaired [the

15   Property] themselves"; or "tried to sell the [Property]."  (*Id.*)  Again, however, Plaintiffs

16   do not cite any evidence demonstrating that they intended to take any of these actions,

17   nor do they make any attempt to quantify the amount of any damages they may have

18   suffered due to loss of use.  (*See id.*); *see* Fed. R. Civ. P. 56(c)(1), (4).

19

20        [17] Plaintiffs boldly assert that the 2022 Kanonik Appraisal "shows even higher needs
     for . . . repairs than" the 2020 Huletz Appraisal.  (MSJ Resp. at 22.)  They do not, however,
21   explain the basis for this assertion or direct the court to any portions of the appraisals that
     support their argument.  The court will not do this work for Plaintiffs.  *See Indep. Towers of
     Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for
22   truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

1    Third, to the extent Plaintiffs assert that they suffered the loss of $700.00 that they

2    paid in eviction fees (*see id.* at 5), MSJ Defendants present unrebutted evidence that they

3    credited the $700 in eviction fees back to Plaintiffs twice (*see* Pittman Decl. ¶ 20, Ex. E).

4    Finally, Plaintiffs point to an email message their attorney sent to counsel for MSJ

5    Defendants on December 18, 2023.  (MSJ Resp. at 22 (citing 3/4/24 Pope Decl. ¶ 14, Ex.

6    5 ("12/18/23 Email")).)  This email message, however, merely lists possible types of

7    damage and counsel's own estimates of their value.  (*See* 12/18/23 Email.)  It is not a

8    sworn affidavit and does not present admissible evidence regarding damages.  (*See id.*);

9    *see* Fed. R. Civ. P. 56(c)(4).

10    For these reasons, the court concludes that Plaintiffs have not met their burden to

11    produce admissible evidence from which a reasonable factfinder could find that they

12    suffered damages that were caused by MSJ Defendants' conduct.  *See* Fed. R. Civ. P.

13    56(a); *Celotex*, 477 U.S. at 324.  Therefore, the court grants MSJ Defendants' motion for

14    summary judgment on Plaintiffs' civil conspiracy, trespass, theft, conversion, outrage,

15    and WCPA claims.

16    6.    Rule 56(d) Continuance

17    Plaintiffs ask the court to continue MSJ Defendants' motion for summary

18    judgment pursuant to Federal Rule of Civil Procedure 56(d) so that they can conduct

19    additional discovery.  (MSJ Resp. at 21 (citing former Rule 56(f)).)  Specifically,

20    Plaintiffs assert that they need to obtain (1) "documentary evidence from a current

21    inspection" of the Property and (2) a "'wet ink' production of any alleged 'original

22

1   promissory note'" to oppose MSJ Defendants' motion.  (*Id.*)  The court denies Plaintiffs'

2   request.

3        Rule 56(d) provides that if the nonmoving party on a motion for summary

4   judgment "shows by affidavit or declaration that, for specified reasons, it cannot present

5   facts essential to justify its opposition, the court may:  (1) defer considering the motion or

6   deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or

7   (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  The rule "provides a device

8   for litigants to avoid summary judgment when they have not had sufficient time to

9   develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995,

10   1000 (9th Cir. 2002) (discussing former Rule 56(f), the predecessor to Rule 56(d)).  To

11   prevail on a Rule 56(d) motion, the party opposing summary judgment "must make

12   '(a) a timely application which (b) specifically identifies (c) relevant information,

13   (d) where there is some basis for believing that the information sought actually exists.'"

14   *Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125,

15   1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784

16   F.2d 1472, 1475 (9th Cir. 1986)).  Unless the party requesting a continuance "has not

17   diligently pursued discovery of the evidence," its request "should be granted almost as a

18   matter of course."  *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the*

19   *Fort Peck Rsrv.*, 323 F.3d 767, 773-74 (9th Cir. 2003).

20        As of March 8, 2024, Plaintiffs had not yet served discovery requests on any of the

21   MSJ Defendants, even though Plaintiffs filed this case in July 2022 and even though the

22   superior court set trial in May 2024.  (*See* 3/8/24 Sagara Decl. ¶ 6 (stating that Plaintiffs

had not conducted any discovery since this matter commenced in July 2022); 2/26/24

Pope Decl. ¶ 7 (acknowledging that the superior court set trial to begin on May 20,

2024).)  Plaintiffs offer no explanation for their failure to serve discovery on MSJ

Defendants or otherwise pursue an inspection of the Property over the past 20 months.

(*See generally* MSJ Resp.)  To the contrary, Plaintiffs' attorney asserts that he "would

have served discovery requests, including production and inspection requests" in January

2024 had MSJ Defendants not removed this matter to this court.  (2/26/24 Pope Decl.

¶¶ 6-7 (stating that counsel would have served discovery requests "within a few days of

getting" MSJ Defendants' response to Plaintiffs' state-court motion for partial summary

judgment).)  The court cannot conclude, on this record, that Plaintiffs have made a

"timely application" for discovery or that they have "diligently pursued discovery."  *See*

Fed. R. Civ. P. 56(d); *Burlington N. Santa Fe R.R. Co.*, 323 F.3d at 773-74.  Therefore,

the court denies Plaintiffs' request for a Rule 56(d) continuance.

>    7.    MERS

MSJ Defendants argue that the court should grant summary judgment to MERS

and dismiss it from this case because Plaintiffs have neither alleged nor "produced any

evidence that MERS had any involvement in any foreclosure proceedings or activity at

the Property."  (MSJ at 22.)  On February 29, 2024, however, the court granted the

parties' stipulated motion to dismiss MERS from this action with prejudice.  (*See

generally* 2/29/24 Order.)  Therefore, the court DENIES this portion of MSJ Defendants'

motion for summary judgment as moot.

1          8.      Declaratory Relief

2          Finally, MSJ Defendants assert that Plaintiffs' claims for declaratory relief must

3   fail because all of Plaintiffs' substantive claims "are either time barred or otherwise fail

4   as a matter of law" and thus "there is no underlying cause of action to support a claim"

5   for declaratory judgment under state or federal law.  (MSJ at 23.)  MSJ Defendants,

6   however, did not move for summary judgment on all of Plaintiffs' claims, and the court

7   has not granted MSJ Defendants' motion in all respects.  (*See generally* MSJ; *see supra*

8   §§ III.B.3-7.)  Thus, MSJ Defendants' bare assertion that Plaintiffs' requests for

9   declaratory relief must fail, without more, does not satisfy their burden to show "that

10  there is no genuine dispute as to any material fact" and that they are "entitled to judgment

11  as a matter of law."  Fed. R. Civ. P. 56(a).  Therefore, the court denies this portion of

12  MSJ Defendants' motion for summary judgment.

13                    **IV.    ORDER TO SHOW CAUSE**

14         Under Federal Rule of Civil Procedure 56(f), the court may, "[a]fter giving notice

15  and a reasonable time to respond . . . consider summary judgment on its own after

16  identifying for the parties material facts that may not be genuinely in dispute."  Fed. R.

17  Civ. P. 56(f)(3).  Pursuant to Rule 56(f), the court ORDERS Plaintiffs to show cause why

18  it should not dismiss their claims for violations of due process and the automatic

19  bankruptcy stay.  Plaintiffs shall file a response to this order, limited to 3,000 words in

20  length, by no later than **April 10, 2024**.  MSJ Defendants may file an optional reply,

21  limited to 2,000 words in length, by no later than **April 17, 2024**.

22

**A.    Due Process**

Plaintiffs bring a claim for "declaratory relief that Defendants violated due process rights gu[a]ranteed Plaintiffs by the Washington and U.S. Constitutions." (Am. Compl. ¶¶ 18.1-18.5.) Under both Constitutions, however, a plaintiff must demonstrate that the alleged violation was committed by a state actor. *See* 42 U.S.C. § 1983 (providing a cause of action "against any person who, under color of law, subjects another to the deprivation of any right guaranteed under the United States Constitution"); *State v. McCullough*, 784 P.2d 566, 568 (Wash. Ct. App. 1990) ("[I]n the civil context, Washington has refused to find a violation of the state due process provision absent state action."); *see also Ma v. Densmore*, No. C20-1355RAJ, 2021 WL 2682569, at *4 (W.D. Wash. June 30, 2021) ("Absent guidance from the legislature, there is no private right of action for violations of the Washington Constitution at all.").

Here, Plaintiffs have not alleged that any of the named Defendants acted under color of law, nor have they presented any evidence of the same. (*See generally* Am. Compl.; MSJ Resp.) Accordingly, the court ORDERS Plaintiffs to show cause why it should not dismiss Plaintiffs' due process claims for failure to demonstrate a genuine issue of material fact regarding whether any of the remaining Defendants is a state actor.

**B.    Violation of Bankruptcy Stay**

Plaintiffs also allege a claim for violation of the automatic bankruptcy stay in connection with the October 2019 canceled trustee's sale. (*See* Am. Compl. ¶¶ 7.1-7.4.) When a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay on actions against the debtor to collect pre-petition debts. 11 U.S.C. § 362(a). If a creditor

1  willfully violates the automatic stay, the Bankruptcy Code permits a debtor injured by the

2  violation to sue the creditor for "actual damages, including costs and attorneys' fees, and,

3  in appropriate circumstances, . . . punitive damages." 11 U.S.C. § 362(k). "A 'willful

4  violation' does not require a specific intent to violate the automatic stay. Rather, the

5  statute provides for damages upon a finding that the defendant knew of the automatic stay

6  and that the defendant's actions which violated the stay were intentional." *In re Bloom*,

7  875 F.2d 224, 227 (9th Cir. 1989) (citation omitted). An award of punitive damages

8  requires "some showing of reckless or callous disregard for the law or rights of others."

9  *Id.* at 228.

10       Here, MSJ Defendants have presented evidence that they were unaware of the

11  automatic stay that was imposed when Ms. Lysyy filed for bankruptcy just one hour

12  before the October 11, 2019 trustee's sale, and that they corrected their actions after they

13  learned about the stay. (*See supra* § II.A.) In addition, the court has concluded that

14  Plaintiffs have not, thus far, met their burden to produce admissible evidence that they

15  suffered damage due to MSJ Defendants' actions. (*See supra* § III.B.5.) Therefore, the

16  court ORDERS Plaintiffs to show cause why the court should not grant summary

17  judgment in MSJ Defendants' favor on Plaintiffs' claim for violation of the automatic

18  bankruptcy stay. With their response, Plaintiffs shall direct the court to admissible

19  evidence sufficient to demonstrate a genuine issue of material fact regarding each

20  element of their claim for violation of the stay.

21  //

22  //

1

# V.    CONCLUSION

2

For the foregoing reasons, the court ORDERS as follows:

3

1.    The court DENIES Plaintiffs' motion to remand (Dkt. # 31);

4

2.    The court GRANTS in part and DENIES in part MSJ Defendants' motion

5

for summary judgment (Dkt. # 14). The court GRANTS MSJ Defendants' motion for

6

summary judgment on Plaintiffs' claims for wrongful foreclosure, civil conspiracy,

7

trespass, theft, conversion, outrage, and violations of the FDCPA, DTA, FFA, and

8

WCPA. These claims are DISMISSED with prejudice. The court DENIES MSJ

9

Defendants' motion for summary judgment in all other respects.

10

3.    The court ORDERS Plaintiffs to show cause, by no later than **April 10,**

11

**2024**, why the court should not grant summary judgment in MSJ Defendants' favor on

12

Plaintiffs' claims for violations of due process and of the automatic bankruptcy stay.

13

Plaintiffs' response shall not exceed 3,000 words in length. MSJ Defendants may file an

14

optional reply, not to exceed 1,500 words in length, by no later than **April 17, 2024**.

15

Dated this 3rd day of April, 2024.

16

17

18

JAMES L. ROBART
United States District Judge

19

20

21

22