UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATYANA LYSYY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY, et al., <br><br> Defendants. | CASE NO. C24-0062JLR <br><br> ORDER |

## I.  INTRODUCTION

On April 3, 2024, the court issued an order (1) denying Plaintiffs Tatyana Lysyy and Vasiliy Lysyy's (together, "Plaintiffs") motion to remand; (2) granting in part and denying in part Defendants Deutsche Bank National Trust Company, as Trustee on Behalf of the Holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1 (the "Trust"), Select Portfolio Servicing, Inc. ("SPS"), Safeguard Properties Management, LLC ("Safeguard"), and Residential RealEstate

ORDER - 1

Review, Inc.'s ("RRR") (collectively, "Defendants") motion for summary judgment; (3) denying Plaintiffs' request for discovery pursuant to Federal Rule of Civil Procedure 56(d); (4) ordering Plaintiffs to show cause, pursuant to Rule 56(f), why the court should not dismiss their claims for violations of due process and of the automatic bankruptcy stay; and (5) granting Defendants leave to file a reply in support of dismissal of those claims.  (4/3/24 Order (Dkt. # 54); *see* MTR (Dkt. # 31); MSJ (Dkt. # 14).[1])  On April 17, 2024, Plaintiffs filed a motion for reconsideration of the portions of the order in which the court denied their motion to remand and granted Defendants' motion for summary judgment on their trespass and Washington Consumer Protection Act ("WCPA") claims. (MFR (Dkt. # 60).)  The court ordered Defendants to respond to the motion and granted Plaintiffs leave to file a reply.  (4/18/24 Order (Dkt. # 62).)

Briefing on the order to show cause and the motion for reconsideration was complete on May 3, 2024.  (*See* OSC Resp. (Dkt. # 61); OSC Reply (Dkt. # 63); MFR Resp. (Dkt. # 64); MFR Reply (Dkt. # 65).)  The court has reviewed the parties' submissions, the relevant portions of the record, and the governing law.  Being fully advised, the court (1) GRANTS in part and DENIES in part Plaintiffs' motion for reconsideration; (2) DISMISSES Plaintiffs' due process claims with prejudice; and (3) DISCHARGES its order to show cause with respect to Plaintiffs' claim for violation of the automatic bankruptcy stay.

---

[1] The motion for summary judgment was also filed on behalf of former Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"). (*See* MSJ at 1.)  The parties stipulated to dismiss MERS from this action before the motions for summary judgment and remand were fully briefed.  (*See* 2/29/24 Order (Dkt. # 38).)

ORDER - 2

1 | **II.   ANALYSIS[2]**

Because Plaintiffs' motion for reconsideration implicates, in part, the court's jurisdiction over this matter, the court begins by addressing that motion before turning to the order to show cause.

**A.   Motion for Reconsideration**

Plaintiffs ask the court to reconsider its denial of their motion to remand and its dismissal of their trespass and WCPA claims. (*See generally* MTR.) The court sets forth the standard of review and then considers Plaintiffs' motion.

1.   Standard of Review

"Motions for reconsideration are disfavored," and "[t]he court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Local Rules W.D. Wash. LCR 7(h)(1). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they

---

[2] The court incorporates into this order the factual and procedural background set forth in its April 3, 2024 order. (*See* 4/3/24 Order at 3-10.) The court assumes that the reader is familiar with that order.

could reasonably have been raised earlier in the litigation.'" *Id.* (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883).

2. <u>Remand</u>

Plaintiffs urge the court to reconsider its denial of their motion to remand on three grounds. First, Plaintiffs assert that the court must remand this case because Defendants did not obtain—and still have not obtained—Defendant Quality Loan Service Company's ("QLS") consent before filing their notice of removal. (MFR at 2.) Second, Plaintiffs argue that removal was untimely because the unserved Defendants—the Trust and MERS—appeared in the state court litigation more than a year before they filed their notice of removal. (*Id.* at 2-6; *see* MTR at 5 (acknowledging that Plaintiffs never "formally served" the Trust and MERS).) Finally, Plaintiffs assert that the unserved Defendants waived their right to remove by litigating in state court before filing their notice of removal. (MFR at 6.) The court considers each argument below.

a. QLS's Consent

In their original motion, Plaintiffs argued that remand was required because Defendants failed to obtain QLS's affirmative consent to removal under 28 U.S.C. § 1446(b)(2)(A). (MTR at 7; *see* Not. of Removal (Dkt. # 1) ¶ 25 ("Defendants that have appeared consent or do not object to removal.").) The court rejected this argument for two reasons. First, the court concluded that this argument "fails because Plaintiffs

themselves stipulated that QLS need not 'participate in the litigation proceedings in any manner' except to comply with orders for non-monetary relief and cooperate with discovery." (4/3/24 Order at 12-13 (citing 3/4/24 Sagara Decl. (Dkt. # 41) ¶ 5, Ex. C ("Stipulation of Nonparticipation") ¶¶ 2-3).)  Second, the court concluded that Defendants' failure to join QLS was curable, even after the 30-day removal deadlines set forth in 28 U.S.C. § 1446(b)(1) and 28 U.S.C. § 1446(b)(3) expired.  (*Id.* at 13 (citing *Destfino v. Reiswig*, 630 F.3d 952, 956-57 (9th Cir. 2011) (noting that if all properly served defendants did not join in the notice of removal, the district court may allow the removing defendants to cure that defect before entry of judgment)).)

Plaintiffs again assert that the court must remand the matter because Defendants have not cured their failure to obtain QLS's consent before removal.  (MFR at 2 (quoting *Destfino*, 630 F.3d at 956-57).)  Plaintiffs do not address the court's conclusion that Plaintiffs themselves excused QLS from participating in this matter by filing the Stipulation of Nonparticipation in state court.  (*See generally* MFR; *see* 4/3/24 Order at 12-13.)  Nevertheless, federal courts must strictly construe the removal statute and must reject jurisdiction if there is any doubt as to the right of removal in the first instance. *Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  The removing defendant faces a "strong presumption" against removal and bears the burden of establishing, by a preponderance of the evidence, that removal was proper.  *Gaus*, 980 F.2d at 566-67.  And *Destfino* provides that a removing defendant may cure a failure to obtain a codefendant's consent—it does not excuse a removing defendant from doing so.  *Destfino*, 630 F.3d at

956-57. Therefore, the court ORDERS Defendants to file, by no later than 30 days from the date of this order, evidence that they have obtained QLS's consent to removal. *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) (emphasizing that all codefendants must join in the removal); *see id.* (holding that proof of joinder is met if "one defendant avers that all defendants consent to removal"). Failure to do so may result in remand.

### b. Unserved Defendants

Second, Plaintiffs ask the court to reconsider its conclusion that removal by the Trust and MERS was timely because Plaintiffs had never served those Defendants with a summons and complaint and thus never triggered the 30-day period to file a notice of removal. (MFR at 2-6; *see* 4/3/24 Order at 14-15.) They assert that all of the removing Defendants—even those that had not been served—"had been 'formally brought under the court's authority' by filing Notices of Appearances in the state court action" and "formally exercised [that] authority" by filing motions. (MFR at 5-6 (quoting *Sharma v. HSI Asset Loan Obligation Tr. 2007-1 by Deutsche Bank Nat'l Tr.*, 23 F.4th 1167, 1172 (9th Cir. 2022)).) They also reiterate the argument they made in their original motion that service of the complaint (or amended complaint) took place when the parties attached copies of the complaints to their filings in state court. (*Id.*; *see* MTR at 5-6.)

Contrary to Plaintiffs' assertion, "actual notice of the action is insufficient; rather, the defendant must be 'notified of the action, and brought under a court's authority, by *formal process*,' before the removal period begins to run." *Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691*, 635 F.3d 1128, 1132-33 (9th Cir. 2011)

1  (emphasis added) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999)).  Plaintiffs have not directed the court to a single post-*Murphy Brothers* case in which a court concluded that a defendant's receipt of the complaint, unaccompanied by service of a summons, triggered the 30-day removal period.  (*See generally* MFR); *see Murphy Bros.*, 526 U.S. at 347-48 ("[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

Plaintiffs' reliance on *Anderson v. State Farm Mutual Automobile Insurance Co.*, 917 F.3d 1126, 1130 (9th Cir. 2019), for the proposition that service of a summons (or waiver of service) is unnecessary to "formally" bring a defendant "under the court's authority" is misplaced.  (*See* MFR at 5-6.)  In that case, the Ninth Circuit held that where the plaintiff served the summons and complaint on a statutorily designated agent—specifically, the state insurance commissioner—the 30-day removal clock did not begin to run until the actual defendant received the pleading.  *Anderson*, 917 F.3d at 1130.  Thus, the defendant in *Anderson* was "formally brought under the court's authority" by service of process on the insurance commissioner, but the removal clock did not begin to run until the defendant received the summons and complaint from the insurance commissioner.  *Id.*  Here, in contrast, Plaintiffs *never* formally served the Trust and MERS before Defendants removed this case, through a statutorily designated agent or otherwise.  (*See* MTR at 5.)  The court therefore declines to reconsider its prior order on this ground.

ORDER - 7

### c. Waiver

Finally, Plaintiffs argue that the court should find that Defendants waived or are estopped from removing this action "by sitting on [their] rights" in state court. (MFR at 6.) Plaintiffs cite three cases to support their argument that a party may waive its rights "in removal situations," but none involve a fact pattern like the one presented here. First, in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 16-17 (1951), the defendant who removed the action was estopped from later protesting on appeal that there was no right of removal in the first instance. Second, in *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980), the plaintiff waived its right to remand by failing to object to an untimely removal until after judgment was entered. The Ninth Circuit stated that "[a]lthough the time limit is mandatory and a timely objection to a late petition will defeat removal, a party may waive the defect or be estopped from objecting to the untimeliness by sitting on his rights." *Id.* (citing *Finn*, 341 U.S. at 17). And finally, although the district court in *Transport Indemnity Co. v. Financial Trust Co.*, 339 F. Supp. 405, 407 (C.D. Cal. 1972), held that a second-served defendant had no right to remove where the first-served defendant failed to remove within 30 days, the Ninth Circuit abrogated that rule in *Destfino*. *Destfino*, 630 F.3d at 956 (holding that each defendant is entitled to 30 days to exercise its removal rights after being served). The case Plaintiffs cite in their reply fares no better because there, too, the defendant was served in state court before filing a notice of removal. (*See* MFR Reply at 2 (quoting *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 789 (9th Cir. 2018)).) Plaintiffs bring no authority to the court's attention holding that a defendant who has never been formally

served sacrifices its right to remove a federal question case by participating in the state-court action.  (*See generally* MFR.)  For these reasons, the court GRANTS Plaintiffs' motion for reconsideration of the court's order denying their motion to remand with respect to Defendants' obligation to obtain QLS's consent to removal and DENIES the motion with respect to all other grounds for remand.

3. <u>WCPA and Trespass Claims</u>

Plaintiffs also ask the court to reconsider its ruling granting summary judgment to the Defendants on their trespass and WCPA claims.  (MFR at 6-9.)  In their motion, Defendants argued that they were entitled to summary judgment on these claims (among others) because Plaintiffs could not prove with admissible evidence that Defendants' actions caused them to suffer damages.  (MSJ at 18-21; *see* 4/3/24 Order at 24-25 (discussing Plaintiffs' responses to Defendants' discovery requests).)  Plaintiffs' response to the motion was "difficult to parse and light on citations to the record."  (4/3/24 Order at 25-27.)  Instead of focusing on the issues Defendants raised in their motion and identifying with particularity the evidence that supported their claims, Plaintiffs argued at length about irrelevant matters.  (*See, e.g.*, MSJ Resp. (Dkt. # 45) at 1-2 (listing affirmative requests for relief); *id.* at 2-3, 20 (arguing about irregularities with Ms. Lysyy's promissory note); *id.* at 2, 11-12 (seeking a finding that SPS is a "debt collector" under the FDCPA despite conceding they had no FDCPA claim); *id.* at 3-4, 18-19 (arguing that there are two separate trusts involved in this matter); *id.* at 13-16 (arguing that Plaintiffs' loan should be "stripped down to principal only" due to unpleaded violations of the Washington Collection Agency Act ("WCAA")); *id.* at 16 (arguing that

the court should enjoin any future trustee's sales of the Property).) Nevertheless, the court discerned four possible damages arguments in the three pages that Plaintiff identified as addressing "Damages and other Related Issues." (4/3/24 Order at 25-27; *see* MSJ Resp. at 20-22.) After considering each one, the court concluded that Plaintiffs had not identified with sufficient particularity the admissible evidence that supported their claim for damages and granted Defendants' motion for summary judgment. (4/3/24 Order at 27.) The court also denied Plaintiffs' request for Rule 56(d) relief, concluding that Plaintiffs had not made a "timely application" for discovery nor "diligently pursued discovery" based on the case schedule set by the state court before removal. (*See id.* at 28-29.)

Plaintiffs now raise two arguments in favor of reconsideration. First, Plaintiffs contend that the court erred in dismissing their trespass claim because a landowner may "recover nominal or punitive damages" for any physical trespass, even without a showing of actual damages. (MFR at 6 (quoting *Bradley v. Am. Smelting & Refining Co.*, 709 P.2d 782, 791 (Wash. 1985).) Plaintiffs fail, however, to explain why they could not have raised this argument and authority in response to Defendants' motion for summary judgment. (*See generally id.*; *see also* MSJ Resp. at 13 (arguing that proof of damages was not required to prevail on several other claims).) The court denies reconsideration on this ground.

Second, Plaintiffs argue that the court erred by failing to consider Mr. Lysyy's declaration as evidence of actual damages suffered as a result of "Defendants' wrongly prolonged property occupation." (MFR at 6-9 (citing MSJ Resp. at 21; V. Lysyy Decl.

(Dkt. # 44) ¶¶ 9-13).) Plaintiffs, however, cited paragraphs 9 through 13 of Mr. Lysyy's declaration in their response to the motion for summary judgment only once, and only as support for the following statement: "Plaintiffs freely admit the property needed substantial repairs *before* Defendants seized it in October 2019, especially deteriorating siding and legal roof." (MSJ Resp. at 21 (emphasis added) (citing V. Lysyy Decl. ¶¶ 9-13).) The court determined that this statement did not establish an issue of material fact as to whether Defendants caused damage to the Property *after* the alleged October 2019 "seizure." (*See* 4/3/24 Order at 26 ("Plaintiffs do not, however, direct the court to evidence of new or exacerbated damage to the Property during that time period[.]").) Plaintiffs also asserted that they could have "used [the Property], lived in it," "rented it out," "repaired it," or "tried to sell" it if it wasn't in Defendants' possession, but they cited nothing to support this assertion. (*See* MSJ Resp. at 21.) Plaintiffs then cited two appraisal reports but did not explain how those reports supported their damages theory. (*See id.* at 22.) Finally, Plaintiffs cited an email drafted by their attorney as purported evidence of "damages itemization." (*Id.*)

Plaintiffs do not explain why they failed to emphasize the significance of Mr. Lysyy's declaration to their ability to prove damages, nor do they explain why they chose to devote less than three pages of their 22-page brief to the issue of damages when it was their burden to identify the specific portions of the record that supported their claims. (*See generally* MFR; MSJ Resp.); *see* Fed. R. Civ. P. 56(c); *Keenan v. Allan*, 91 F.3d 1275, 1278-79 (9th Cir. 1996) ("We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." (quoting

*Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995))). For these reasons, the court concludes that Plaintiffs have not demonstrated "manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence" and DENIES the motion for reconsideration of the court's order dismissing Plaintiffs' trespass and WCPA claims. Local Rules W.D. Wash. LCR 7(h)(1).

**B.     Order to Show Cause**

In its April 3, 2024 order, the court ordered Plaintiffs to show cause why the court should not grant summary judgment in Defendants' favor on their claims for violations of their due process rights under the United States and Washington Constitutions and of the automatic bankruptcy stay. (4/3/24 Order at 30-32; *see* Am. Compl. (Dkt. # 1-3) ¶¶ 18.1-18.5 (due process), 7.1-7.4 (bankruptcy stay)); Fed. R. Civ. P. 56(f)(3) ("After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."). In response, Plaintiffs withdrew their due process claim. (OSC Resp. at 1.) Therefore the court GRANTS summary judgment in Defendants' favor on Plaintiffs' due process claim and DISMISSES that claim with prejudice. Plaintiffs, however, urge the court to maintain their claim for violation of the automatic bankruptcy stay. (*See id.* at 1-8.)

An individual injured by any willful violation of the automatic bankruptcy stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). "A 'willful

violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989) (citation omitted). The court preliminarily concluded, based on the record then before it, that it appeared that Plaintiffs would be unable to establish a genuine issue of material fact regarding (1) whether Defendants willfully violated Ms. Lysyy's bankruptcy stay and (2) damages caused by the alleged violation of the stay. (4/3/24 Order at 31-32.) The court concludes that Plaintiffs have demonstrated that the court should not grant summary judgment *sua sponte* on their claim for violation of the automatic bankruptcy stay.

First, Plaintiffs have directed the court to sufficient evidence of willfullness to allow their claim to go forward. Plaintiffs argue that "[t]here is no dispute SPS knew of the automatic stay by October 14, 2019 . . . and prima facie evidence SPS knew on October 12, 2019[.]" (OSC Resp. at 3.) With respect to the earlier date, Plaintiffs point to the notice sent by the Bankruptcy Noticing Center on October 12, 2019, by "electronic transmission" to the email address "jennifer.chacon@spsservicing.com." (12/29/23 Pope Decl. (Dkt. # 2-2) ¶ 11, Ex. 7.) The parties hotly dispute who provided that email address to the Bankruptcy Court and whether sending notice to that email address would give SPS actual notice of Ms. Lysyy's bankruptcy filing. (*See* OSC Resp. at 2-3; OSC Reply at 5.) Viewing the facts in the light most favorable to Plaintiffs, however, the court concludes that there is a genuine dispute of material fact regarding whether SPS knew by October 12, 2019, that the automatic bankruptcy stay was in place. *See* Fed. R. Civ. P.

56(a).  In any event, it is undisputed that SPS knew of the automatic stay by no later than October 14, 2019, when QLS gave SPS's foreclosure department notice of the filing. (*See* Pittman Decl. (Dkt. # 18) ¶ 14.)  Nevertheless, on October 17, 2019, SPS sent Ms. Lysyy a letter in which it informed her that it had started eviction proceedings, and Safeguard entered and secured the Property at RRR's direction.  (*See* T. Lysyy Decl. (Dkt. # 43) ¶ 8[3], Ex. 5; Pittman Decl. ¶ 16.)  The court concludes that this is sufficient evidence of willfullness to allow the claim to proceed at this time.

Second, the court concludes that Plaintiffs have identified sufficient evidence of damages caused by Defendants' violation of the stay to maintain their claim.  The court agrees with Plaintiffs that they may rely on Mr. Lysyy's testimony as evidence of injury and damages.  (*See* OSC Resp. at 5-8); *Cunningham v. Town of Tieton*, 374 P.2d 375, 378 (Wash. 1962) ("The decisional law leaves no room for doubt that the owner may testify as to the value of his property because he is familiar enough with it to know its worth.").  In addition, there is ample opportunity for Plaintiffs to continue to develop evidence to support their claim because the parties have agreed to keep discovery open until November 4, 2024.  (*See* JSR (Dkt. # 66) at 2-3 (stating that the parties will conduct discovery regarding the automatic bankruptcy stay claim (among other claims)).)  Thus, the court is satisfied that Plaintiffs have shown that the court should not *sua sponte* grant

//

//

//

---

[3] This citation refers to the first of two paragraphs labeled "8" in Ms. Lysyy's declaration.

summary judgment in Defendants' favor on their claim for violation of the automatic bankruptcy stay.[4]  Accordingly, the court DISCHARGES its order to show cause.

### III.   CONCLUSION

For the foregoing reasons, the court:

1. GRANTS in part and DENIES in part Plaintiffs' motion for reconsideration (Dkt. # 60);

2. ORDERS Defendants to file, by no later than **June 27, 2024**, evidence of QLS's consent to removal;

3. GRANTS summary judgment in Defendants' favor on Plaintiffs' due process claims and DISMISSES those claims with prejudice; and

4. DISCHARGES its order directing Plaintiffs to show cause why the court should not dismiss their claim for violation of the automatic bankruptcy stay (Dkt. # 54).

Dated this 28th day of May, 2024.

JAMES L. ROBART
United States District Judge

---

[4] This order does not preclude Defendants from moving for summary judgment on this claim in the future, if appropriate.