Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

TATYANA LYSYY, VASILIY LYSYY, et al.,

Plaintiffs,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY and DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee etc., et al.,

Defendants.

NO. 2:24-cv-00062-JLR

**PLAINTIFFS' RESPONSE TO DEFENDANTS' 2nd MOTION FOR SUMMARY JUDGMENT**

**Note on Motion Calendar: Tuesday, December 24, 2024**

**Oral Argument Requested**

Plaintiffs Tatyana Lysyy and Vasiliy Lysyy, through their attorney Richard L. Pope, Jr., present this response to the Second Motion for Summary Judgment filed by Defendants Select Portfolio Servicing, Inc. ("SPS"), Safeguard Properties, LLC ("Safeguard") Residential RealEstate Review, Inc. ("RRR"), Mortgage Electronic Registration Systems, Inc. (MERS), and Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1 (the "Trust") (ECF 88).

**Relief Requested**

Defendants' Second Motion for Summary Judgment should be denied.

**Evidence Relied Upon**

1. Declaration of Richard L. Pope, Jr., filed December 29, 2023 state court (ECF 2-2)

2. (Second) Declaration of Richard L. Pope, Jr., filed February 26, 2024 (ECF 35)

3. Third Declaration of Richard L. Pope, Jr., filed March 4, 2024 (ECF 42)

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
2nd MOTION FOR SUMMARY JUDGMENT -- 1**

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com

| | | |
|---|---|---|
| 1 | 4. | Declaration of Tatyana Lysyy, filed March 4, 2024 (ECF 43) |
| 2 | 5. | Declaration of Vasiliy Lysyy, filed March 4, 2024 (ECF 44) |
| 3 | 6. | Second Declaration of Tatyana Lysyy, filed December 17, 2024 (ECF 94) |
| 4 | 7. | Second Declaration of Vasiliy Lysyy, filed December, 2024 (ECF 95) |
| 5 | 8. | Declaration of Patrick Pittman, filed February 5, 2024 (ECF 18) |

### Facts and Argument in Response to Motion

Defendants largely are attempting to re-litigate issues the Court has previously decided in favor of Plaintiffs' ability to maintain suit in the Order of May 28, 2024 concerning show cause on bankruptcy stay violation (ECF 67) and in the Order of December 11, 2024 concerning entry as part of final judgment for Plaintiffs' unpaid $4,500.00 sanctions violation order. (ECF 92)

Plaintiffs will respond to each of Defendants' Motion for Summary judgment points, including detailed and supported references to the record in this case, and rebut each of them as appropriate. Plaintiffs will respond to actual arguments Defendants have made for dismissal of each, recognizing that Defendants have not elected to contest certain matters in their motion.

### Bankruptcy Stay Violation Damages Issues

While Defendants do not seem to contest Plaintiffs' assertions that they committed a willful violation of the automatic stay, Defendants instead argue as a matter of law that Plaintiffs suffered absolutely no compensable damages, and therefore cannot recover either compensatory or punitive damages under 11 U.S.C. § 362(k).

This Court previously determined that Plaintiffs presented prima facie evidence of damages from the alleged violation of automatic stay in its Order of May 28, 2024 (ECF 67) and should deny Defendants' current MSJ for the exact same reasons as well.

When a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay on actions against the debtor to collect pre-petition debts, or to obtain property of the debtor or bankruptcy estate. 11 U.S.C. § 362(a). If a creditor willfully violates the automatic stay, the Bankruptcy Code permits a debtor injured by the violation to sue the creditor for "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, . . . punitive

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
2nd MOTION FOR SUMMARY JUDGMENT -- 2**

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com

damages." 11 U.S.C. § 362(k). "A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989) (citation omitted). An award of punitive damages requires "some showing of reckless or callous disregard for the law or rights of others." *Id.* at 228.

The most egregious unlawful act by Select Portfolio Servicing (SPS) was done several days after Tatyana Lysyy filed Chapter 13 in Case No. 19-13736 on October 11, 2019, by seizure on October 17, 2019 of the Lysyy's Auburn home, mailing them a letter on October 16, 2019 that eviction proceedings were started, and billing them $700.00 eviction fees (later reversed).

1st Pope Decl., Exhibit 7 (ECF 2-2) is the official Notice of Chapter 13 Bankruptcy Case issued by the U.S. Bankruptcy Court for the Western District of Washington in Case No. 19-13736, along with a Certificate of Notice by the Bankruptcy Noticing Center (BNC), stating that SPS was notified by electronic transmission, to jennifer.chacon@spservicing.com (the SPS designated service method) on October 12, 2019 at 01:56:30, of this bankruptcy filing. SPS gave BNC this e-mail address to electronically receive court notices under **Bankr.R. 2002(g)(4) and 9036; and Federal Rule 5(b)(2)(E) F.R.Civ.P**. Third Pope Decl., ¶¶11-13, exs. 3,4. (ECF 42)

For SPS to come back four years later, after giving the federal courts Ms. Chacon's e-mail address as the official method to notify SPS of bankruptcy filings, and claim they didn't mean it, is frankly absurd. Regardless, Plaintiffs have demonstrated a prima facie case that SPS received official notice from BNC on October 12, 2019, and must survive summary judgment on this point, even if SPS can advance this bizarre defense (contrary to federal court rules) at trial.

SPS expressly admits it received actual notice of the October 11, 2019 bankruptcy filing from Quality Loan on October 14, 2019 (Pittman Decl. ¶14), and from one of its information vendors on October 15, 2019 (Pittman Decl. ¶15) – before SPS violated the automatic stay.

Most tellingly, SPS admits that it NEVER received a Trustee's Deed from Quality Loan after the scheduled sale date of October 11, 2019. (Pittman Decl. ¶18) This alone is dispositive:

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**2nd MOTION FOR SUMMARY JUDGMENT -- 3**

RCW 61.24.050 requires "**physical delivery of the trustee's deed to the purchaser**" to grant the purchaser "all of the right, title, and interest in the real … property sold at the trustee's sale".

In Jordan v. Nationstar Mortgage, LLC, 185 Wn.2d 876, 374 P.3d 1195 (2016), the Washington Supreme Court held that it was illegal for a lender to seize residential property when the mortgage loan was delinquent. The Jordan court held that a lender could only take over possession once 20 days had passed since an actual trustee sale, and then only by voluntary relinquishment by the former owner or by execution of unlawful detainer writ of restitution.

The bankruptcy petition filed by Tatyana Lysyy (T.Lysyy Decl. ex. 4, ECF 43) clearly shows it was filed at 8:08 a.m. on October 11, 2019 – over an hour before the scheduled 10:00 a.m. foreclosure sale. So the foreclosure sale itself was already void under the automatic stay. SPS clearly had notice of the bankruptcy filing, and was therefore placed on notice of the bankruptcy stay with a duty to follow the law. Any question about timing could have been resolved in minutes by logging onto PACER system and looking at the bankruptcy petition.

But even if the trustee's sale had happened before petition filing, SPS's actions were ALL illegal and violated the bankruptcy stay: (1) RCW 61.24.050 gave SPS no rights until a trustee's deed was delivered (which Quality Loan never delivered) and (2) Jordan required SPS to wait 20 days to take possession, even if there had been a valid sale. SPS was not entitled to do ANYTHING regardless, and its unlawful actions (in any event) violated the automatic stay.

There is no dispute SPS knew of the automatic stay by October 14, 2019 (Pittman Decl. ¶14, ECF 18) and prima facie evidence SPS knew on October 12, 2019. (BNC Notice, 1st Pope Decl., Exhibit 7). Nor is there any dispute SPS acted intentionally on October 17, 2019 by seizing the Auburn property and locking Plaintiffs out.

As for punitive damages, there is "reckless or callous disregard for the law or rights of [Plaintiffs], In re Bloom, 875 F.2d at 228. First, despite clear notice of the bankruptcy filing, SPS ac admits it did not determine whether the trustee sale took place before the hour of bankruptcy filing. This is reckless disregard as to whether the sale was even valid. Second, Jordan had been established case law since 2016, and prohibited SPS from taking possession for

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
2nd MOTION FOR SUMMARY JUDGMENT -- 4**

20 days, even if there had been a valid sale. Third, Quality Loan never delivered SPS a trustee deed, which prevented them from having possession rights under RCW 61.24.050.

Even though SPS had notice through several different means of Debtor's bankruptcy filing, SPS unlawfully took possession of the Lysyy's property on October 17, 2019, changed the locks to the property, posted "No Trespassing Signs", and threatened the Lysyy's with criminal trespassing charges if they entered their own property. SPS sent the Lysyy's an October 16, 2019 letter, stating that eviction proceedings were being filed against them, and that they would be billed for the costs of these eviction proceedings. SPS then billed the Lysyy's $700.00 for the costs (later reversed) of these purported eviction proceedings. SPS has maintained "No Trespassing" signs on the Lysyy's property to this very day, and has never formally restored possession to the Lysyy's. (First Pope Decl., ¶12, ex. 8; Tatyana Lysyy Decl., ¶¶8,7,8, exs. 5-7; Vasiliy Lysyy Decl. ¶¶5-8, exs. 1-3)

While SPS claims to have relinquished control of Auburn property November 1, 2019, correspondence from McCarthy Holthus and photographs taken by Plaintiffs' counsel demonstrate that SPS maintained possession or control over the Property from October 17, 2019, until at least May 2, 2022, and further until the present day. (See 12/29/23 Pope Decl. ¶ 13, Ex. 8 at 6811 (May 2, 2022 email from McCarthy Holthus providing the code to a lockbox at the Property); 2/26/24 Pope Decl. (Dkt. # 35) ¶ 412, Ex. 1 (photos Plaintiffs' attorney took on December 31, 2023 ("Pope Photos"), showing a lockbox on the front door of the property and a "No Trespassing" sign).

This time around, Plaintiffs have further provided evidence, from City of Auburn public records request, showing that Defendants have directed the Auburn Police Department to post the "No Trespassing" sign on Plaintiff's Auburn property from 2019 to the present date. (2nd V.Lysyy Decl. ¶3, ex. 1, ECF 95) This directly contradicts the Pittman Decl. and Defendants' arguments, falsely asserting they had no involvement at all with the "No Trespassing" sign.

Loss of dominion and control from October 17, 2019 to present (and certainly at least through May 2, 2022, as admitted by prior counsel), damages Plaintiffs through loss of use.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**2nd MOTION FOR SUMMARY JUDGMENT -- 5**

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
**Telephone: (425) 829-5305**
**E-mail: rp98007@gmail.com**

Had Plaintiffs had control of their property the last four plus years, they could have used it, lived in it, or rented it out. They could have repaired it themselves. They could have tried to sell the property. It is for a finder of fact to determine how much the damages for loss of use.

Under Washington common law, "any [physical] trespass entitle[s] a landowner to recover nominal or punitive damages for the invasion of his property". Bradley v. American Smelting and Refining Co., 104 Wn.2d 677, 691, 709 P.2d 782 (1985) (distinguishing physical trespass from trespass by airborne pollutants, the latter of which does required actual damages). Lavington v. Hillier, 22 Wn. App. 2d 134, 510 P.3d 373 (2022), cited by Defendants in prior motion practice, maintains this rule:

> In addition, as stated above, Bradley quoted § 158 of the Restatement (Second) of Torts , which states that **liability exists for an intentional entry into land in the possession of another "irrespective of whether he thereby causes harm to any legally protected interest of the other."** Bradley, 104 Wn.2d at 681, 709 P.2d 782. And the court later quoted from comment d to § 821D of the Restatement , which distinguishes between trespass and private nuisance: "**For an intentional trespass, there is liability without harm**; for a private nuisance, there is no liability without significant harm. **In trespass an intentional invasion of the plaintiff's possession is of itself a tort, and liability follows.**" Bradley, 104 Wn.2d at 689, 709 P.2d 782 (emphasis added).
>
> Further, § 163 of the Restatement states, **"One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest."** (Emphasis added.) A comment to § 163 states: "**The wrong for which a remedy is given under the rule stated in this Section consists of an interference with the possessor's interest in excluding others from the land. Consequently, even a harmless entry or remaining, if intentional, is a trespass.**" RESTATEMENT § 163 cmt. d (emphasis added); *see also* Davis v. Westphal, 389 Mont. 251, 259, 405 P.3d 73 (2017) (stating that **"[b]ecause the legal harm is the interference with another's right to exclusive possession of property, an unauthorized tangible presence on the property of another constitutes a trespass regardless of whether the intrusion caused any other harm"**).

Lavington, 510 P.3d at 382-83 (bolding emphases added)

Washington case law – most recently summarized in Lavington in 2022 – clearly allows property owners to recover damages for physical trespass to land (and even more so, buildings located on land) without any proof of actual harm.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**2nd MOTION FOR SUMMARY JUDGMENT -- 6**

Therefore, even if there were absolutely no actual damages caused by Defendants wrongly exercising dominion and control over Plaintiffs' Auburn property for over four years, Plaintiffs are still entitled to both nominal damages and punitive damages under Washington common law.

Moreover, Plaintiffs have provided the Court with admissible evidence, in the declaration of Vasiliy Lysyy (ECF 44) of suffering actual damages as a result of Defendants' wrongly prolonged property occupation.

> 5. Sometime around October 17, 2019, Defendants took possession of our Auburn home, removed all the existing locks, and locked my wife and I out of the property, by placing a lockbox on the FRONT DOOR and maintaining possession of the keys and access codes. […]
>
> 9. The Auburn home has very serious issues with deteriorating siding and a leaking defective roof. These problems were documented in the July 2019 inspection report by Michael Marquardt and certainly have not improved since then. They are also referenced in the 2022 appraisal report by Aleksandr Kanonik, although he is not a certified home inspector. I am not aware of anything Defendants have done to address these two very serious issues since they took possession of the Auburn home in October 2019.
>
> 10. We would need to have access to the Auburn home in order to have a current and proper home inspection to document current condition, including further deterioration of the siding and the leaking roof (and resulting damage from the rainwater getting in).
>
> 11. If we are allowed to do a new home inspection, then we can get contractor estimates as to what I would cost to do the work at the present time and present condition, and compare these to what this would have cost back in 2019 based on the conditions in 2019.
>
> 12. I note Mr. Kanonik roughly estimated repair costs at $115,000 in his 2022 appraisal, while Mr. Marquardt did not have a dollar figure estimated in his July 2019 home inspection report. We obviously need current repair costs, and what they were back in 2019.
>
> 13. While the property would need to be repaired to be rented out, we have lost the ability to either repair it or rent it since October 2019. While a real estate broker would have a more valuable opinion, homes obviously have some positive rental value if they can be rented out. Based on Zillow and looking at comparable property ads, I estimate rental value to be $3,500 per month, or $182,000 for the 52 month period from October 2019 to February 2024.
>
> 14. In the alternative, the debt claimed owed by Deutsche Bank and SPS would have increased by accrued interest, property taxes, insurance premiums, and other escrow charges by many tens of thousands of dollars during the period October 2019 to date.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**2nd MOTION FOR SUMMARY JUDGMENT -- 7**

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
**Telephone: (425) 829-5305**
**E-mail: rp98007@gmail.com**

Vasiliy Lysyy Decl., ECF 44, ¶¶ 5, 9-14

But Plaintiffs have provided the Court with admissible evidence, including the declaration of Vasiliy Lysyy (ECF 44, ¶¶ 9-14) of suffering actual damages as a result of Defendants' wrongly prolonged property occupation.

Plaintiffs both provided evidence of the alleged damages, including an estimate of lost rental value, through the Vasiliy Lysyy declaration testimony, and then referenced the same Vasiliy Lysyy declaration testimony in their MSJ response. Plaintiffs also demonstrated that property taxes and interest accrued during the four plus years of trespass, increasing debt owed by Plaintiffs by many tens of thousands of dollars, which is an alternative measure of damages.

In prior motions practice, Defendants have the temerity to argue that their October 2019 replacement of the original keyed entry front door lock with a coded lockbox cannot possibly damage Plaintiffs, because they were given the lockbox entry code by other lawyers for Defendants back in May 2022! But fundamentally altering home lock systems IS damage!

Here, Plaintiffs have a unsightly and unwieldy lockbox on the front door of the Auburn property, instead of a keyed entry lock for which they have keys to. Defendants further do not deny that they replaced ALL of the other keyed entry locks on the Auburn home, and do not claim to have even provided a coded lockbox for entering the other outside locked doors.

Clearly, there is a non-zero economic cost for removing the coded lockbox and restoring a keyed entry front door lock. There is also a non-zero economic cost to either replace the other outside door locks or to rekey them, so Plaintiffs can open them with keys as well. It is not necessary for Plaintiffs to prove what these costs are, since the issue is whether Plaintiffs have suffered ANY damages. While actual damages are not required for Plaintiffs to maintain their physical damage trespass claims, existence of ANY damages at all prohibits dismissal of their trespass and Consumer Protection Act claims, even under Defendants' incorrect view of law.

To be sure, Vasiliy Lysyy has included in his second declaration testimony that the padlock on the front door will need to be removed, and all the entry locks (front and other doors) need to be rekeyed, and locksmith will have to be paid to do this. (ECF 95, p. 1, ¶ 4)
**PLAINTIFFS' RESPONSE TO DEFENDANTS'
2nd MOTION FOR SUMMARY JUDGMENT -- 8**

It is well-established in Washington law that laypersons who are property owners or have other extensive knowledge about particular property are allowed to testify as to their opinions of property value, without any requirement to have expert qualifications or training. Cunningham v. Town of Tieton, 60 Wn.2d 434, 436, 374 P.2d 375 (1962) ("The decisional law leaves no room for doubt that the owner may testify as to the value of his property because he is familiar enough with it to know its worth"). An owner of property may testify to its value (without qualifying as an expert), upon the assumption that he is particularly familiar with it because of his ownership. Weber v. West Seattle Land & Imp. Co., 188 Wash. 512, 63 P.2d 418 (1936). *See also* State ex rel. Bremerton Bridge Co. v. Superior Court, 194 Wn. 196, 77 P.2d 800 (1938); Wicklund v. Allraum, 122 Wn. 546, 211 P. 760 (1922); State v. Hammond, 6 Wn. App. 459, 493 P.2d 1249 (1972) (owner of jewelry permitted to testify to its value, and was sufficient by itself to sustain conviction). "The owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objections to this policy." 3 J. Wigmore, Evidence § 716, at 56 (Chadbourn rev. 1970). Even a neighbor who is familiar enough with the property in question may be permitted to testify as to its value. Pacific Northwest Pipeline Corp. v. Myers, 50 Wn.2d 288, 311 P.2d 655 (1957).

Under 28 U.S.C. § 1652, Washington law "shall be regarded as rules of decision in civil actions in the courts of the United States [sitting in Washington], unless specifically overridden by federal law. There are no federal laws to the contrary, and applying Washington law is appropriate for a federal court sitting in Washington judging a case arising in Washington.

Plaintiffs have therefore presented admissible testimony regarding the loss of use or rental value of their Auburn property during the now four and a half years Defendants have wrongfully exercised dominion and control. While Plaintiffs are still entitled to maintain trespass claims for nominal damages and punitive damages without proof of ANY actual damages, they have also provided admissible evidence of suffering actual damages.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**2nd MOTION FOR SUMMARY JUDGMENT -- 9**

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
**Telephone: (425) 829-5305**
**E-mail: rp98007@gmail.com**

Arguments have been made by Defendants that Plaintiffs might not have actually decided to live in the Auburn property, or repair the Auburn property, even if the Auburn property had not been wrongfully occupied and controlled. Regardless, Plaintiffs had the legal right to either repair the Auburn property, live in the Auburn property (even if they had not repaired the property), or rent the property out (even without repairing the property's various defects).

There is no legal basis for the Court to assume (especially as a matter of law) that Plaintiffs would have been unable to repair their property, nor that they would have lacked financial means to do so. There is absolutely no principle in American jurisprudence that the poor and powerless should be denied their right to damages, simply because they would not have been able to afford to repair the harms they suffered. Here, Defendants themselves have provided estimates showing that the Auburn property could be repaired. Defendants' occupation and dominion over the Auburn property during the 2019 bankruptcy proceedings (and indeed to the present day) has prevented this from happening, causing the Lysyy's to suffer loss of either the ability to personally use the Auburn property or to rent it out to others.

There can be legitimate debate over how much rental value (or personal use value to the Lysyy's, should they have chosen to live there) the Auburn property would have if it were NOT repaired. But it cannot be said, as a matter of law, that the Auburn property (as is) would have absolutely zero rental or personal use value. This is especially true, on summary judgment, where all evidence must be construed in the light most favorable to the non-moving party.

Furthermore, Mr. Lysyy has testified that the debt owed to Deutsche Bank and SPS has "increased by accrued interest, property taxes, insurance premiums, and other escrow charges by many tens of thousands of dollars during the period October 2019 to date." V.Lysyy Decl. ¶ 14. These amounts do not need to be quantified to survive summary judgment – it is clear from the promissory note and deed of trust that the loan bears interest, the property must be insured, and that real estate in Washington is subject to property taxes. Whether we look at the items just for the period of time the 2019 bankruptcy was active, or from the October 17, 2019 seizure to the present date, Plaintiffs suffered these damages, at least, by not being able to deal with property.

2nd MOTION FOR SUMMARY JUDGMENT -- 10**

**Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com**

And lastly, Mr. Lysyy has testified that Defendants changed all of the locks and kept the keys and access codes for themselves. Vasiliy Lysyy Decl., ECF 44, ¶5. While no monetary figures were given by Mr. Lysyy, the Court must realize that there is no such thing as a "free lock" or a "free locksmith". Putting in new locks and getting new keys clearly will cost some money.

Emotional distress damages are also available for an intentional trespass on property under Washington law, with no requirement that the property owner suffers any medical expenses or physically objective symptoms. Lavington v. Hillier, 510 P.3d at 383; Birchler v. Castello Land Co., 133 Wn.2d 106, 115-16, 942 P.2d 968 (1997). ($2,000.00 each to plaintiffs whose vegetation was destroyed, no medical evidence or physical symptoms required)

To be sure, Plaintiffs have each testified in their second declarations that they suffered emotional distress and mental anguish from Defendants taking over control of their property in October 2019. (2nd T.Lysyy Decl., ECF 94, ¶1, 2nd V.Lysyy Decl., ECF 95, ¶1)

Considerable debate can be made about exactly how much damages a finder of fact could award Plaintiffs against Defendants. But Plaintiffs are entitled to nominal damages and punitive damages, and have presented admissible evidence that they have suffered actual damages. These constitute the compensatory damages allowed for property trespass under Washington law, and would be the measure of compensatory damages under 11 U.S.C. § 362(k) for willful violation of the automatic stay. The actions of Defendants have been reckless and in callous disregard of Plaintiffs' rights, allowing a punitive damages claim to be maintained under 11 U.S.C. § 362(k). This in turn also justified a declaratory judgment, since Plaintiffs have shown damages.

**Section C of Defendants' Motion Should be Stricken and Disregarded**

Section C (page 12, line 18 to page 14, line 2) of Defendants' MSJ is extremely bizarre and totally uncalled for. Defendants' counsel, based on questions she chose to ask Plaintiffs in their deposition, has invented a "straw man" cause of action, that Plaintiffs did not plead in their complaints, and are not seeking to advance or have determined in this Court. Frankly, the undersigned doesn't understand the arguments of Defendants' counsel, and doubts that the Court understands them either. And Plaintiffs certainly haven't pleaded this alleged cause of action.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' 2nd MOTION FOR SUMMARY JUDGMENT -- 11**

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com

Counsel, of course, will carefully evaluate the make-believe cause of action imagined by Defendants' counsel. If there is merit to such claims (assuming they are even legally available), a separate lawsuit (especially if such claims arose after filing the amended complaint) might be advisable. But Plaintiffs have absolutely no desire to add this alleged claim in this lawsuit.

## Washington Law Recognizes Invasion of Privacy Against Private Parties

Rather than analyzing the factual basis of Plaintiffs' invasion of privacy claims, Defendants instead argue that invasion of privacy can only be brought against the government!

Washington law recognizes several ways of committing the invasion of privacy tort, all of which can be brought against private individuals or entities. These include: (1) intrusion into seclusion, *see e.g.* Eastwood v. Cascade Broadcasting Co., 106 Wn.2d 466, 722 P.2d 1295 (1986); (2) appropriation of name, personality or likeness, *see e.g.* Mark v. Seattle Times, 96 Wn.2d 473, 635 P.2d 1081 (1981); (3) public disclosure of private facts, *see e.g.* Reid v. Pierce County, 136 Wn.2d 195, 961 P.2d 333 (1998); and (4) placing another in a false light, *see e.g.* Eastwood v. Cascade Broadcasting Co., 106 Wn.2d 466, 722 P.2d 1295 (1986).

It would have been more productive for Defendants to argue (assuming they even could do so), that Plaintiffs' claims did not meet the prima facie requirements of the actual invasion of privacy torts. But clearly, invasion of privacy torts can be committed by private parties.

## Washington Law Allows Quiet Title for Deeds of Trust Barred by Statute of Limitations

RCW 7.28.300 expressly allows a property owner to maintain an action to quiet title against a mortgage or deed of trust to quiet title (i.e. extinguish the outlawed deed of trust from the property title records), when foreclosure is barred by the statute of limitations:

> **RCW 7.28.300 Quieting title against outlawed mortgage or deed of trust.**
>
> The record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such a lien.

Here, Plaintiffs assert that enforcement of the Deutsche Bank deed of trust is barred by the statute of limitations, and seek to quiet title to extinguish the deed of trust.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
2nd MOTION FOR SUMMARY JUDGMENT -- 12

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com

Here, Bank of America was the previous mortgage servicer of the deed of trust loan at issue here. On September 15, 2010, Bank of America (the previous servicer of the Deed of Trust held by Deutsche Bank) notified Tatyana Lysyy (the borrower) and Vasiliy Lysyy on September 15, 2010 that the deed of trust was accelerated because of delinquency. (T.Lysyy Decl. p. 1, ¶4, ex. 1, ECF 44) No payments have been made on the loan since the acceleration. *Id.*

An installment note or the deed of trust securing it may include an option to accelerate the maturation date in case of breach of the contract. 4518 S. 256th, LLC v. Karen L. Gibbon, PS, 195 Wn. App. 423, 441, 382 P.3d 1 (2016) Upon acceleration, the entire balance becomes due and triggers the statute of limitations for all remaining installments. 4518 S. 256th, 195 Wn. App. at 434-35. The statute of limitations to enforce a promissory note, being a written contract, is six years from the date the promissory note is due. RCW 4.16.040(1).

Here, the entire loan balance became due on September 15, 2010, when Bank of America accelerated the loan. It was well over 11 years after the accelerated due when Plaintiffs filed this action to quiet title in July 2022, and it is now over 14 years past the accelerated due date.

Not only is a quiet title action available to extinguish a deed of trust whose enforcement is barred by the statute of limitations (as expressly provided by RCW 7.28.300, but Plaintiffs have very strong shown the statute of limitations appears to have expired many years ago.

Most notably, Defendants' MSJ actually concedes that Defendants claim absolutely no right, title or interest in Plaintiffs' property! Defendants' MSJ, page 15, line 23. If Defendants' counsel is sincere in her position, then Defendants should simply stipulate to judgment quieting title to the property in Plaintiffs' name, extinguishing all right, title and interest of Defendants.

Actions under Chapter 7.28 RCW are more commonly known as "ejectment and quiet title". Remedies under Chapter 7.28 RCW not only include quieting title in the name of the plaintiff and extinguishing the claims of others, but also ejecting (or removing) persons who are possessing or claiming possessing rights over the property. Here, Plaintiffs alleged (and have demonstrated by prima facie evidence) that Defendants have claimed dominion and control over the Auburn property since illegally invading the property back in October 2019.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
2nd MOTION FOR SUMMARY JUDGMENT -- 13**

Even if Plaintiffs were to not prevail on their quiet title claim to extinguish the Deutsche Bank deed of trust as being barred by the statute of limitations, Plaintiffs still have the right to currently possess the Auburn property, eject Defendants from any dominion and control over the property (such as the front door padlock, changed entry locks, and "No Trespassing" sign), and to obtain such relief under Chapter 7.28 RCW as part of their ejectment and quiet title action.

**Injunctive Relief Not Needed at Present regarding Foreclosure Sale**

Defendants correctly point out that they have discontinued their last Notice of Trustee's Sale and that there is no trustee's sale presently pending. Therefore, there is no need for an injunction to stop trustee's sale, unless one were actually filed for and pending.

Should Defendants file notice of any new threatened trustee's sale, Plaintiffs would of course file new lawsuit, in King County Superior Court, to enjoin and prohibit such trustee's sale. The propriety of such hypothetical future lawsuit cannot be determined in this action.

Once Plaintiffs' prevail in quieting title and extinguishing the Deutsche Bank deed of trust, it is not likely that Defendants will attempt an improper foreclosure sale after such event.

**Sanctions Payment Issue Already Decided by Court's December 11, 2024 Order**

On December 11, 2024, the Court entered an order (ECF 92) providing for judgment to be entered, as part of any final judgment, against Plaintiffs for the $4,500.00 sanctions ordered on September 25, 2024 (see ECF 83), including deduction of this amount if Plaintiffs are awarded judgment, and relieving the obligation to make payment by October 31, 2024. This makes Defendants' arguments for dismissal in Section H of their MSJ motion moot.

**Conclusion**

For all the above reasons and more, Defendants' Second MSJ should be denied.

**Word Count Certification**

I certify this pleading contains 5,298 words, in accordance with local civil rules.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
2nd MOTION FOR SUMMARY JUDGMENT -- 14**

**Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com**

Respectfully submitted this 17th day of December 2024.

                                    */s/ Richard L. Pope, Jr.*
                                    RICHARD L. POPE, JR.
                                    WSBA # 21118
                                    Attorney for Plaintiffs

                                    Lake Hills Legal Services P.C.
                                    15600 N.E. 8th Street, Suite B1-358
                                    Bellevue, Washington 98008
                                    Tel: (425) 829-5305
                                    Fax: (425) 526-5714
                                    E-Mail: rp98007@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I caused the above document to be delivered through electronic court filing (ECF) to:

**Midori R Sagara   msagara@buchalter.com, kreger@buchalter.com, midori.sagara@gmail.com**

**Richard Lamar Pope , Jr   rp98007@gmail.com (for some reason ECF may not send to me)**

**Robert William McDonald   rmcdonald@qualityloan.com, cvnotice@mccarthyholthus.com, rockymcdonald@gmail.com**

DATED: December 17, 2024.

                                    */s/ Richard L. Pope, Jr.*
                                    RICHARD L. POPE, JR.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
2nd MOTION FOR SUMMARY JUDGMENT -- 15**

**Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com**