UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TATYANA LYSYY, et al.,

               Plaintiffs,

    v.

DEUTSCHE BANK NATIONAL
TRUST COMPANY, et al.,

               Defendants.

CASE NO. C24-0062JLR

ORDER

## I.    INTRODUCTION

Before the court is the second motion for summary judgment filed by Defendants

Deutsche Bank National Trust Company, as Trustee, on behalf of the holders of the

Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1 (the

"Trust"); Select Portfolio Servicing, Inc. ("SPS"); Safeguard Properties, LLC

("Safeguard"); and Residential RealEstate Review, Inc. ("RRR") (together,

"Defendants").  (MSJ (Dkt. # 88); Reply (Dkt. # 98).)  Plaintiffs Tatyana Lysyy and

1    Vasiliy Lysyy ("Plaintiffs") oppose the motion.  (Resp. (Dkt. # 97).[1])  The court has

2    considered the parties' submissions, the relevant portions of the record, and the governing

3    law.  Being fully advised,[2] the court GRANTS in part and DENIES in part Defendants'

4    motion for summary judgment.

5                              **II.    BACKGROUND**

6            The court set forth the factual and procedural background of this case in detail in

7    its April 3, 2024 order denying Plaintiffs' motion to remand and granting in part

8    Defendants' first motion for summary judgment.  (*See* 4/3/24 Order (Dkt. # 54) at 3-10.)

9    The court assumes that the reader is familiar with that order and focuses here on the

10   background relevant to the motion now before the court.

11   **A.    Factual Background**

12           Plaintiffs purchased the home in Auburn, Washington, that is at the center of this

13   case (the "Property") in fall 2004.  (*See* 11/26/24 Sagara Decl. (Dkt. # 89) ¶ 3, Ex. A ("T.

14   Lysyy Dep.") at 16:11-13.)  On November 9, 2006, Ms. Lysyy executed a promissory

15   note that obligated her to make monthly payments on a $249,500 loan starting on January

16   1, 2007, and ending on December 1, 2036 (the "Loan").  (Pittman Decl. (Dkt. # 18) ¶ 7,

17

18

19           [1] Plaintiffs represented themselves in this action between August 6, 2024, when the court
20   granted attorney Richard Lamar Pope, Jr.'s motion to withdraw, and December 17, 2024, when
     Mr. Pope reappeared in this action and filed Plaintiffs' response to the motion.  (8/6/24 Order
     (Dkt. # 72); NOA (Dkt. # 96); Resp.)

21           [2] Plaintiffs request oral argument; Defendants do not.  The court finds that oral argument
22   would not aid in its resolution of the motion and therefore denies Plaintiffs' request.  *See* Local
     Rules W.D. Wash. LCR 7(b)(4).

1   Ex. A.)  The note was secured by a deed of trust that encumbered the Property.  (*Id.* ¶ 8,

2   Ex. B.)  Plaintiffs have made no payments on the Loan since April 1, 2010.  (*Id.* ¶ 10.)

3         On September 15, 2010, Bank of America, then the servicer of the Loan, notified

4   Ms. Lysyy of its intent to accelerate the Loan.  (Resp. at 13; 1st T. Lysyy Decl. (Dkt.

5   # 43) ¶ 4, Ex. 1 ("Notice of Intent to Accelerate").)  The Notice of Intent to Accelerate

6   warned Ms. Lysyy that if she did not cure her default "on or before October 15, 2010, the

7   mortgage payments **will be accelerated** with the full amount remaining accelerated and

8   becoming due and payable in full[.]"  (Notice of Intent to Accelerate at 1 (emphasis in

9   original).)  Plaintiffs did not make any payments on the Loan after receiving the notice.

10   (*See* 1st T. Lysyy Decl. ¶ 4.)

11         The deed of trust encumbering the Property was assigned to the Trust on

12   September 14, 2011.  (Pittman Decl. ¶ 9, Ex. C.)  In 2012 or 2013, Plaintiffs moved from

13   the Property to a home in Fife, Washington, where they still reside.  (T. Lysyy Dep. at

14   10:16-23, 18:3-6.)  The Property has remained vacant since Plaintiffs moved to Fife.

15   (*See id.* at 18:8-10, 21:2-10.)

16         On August 7, 2015, Bank of America issued a notice of default, and on September

17   25, 2015, the foreclosure trustee recorded the first Notice of Trustee's Sale on the

18   Property.  (1st T. Lysyy Decl. ¶ 5, Ex. 2.)  On November 16, 2016, servicing of the loan

19   was transferred from Bank of America to SPS.  (*Id.* ¶ 6, Ex. 3.)

20         On Friday, October 11, 2019, the Trust purchased the Property in a trustee's sale.

21   (Pittman Decl. ¶ 12.)  Approximately one hour before the trustee's sale, however, Ms.

22   Lysyy filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court

ORDER - 3

1    for the Western District of Washington, which triggered an automatic stay of the

2    foreclosure proceedings.  (*Id.*; *see* 11/26/24 Sagara Decl. ¶ 9, Ex. E (bankruptcy case

3    docket)); 11 U.S.C. § 362(a).  According to Defendants, neither the trustee nor SPS

4    received notice of the bankruptcy filing before the trustee's sale took place.  (Pittman

5    Decl. ¶ 12.)  After the sale, SPS referred the Property to its Real Estate Owned ("REO")

6    Department for further handling.  (*Id.*)

7         On Saturday, October 12, 2019, the Bankruptcy Noticing Center sent notice of Ms.

8    Lysyy's filing to SPS via the email address jennifer.chacon@spservicing.com.  (12/29/23

9    Pope Decl. (Dkt. # 2-2) ¶ 11, Ex. 7.)  SPS asserts, however, that its Bankruptcy

10   Department did not receive this notice because Ms. Chacon worked in SPS's HR

11   Training Department and "had no responsibilities for handling bankruptcy notices."

12   (Pittman Decl. ¶ 13.)

13        On Monday, October 14, 2019, the trustee sent notice of Ms. Lysyy's bankruptcy

14   filing to SPS's Foreclosure Department.  (Pittman Decl. ¶ 14.)  Then, on October 15,

15   2019, SPS's Bankruptcy Department received notice from one of its vendors that Ms.

16   Lysyy had filed for bankruptcy.  (*Id.* ¶ 15.)  SPS "immediately" asked its local

17   bankruptcy counsel, McCarthy Holthus, LLP ("McCarthy Holthus"), to "determine what

18   impact, if any, [Ms. Lysyy's bankruptcy filing] had on the Trustee's Sale."  (*Id.*)

19        Meanwhile, SPS's REO vendor, RRR, automatically sent a request to Safeguard, a

20   provider of property preservation services, "to inspect the Property to determine whether

21   the Property was occupied or vacant."  (*Id.* ¶ 16; *see also* Meyer Decl. (Dkt. # 19) ¶¶ 3,

22   6.)  On October 17, 2019, Safeguard "confirmed that the Property was vacant and secured

1    the Property . . . in order to avoid waste or damage to the Property." (Pittman Decl. ¶ 16;

2    Meyer Decl. ¶ 6; 1st V. Lysyy Decl. (Dkt. # 44) ¶ 6, Ex. 1 (photos Mr. Lysyy took in

3    October 2019, showing a lockbox on the front door and a "No Trespassing" sign in the

4    window).) That same day, SPS notified Plaintiffs that it had initiated eviction

5    proceedings on the Property. (1st T. Lysyy Decl. ¶ 8[3], Ex. 5.)

6         On November 1, 2019, McCarthy Holthus confirmed that the October 11, 2019

7    trustee's sale was void due to Ms. Lysyy's bankruptcy filing. (Pittman Decl. ¶ 17.) SPS

8    "immediately put a hold on all REO activity and removed the Property out of REO

9    status." (*Id.*) No additional action was necessary to rescind the trustee's sale. (*Id.* ¶ 18.)

10   Since November 1, 2019, according to SPS, "no further REO activity has occurred" at the

11   Property; "SPS and its vendors have not maintained possession or control over the

12   Property"; and SPS has not "taken any action or instructed its vendors to take action in

13   which it knowingly violated the automatic bankruptcy stay." (*Id.* ¶ 19; *see also* Meyer

14   Decl. ¶ 8 ("By the end of October 2019, Safeguard did not receive any work order

15   requests from RRR to complete any interior work at the Property.").) Plaintiffs assert,

16   however, that correspondence from McCarthy Holthus and photographs taken by their

17   attorney demonstrate that Defendants maintained possession or control over the Property

18   from October 17, 2019, until at least May 2, 2022, if not later. (*See* 12/29/23 Pope Decl.

19   ¶ 13, Ex. 8 at 68[4] (May 2, 2022 email from McCarthy Holthus providing the code to a

20

21         [3] This citation refers to the first of two paragraphs labeled "8" in Ms. Lysyy's declaration.

22         [4] The court cites to the page numbers in the CM/ECF header when referring to exhibits to
     Mr. Pope's December 29, 2023 declaration.

1  lockbox at the Property); 2/26/24 Pope Decl. (Dkt. # 35) ¶ 4[5], Ex. 1 (photos Plaintiffs'

2  attorney took on December 31, 2023).)

3      On February 18, 2020, the bankruptcy court dismissed Ms. Lysyy's Chapter 13

4  petition.  (*See* 11/26/24 Sagara Decl. ¶ 9, Ex. E.)

5  **B.    Procedural Background**

6      Plaintiffs filed this action *pro se* in King County Superior Court on July 20, 2022,

7  (*See* Compl. (Dkt. # 1-2).)  They amended the complaint on July 29, 2022.  (*See* Am.

8  Compl. (Dkt. # 1-3).)  Counsel appeared on behalf of Plaintiffs in March 2023.  (*See*

9  2/26/24 Pope Decl. ¶ 5.)  Defendants removed the action to this court on January 12,

10  2024.  (Not. of Removal (Dkt. # 1).)

11      On April 3, 2024, the court granted in part Defendants' motion for summary

12  judgment and dismissed with prejudice Plaintiffs' claims for civil conspiracy, trespass,

13  theft, conversion, wrongful foreclosure, outrage, and violations of the Washington Deed

14  of Trust Act, the Washington Consumer Protection Act ("CPA"), the Washington

15  Foreclosure Fairness Act, and the federal Fair Debt Collection Practices Act.  (4/3/24

16  Order at 18-30.)  The court also ordered Plaintiffs to show cause why the court should not

17  dismiss their due process claim for failure to name a state actor and their claim for

18  violation of the automatic bankruptcy stay for failure to "produce admissible evidence

19  that they suffered damage due to . . . Defendants' actions."  (*Id*. at 30-32.)  Shortly

20

21

22      _____

        [5] This citation refers to the first of two paragraphs labeled "4" in Mr. Pope's declaration.

1  thereafter, Plaintiffs moved the court to reconsider its decision to grant summary

2  judgment in Defendants' favor on the trespass and CPA claims.  (*See* MFR (Dkt. # 31).)

3      On May 28, 2024, the court denied Plaintiffs' motion for reconsideration,

4  dismissed Plaintiffs' due process claim, and allowed Plaintiffs' claim for violation of the

5  automatic bankruptcy stay to proceed.  (*See generally* 5/28/24 Order (Dkt. # 67).)  In

6  relevant part, the court "agree[d] with Plaintiffs that they may rely on Mr. Lysyy's

7  testimony as evidence of injury and damages" and observed that there was "ample

8  opportunity for Plaintiffs to continue to develop evidence to support their claim" because

9  the parties had agreed to keep discovery open on the remaining claims until at least

10 November 4, 2024.  (*Id.* at 14 (citing JSR (Dkt. # 66) at 2-3).)  The parties have not,

11 however, presented any evidence that Plaintiffs conducted additional discovery regarding

12 damages since the court issued that order.

13     On July 18, 2024, Plaintiffs' attorney moved to withdraw as counsel.  (Mot. to

14 Withdraw (Dkt. # 70).)  The court granted the motion on August 6, 2024, and advised

15 Plaintiffs that they would be proceeding *pro se* from that point forward.  (8/6/24 Order

16 (Dkt. # 72).)

17     On August 16, 2024, Defendants moved to compel Plaintiffs to appear for their

18 depositions and sought sanctions because Plaintiffs failed to attend their depositions on

19 July 18, 2024—the date Plaintiffs' attorney moved to withdraw.  (MTC (Dkt. # 73); *see*

20 8/16/24 Order (Dkt. # 75) (ordering Plaintiffs to show cause why the court should not

21 grant Defendants' motion).)  On September 25, 2024, the court granted the motion to

22 compel and awarded Defendants $4,500 in attorneys' fees and costs they incurred as a

1   result of the cancelled deposition.  (9/25/24 Order (Dkt. # 83).)  Defendants took

2   Plaintiffs' depositions on October 11, 2024.  (*See* 11/26/24 Sagara Decl. ¶¶ 3-4.[6])

3      Defendants filed their second motion for summary judgment on November 26,

4   2024.  (MSJ.)  They ask the court to dismiss Plaintiffs' remaining claims for violation of

5   the automatic bankruptcy stay, invasion of private affairs, quiet title, declaratory relief,

6   and injunction.  (*See generally id.*)  Plaintiffs' former counsel reappeared in the case and

7   filed a response on behalf of Plaintiffs.  (NOA (Dkt. # 96); Resp.)  Defendants filed a

8   timely reply.  (Reply.)  The motion is now ripe for decision.

### III.   ANALYSIS

10      Below, the court sets forth the standard of review, then considers the motion.

**A.   Summary Judgment Standard**

12      Summary judgment is appropriate if the evidence viewed in the light most

13   favorable to the non-moving party shows "that there is no genuine dispute as to any

14   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

15   56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when,

16   under the governing substantive law, it could affect the outcome of the case.  *Anderson v.*

17   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists

18   when "the evidence is such that a reasonable jury could return a verdict for the

19   nonmoving party."  *Id.*

---

22   [6] Plaintiffs appeared *pro se* with Ukrainian interpreters.  (*See id.* ¶ 4, Ex. B ("V. Lysyy Dep.") at 2, 4; T. Lysyy Dep. at 2, 4.)

To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. "This burden is not a light one." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party opposing the motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A); *see also* Local Rules W.D. Wash. LCR 10(e)(6) ("Citations to documents already in the record . . . must include a citation to the docket number and the page number[.]").

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott*, 550 U.S. at 378 (internal quotations omitted). It may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact

1   to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at

2   380 (quoting *Matsushita*, 475 U.S. at 587).

3   **B.    Violation of Automatic Bankruptcy Stay**

4          When a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic

5   stay on actions against the debtor to collect pre-petition debts.  11 U.S.C. § 362(a).  If a

6   debtor is injured by a creditor's willful violation of the stay, 11 U.S.C. § 362(k) "makes

7   an award of actual damages and attorney's fees mandatory, and grants . . . courts the

8   discretion to impose punitive damages in appropriate cases."  *In re Schwartz-Tallard*, 803

9   F.3d 1095, 1099 (9th Cir. 2015); 11 U.S.C. § 362(k) ("[A]n individual injured by any

10  willful violation of a stay provided by [§ 362] shall recover actual damages, including

11  costs and attorneys' fees, and, in appropriate circumstances, may recover punitive

12  damages.").  The debtor must prove a causal relationship between the stay violation and

13  the injury.  *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004), *abrogation on other*

14  *grounds recognized in In re Gugliuzza*, 852 F.3d 884, 896-97 (9th Cir. 2017).

15         Defendants contend that the court must dismiss Plaintiffs' § 362(k) claim because

16  Plaintiffs' deposition testimony precludes them from showing that they suffered actual

17  damages caused by Defendants' entry onto the Property after the October 11, 2019

18  trustee's sale.  Plaintiffs counter that they can prove actual damages caused by the

19  bankruptcy stay and that they are also entitled to punitive damages.  Below, the court

20  considers whether Plaintiffs have established a genuine dispute of material fact as to

21  emotional distress damages, costs and attorneys' fees, other actual damages, and punitive

22  damages.

1        1.    Emotional Distress Damages

2        To recover damages for emotional distress under § 362(k), the debtor must

3    "(1) suffer significant harm, (2) clearly establish the significant harm, and

4    (3) demonstrate a causal connection between that significant harm and the violation of

5    the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the

6    bankruptcy process)." *In re Dawson*, 390 F.3d at 1149.

7        Defendants assert that Plaintiffs cannot show that they suffered emotional distress

8    damages caused by any violation of the bankruptcy stay. (MSJ at 11.) The court

9    disagrees. First, Defendants argue that the court should disregard Plaintiffs' second

10   declarations because they contradict Plaintiffs' deposition testimony and are thus

11   "sham" affidavits. (Reply at 5-6.) In general, "a party cannot create an issue of fact by

12   an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins.*

13   *Co.*, 952 F.2d 262, 266 (9th Cir. 1991). This rule, however, pertains only to "sham"

14   testimony "that flatly contradicts earlier testimony in an attempt to create an issue of fact

15   and avoid summary judgment." *Id.* at 267 (cleaned up). "[T]he inconsistency between a

16   party's deposition testimony and subsequent affidavit must be clear and unambiguous to

17   justify striking the affidavit." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th

18   Cir. 2009). Here, the court finds no "clear and unambiguous" inconsistency between

19   Plaintiffs' deposition testimony and their declarations. Plaintiffs testified in their

20   depositions that they did not *seek treatment* for anxiety or depression since 2019. (T.

21   Lysyy Dep. at 42:12-20; V. Lysyy Dep. at 68:18-24, 70:1-3.) Then, in their second

22   declarations, Plaintiffs state that they have "suffered emotional distress and mental

1    anguish due to Defendants taking over [the Property][.]" (2d T. Lysyy Decl. (Dkt. # 94)

2    ¶ 2; 2d V. Lysyy Decl. (Dkt. # 95) ¶ 2.)  Plaintiffs do not state in their declarations that

3    they in fact sought treatment for emotional distress or mental anguish; and Defendants do

4    not identify any deposition testimony in which Plaintiffs denied having suffered

5    emotional distress altogether.  (*See generally* 2d T. Lysyy Decl.; 2d V. Lysyy Decl.;

6    Reply.)  Because Plaintiffs' second declarations do not "flatly contradict[]" their prior

7    deposition testimony, *Kennedy*, 952 F.2d at 267, the court disagrees that they are "sham

8    affidavits" that must be disregarded at summary judgment.

9        Second, Defendants argue that Plaintiffs cannot establish emotional distress

10   damages because they have produced no medical evidence, sought no medical treatment,

11   and described no "physical manifestations of mental anguish[.]"  (Reply at 7.)  The Ninth

12   Circuit is clear, however, that emotional distress damages may be "clearly establish[ed]"

13   through (1) corroborating medical evidence; (2) testimony of family members, friends, or

14   co-workers regarding "manifestations of mental anguish[;]" or (3) common-sense

15   evidence of egregious conduct.  *In re Dawson*, 390 F.3d at 1149-50.  Thus, a lack of

16   medical evidence or evidence of physical manifestations of distress does not foreclose

17   Plaintiffs' claim for emotional distress damages.

18       Finally, Defendants contend that Plaintiffs cannot establish that the alleged stay

19   violation proximately caused their emotional distress.  (Reply at 6-7.)  A reasonable

20   factfinder could conclude, however, that Defendants' actions of proceeding with the

21   trustee's sale, threatening Plaintiffs with eviction nearly a week after the bankruptcy stay

22   went into effect, and padlocking the Property constituted "circumstances that make it

1    obvious that a reasonable person would suffer significant emotional harm" as required to

2    support an award of emotional distress damages. *In re Copeland*, 441 B.R. 352, 367

3    (Bankr. W.D. Wash. Aug. 16, 2010). Thus, the court denies Defendants' motion for

4    summary judgment regarding emotional distress damages.

5       2.    Costs and Attorneys' Fees

6       "Actual damages" recoverable for a violation of the automatic bankruptcy stay

7    include reasonable costs and attorneys' fees. 18 U.S.C. § 362(k). Defendants argue that

8    Plaintiffs cannot show that they incurred attorneys' fees caused by Defendants' alleged

9    violation of the bankruptcy stay because "[a]ttorney fees incurred in an attempt to collect

10   damages once the stay violation has ended are not recoverable." (Mot. at 10 (citing *In re*

11   *Snowden*, 769 F.3d 651, 658 (9th Cir. 2014)).) In 2015, however, the Ninth Circuit

12   overruled earlier cases that had limited attorneys' fees under § 362(k) to those incurred

13   "to end the stay violation itself" and held that the debtor may also recover as "actual

14   damages" the attorneys' fees reasonably incurred in prosecuting an action for damages

15   caused by the stay violation. *In re Schwartz-Tallard*, 803 F.3d 1095, 1097 (9th Cir.

16   2015) (en banc). Because Defendants raise no other challenge to Plaintiffs' entitlement

17   to costs and attorneys' fees under § 362(k) (*see generally* Mot.; Reply), the court denies

18   their motion for summary judgment on Plaintiffs' claim for costs and attorneys' fees

19   incurred as a result of the bankruptcy stay violation.

20   //

21   //

22   //

ORDER - 13

1          3.      Other Actual Damages

2          Defendants assert that Plaintiffs cannot prove that they suffered any other actual

3    damages caused by any violation of the automatic bankruptcy stay.  The court considers

4    each type of damages below.

5                      a.      Lost Ability to Use, Rent, or Sell the Property

6          First, Defendants contend that Plaintiffs cannot prove that any violation of the

7    bankruptcy stay prevented them from using, renting out, or selling the Property.  The

8    court agrees with Defendants.  Plaintiffs testified that they have never tried to rent out or

9    sell the Property, even though it has been vacant since Plaintiffs moved away in 2012 or

10   2013.  (Mot. at 10 (citing T. Lysyy Dep. at 10:16-11:3, 18:8-20, 21:3-11-167; V. Lysyy

11   Dep. at 13:7-16, 26:3-5, 35:12-15, 37:2-3, 41:24-42.2).)  In addition, Mr. Lysyy testified

12   that Plaintiffs could not rent or sell the Property because they were in debt and the

13   Property was in foreclosure; he did not attribute their inability to rent or sell the Property

14   to Defendants' violation of the bankruptcy stay.  (Mot. at 6-7; *see* V. Lysyy Dep. at

15   35:3-15; 36:6-24; *see also id.* at 65:14-24 (stating he cannot do anything with the

16   Property "[b]ecause there is a huge debt on me"), 66:4-68:10 (discussing Defendants'

17   failure to modify the loan or forgive the debt on the Property).)  Ms. Lysyy, for her part,

18   could not identify any injury or damages that resulted from Defendants padlocking the

19   Property in 2019.  (*See* Mot. at 6 (citing T. Lysyy Dep. at 38:9-12, 39:7-24, 42:4-11).)

20         Plaintiffs' arguments in response are unavailing.  First, Plaintiffs assert, relying on

21   Washington trespass law, that they are entitled to damages for loss of use of the Property,

22   regardless of whether they suffered actual harm.  (Resp. at 6-7; *see also id.* at 9

("Plaintiffs are still entitled to maintain trespass claims for nominal damages and punitive damages without proof of ANY actual damages").)  By its terms, however, § 362(k) requires proof of "actual damages."  11 U.S.C. § 362(k).  Second, Plaintiffs protest that the court should not "assume" that they would have been unable to repair the Property because they lacked the financial means to do so.  (Resp. at 10.)  The court has done no such thing.  Rather, the court is holding Plaintiffs to their legal burden to identify evidence of damages caused by Defendants' alleged violation of the bankruptcy stay.  *See Celotex*, 477 U.S. at 324 (placing the burden on the nonmovant to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor).  Finally, Plaintiffs argue that the debt they owe has "increased by accrued interest, property taxes, insurance premiums and other escrow charges" since October 2019.  (Resp. at 10 (quoting 1st V. Lysyy Decl. ¶ 14).)  Again, however, Plaintiffs point to no evidence that they incurred that additional debt *because of* the bankruptcy stay violation.  (*See generally id.*)  Instead, the only competent evidence in the record shows that those expenses have continued to accrue because Plaintiffs have made no payments on the Loan since 2010.  (*See, e.g.*, 1st T. Lysyy Decl. ¶ 4.)  Accordingly, the court grants Defendants' motion for summary judgment on Plaintiffs' claims for actual damages arising from their alleged inability to rent out or sell the Property.[7]

---

[7] Plaintiffs assert that the court should deny Defendants' current motion for summary judgment on their § 362(k) claim "for the exact same reasons" it denied Defendants' first motion. (Resp. at 2 (citing 5/28/24 Order).)  It is true that the court held that Mr. Lysyy's testimony could provide evidence of the value of the Property.  That testimony only matters, however, if Plaintiffs meet their burden to produce evidence that Defendants' violation of the bankruptcy stay caused a loss of value.

1
                              b.    *Personal Property*

2          Next, Defendants argue that Plaintiffs cannot show that they suffered damage or

3   loss to their personal property resulting from any bankruptcy stay violation.  (Mot. at 5,

4   9.)  Defendants point to Plaintiffs' deposition testimony, in which they were unable to

5   identify any personal property that they left behind when they moved away from the

6   Property in 2012 or 2013.  (Mot. at 9 (citing T. Lysyy Dep. at 39:7-42, 24:1-10; V. Lysyy

7   Dep. at 47:21-48:25, 65:14-68:3, 50:7-12).)  Defendants also note that Plaintiffs have not

8   produced any documents substantiating the loss of or damage to any personal property.

9   (*See* 11/26/24 Sagara Decl. ¶ 5 (stating that Plaintiffs have not responded to Defendants'

10  interrogatories or produced documents regarding personal property losses).)  Plaintiffs do

11  not respond to this argument, let alone direct the court to evidence of personal property

12  that was stolen, lost, or damaged as a result of Defendants' conduct.  (*See generally*

13  Resp.)  Therefore, the court grants summary judgment in Defendants' favor on Plaintiffs'

14  claim for actual damages arising from loss or damage to their personal property.

15                             c.    *Locksmith Expenses*

16         Defendants do not respond to Plaintiffs' argument that they will incur actual

17  damages to pay a locksmith to remove the lockbox Defendants placed on the Property

18  after the trustee's sale in October 2019 and to re-key their door locks.  (Resp. at 8, 11

19  (citing 2d V. Lysyy Decl. ¶ 4).)  Plaintiffs may, therefore, pursue a claim for locksmith

20  expenses as "actual damages" under § 362(k).

21

22

1          4.    Punitive Damages

2          Finally, Defendants argue that Plaintiffs cannot recover punitive damages because

3    they cannot show that they suffered actual damages.  (Mot. at 11 (citing *In re McHenry*,

4    179 B.R. 165, 168 (9th Cir. BAP 1995) ("[N]o punitive damages should be awarded in

5    the absence of actual damages[.]").)  The court denies Defendants' motion for summary

6    judgment on Plaintiffs' claim for punitive damages because, as discussed above,

7    Plaintiffs have shown a genuine dispute of material fact as to whether they suffered

8    emotional distress or incurred attorneys' fees as a result of the stay violation.

9          In sum, the court concludes that Plaintiffs have demonstrated a genuine issue of

10   material fact as to whether they suffered emotional distress damages and incurred

11   recoverable attorneys' fees under § 362(k).  Therefore, the court denies Defendants'

12   motion for summary judgment on Plaintiffs' claim for violation of the automatic

13   bankruptcy stay.

14   **C.    Failure to Modify or Forgive**

15         Defendants assert that Mr. Lysyy's deposition testimony suggests that he believes

16   Plaintiffs' damages resulted from Defendants' failure to modify their loan or forgive their

17   debt.  (Mot. at 12 (citing V. Lysyy Dep. at 65:14-68:3).)  They ask the court not to

18   entertain unpleaded claims for failure to modify the loan or forgive the debt.  (*Id.* at 13.)

19   Plaintiffs agree that they are not pursuing such claims in this case.  (Resp. at 11-12.)

20   Therefore, the court grants Defendants' request and does not consider any claims for

21   failure to modify the loan or forgive the debt.

22

1    **D.    Invasion of Private Affairs**

2    Defendants argue that Plaintiffs' claim for "invasion of private affairs and

3    residence" must be dismissed because the Washington State Constitution's prohibition

4    against invasion of private affairs applies only to intrusion by the government and none

5    of the Defendants are governmental entities. (Mot. at 14); Wash. Const. art. I, § 7 ("No

6    person shall be disturbed in his private affairs, or his home invaded, without authority of

7    law."); *Robinson v. City of Seattle*, 10 P.3d 452, 459 (Wash. Ct. App. 2000) ("Only

8    governmental intrusion into individual privacy falls within this prohibition."). Plaintiffs

9    respond that there are "several ways of committing the invasion of privacy tort, all of

10    which can be brought against private individuals or entities[,]" including intrusion into

11    seclusion; appropriation of name, personality, or likeness; public disclosure of private

12    facts; and placing another in a false light. (Resp. at 12 (citations omitted).) Plaintiffs do

13    not, however, specify which of these claims, if any, they are pursuing in this action. (*Id.*)

14    In their sixth cause of action, titled "Invasion of Private Affairs and Residence,"

15    Plaintiffs allege that (1) "Defendants . . . entered Plaintiffs['] property and home and

16    disposed of Plaintiff's personal belongings without permission or authorization[;]"

17    (2) Plaintiffs "had a legitimate and reasonable expectation of privacy in their home and

18    with regard to their personal belongings which were located therein[;]" (3) "Defendants

19    engaged in an unlawful invasion of [Plaintiffs'] private affairs and their home by taking

20    exclusive possession of the real property and the home's contents[;]" and (4) Plaintiffs

21    "were harmed by the above acts of intrusion into their private affairs[.]" (Am. Compl.

22    ¶¶ 6.2-6.6.) The court agrees with Defendants that this language is consistent with a

1    claim that Defendants violated the Washington State Constitution's prohibition against

2    invasion into a citizen's private affairs and is inconsistent with the privacy-related torts

3    Plaintiffs listed in their response.  Furthermore, at this point in the proceedings—two and

4    a half years after Plaintiffs filed this action—Plaintiffs should be able to identify the

5    claims they intend to pursue at trial.  Therefore, the court grants Defendants' motion for

6    summary judgment on Plaintiffs' "invasion of private affairs and residence" claim.

7    **D.    Declaratory Relief Regarding Laches and Statute of Limitations**

8         Defendants argue that the court must dismiss Plaintiffs' purported claims for

9    declaratory judgments that Defendants failed to initiate foreclosure within the six-year

10   statute of limitations and that the doctrine of laches bars foreclosure because (1) a claim

11   for declaratory relief must have an underlying claim and (2) the statute of limitations and

12   laches are affirmative defenses that the borrower may assert in a foreclosure action, rather

13   than standalone causes of action.  (Mot. at 14-15; *see* Am. Compl. ¶¶ 13.1-13.4 (statute of

14   limitations), 16.1-16.5 (laches).)  According to Defendants, there is no ground for

15   Plaintiffs to assert defenses to foreclosure when there is no foreclosure proceeding

16   pending.  (Mot. at 14-15.)

17        Plaintiffs do not address Defendants' arguments regarding dismissal of their

18   declaratory relief claims.  (*See generally* Resp.)  A party waives an argument at the

19   summary judgment stage if it provides no argument in support of its position or does not

20   adequately develop the argument.  *DZ Bank AG Deutsche Zentral-Genossenschaftsbank*

21   *v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2016 WL 631574, at *25 (W.D. Wash.

22

1    Feb. 16, 2016) (collecting cases).  Therefore, the court grants Defendants' motion for

2    summary judgment on Plaintiffs' purported claims for declaratory relief.

3    **E.    Quiet Title**

4          Defendants move for summary judgment on Plaintiffs' quiet title claim.  (Mot. at

5    15-16.)  They argue that Plaintiffs cannot pursue this claim because they cannot show

6    that they have satisfied their obligations under the deed of trust securing the Loan and

7    none of the Defendants claims a current right to title on the Property.  (*Id.*)  In response,

8    Plaintiffs assert that they may maintain a quiet title action under RCW 7.28.300 because

9    foreclosure on the Property is barred by the statute of limitations.  (Resp. at 12-14.)

10          Under RCW 7.28.300, a property owner may maintain a quiet title action "where

11    an action to foreclose such mortgage or deed of trust would be barred by the statute of

12    limitations[.]"  RCW 7.28.300.  The parties agree that a six-year statute of limitations

13    applies to actions arising out of promissory notes and deeds of trust.  (Resp. at 15; Reply

14    at 9); *see* RCW 4.16.040(1); *Westar Funding, Inc. v. Sorrels*, 239 P.3d 1109, 1113

15    (Wash. Ct. App. 2010).  For an installment note like the one here, "the statute of

16    limitations runs against each installment from the time it becomes due[.]"  *4518 S. 256th,*

17    *LLC v. Karen L. Gibbon, P.S.*, 382 P.3d 1, 6 (Wash. Ct. App. 2016) ("*Gibbon*") (citations

18    omitted).  If the installment note is accelerated, however, "the entire remaining balance

19    becomes due and the statute of limitations is triggered for all installments that had not

20    previously become due."  *Id.* (citations omitted).  Acceleration of an installment note

21    must be made "in a clear and unequivocal manner which effectively apprises the maker

22

1    that the holder has exercised his right to accelerate the payment date." *Id.* (quoting

2    *Glassmaker v. Ricard*, 593 P.2d 179, 181 (Wash. Ct. App. 1979)).

3         Here, Plaintiffs argue that the six-year statute of limitations for foreclosing on the

4    Loan was triggered on September 15, 2010, when Bank of America notified Ms. Lysyy

5    of its intent to accelerate the Loan.  (Resp. at 13.)  As noted above, the Notice of Intent to

6    Accelerate warned Ms. Lysyy that if she did not cure her default "on or before October

7    15, 2010, the mortgage payments **will be accelerated** with the full amount remaining

8    accelerated and becoming due and payable in full" (Notice of Intent to Accelerate at 1

9    (emphasis in original)), and Plaintiffs made no further payments on the Loan (1st T.

10   Lysyy Decl. ¶ 4).  As a result, according to Plaintiffs, the Loan was accelerated, the

11   statute of limitations was triggered, and the statute of limitations for filing a foreclosure

12   action expired years before Plaintiffs filed this case.  (*See* Resp. at 13.)

13        Defendants do not mention the Notice of Intent to Accelerate in their reply.  (*See*

14   Reply at 8-9.)  Instead, they assert only that Plaintiffs "have not established any date of

15   acceleration."  (*Id.* at 9.)  Thus, according to Defendants, the statute of limitations has not

16   yet expired on all of the installment payments due on the Loan.  (*Id.*)  Defendants also

17   argue that the statute of limitations was tolled when they recorded twelve notices of

18   trustees' sale and when Ms. Lysyy filed for bankruptcy.  (*Id.*)  Defendants do not,

19   however, explain how the notices tolled the statute of limitations in full during the 12

20   years between the issuance of the Notice of Intent to Accelerate and the filing of this

21   action.  (*Id.* (citing 12/24/24 Sagara Decl. (Dkt. # 99) ¶ 3, Ex. A ("Stenman Draft Decl.")

22   ¶¶ 12, Exs. 10A-10L).)

The court concludes, based on the September 10, 2010 Notice of Intent to Accelerate and Defendants' failure to address it, that there is a genuine dispute of material fact regarding whether and when the underlying Loan was accelerated. In addition, Defendants have not demonstrated that subsequent notices of trustee's sale and bankruptcy filings fully tolled the statute of limitations. As a result, Defendants have not met their burden to show, as a matter of law, that Plaintiffs are barred from pursuing a quiet title action under RCW 7.28.300. Therefore, the court denies Defendants' motion for summary judgment on Plaintiffs' quiet title claim.

**F.    Injunction**

Defendants argue that Plaintiffs' claim for an injunction is improper because there is no trustee's sale currently pending that could be enjoined. (Mot. at 16.) Plaintiffs agree that they have no need for an injunction because there is no trustee's sale pending. (Resp. at 14.) Therefore, to the extent Plaintiffs have asserted a claim for an injunction, the court grants summary judgment in Defendants' favor.

**G.    Sanctions**

Finally, the court denies Defendants' motion to dismiss this case as a further sanction for Plaintiffs' failure to pay the $4,500 in attorneys' fees and costs incurred when Plaintiffs failed to attend their depositions in July 2024. (*See* MSJ at 18-19.) Defendants filed their motion before the court ruled that it will not require Plaintiffs to pay the sanction before final judgment. (*See* 12/11/24 Order (Dkt. # 92).) Therefore, the court denies Defendants' motion to dismiss as moot.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' second motion for summary judgment (Dkt. # 88).

1.    The court GRANTS Defendants' motion for summary judgment on Plaintiffs' claims for invasion of private affairs, declaratory relief regarding laches and the statute of limitations, and for an injunction and DISMISSES these claims with prejudice.

2.    The court DENIES Defendants' motion for summary judgment on Plaintiffs' claims for violation of the automatic bankruptcy stay and for quiet title.  With respect to the stay violation claim, however, the court GRANTS summary judgment in Defendants' favor on Plaintiffs' claims for actual damages arising from (a) loss or damage to personal property and (b) loss of ability to use, rent out, or sell the Property.

3.    The court DENIES as moot Defendants' motion to dismiss this case as a sanction for Plaintiffs' failure to pay the monetary sanction the court imposed in September 2024.

Dated this 20th day of February, 2025.

_____
JAMES L. ROBART
United States District Judge