Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| TATYANA LYSYY, VASILIY LYSYY, et al., <br><br>Plaintiffs, <br><br>v. <br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY and DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee etc., et al., <br><br>Defendants. | NO. 2:24-cv-00062-JLR <br><br>**PLAINTIFFS' REQUESTED PROFFER BRIEFING** <br><br>Trial Date: <br>**Monday, June 23, 2025** |

This briefing covers proffer and related issues by Plaintiffs Tatyana Lysyy and Vasiliy Lysyy regarding their quiet title claims against Defendant "Deutsche Bank National Trust Company as Trustee, on behalf of the holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1" ("Trust #2"). (There is another trust, actually appearing in the chain of title on the Deed of Trust called "Deutsche Bank National Trust Company as Trustee under the Pooling and Servicing Agreement relating to IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates Series 2007-1 ("Trust #1"), which is not Defendant herein.)

<u>**Judicial Admissions by Trust # 2**</u>

1. **Defendants' Trial Brief [dkt. 138], Page 10, Lines 24–25**: "Absent an allegation that any of the Defendants has asserted any title interest in the property, none of the Defendants is the proper party to the present quiet title claim."

**PLAINTIFFS' REQUESTED**
**PROFFER BRIEFING -- 1**

2. **Defendants' Trial Brief [dkt. 138], Page 11, Lines 12–13**: "In the present matter, none of the Defendants asserts any title interest to the property."

3. **Defendants' Second Motion for Summary Judgment [dkt. 88], Page 15, Lines 23–24**: "In this matter, none of the Defendants claims a current right to the Property."

"[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well." Ferguson v. Neighborhood Housing Services, 780 F.2d 549, 551 (6th Cir.1986) (citations omitted). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." In re Fordson Engineering Corp., 25 B.R. 506, 509 (Bankr.E.D.Mich.1982). Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. See White v. Arco/Polymers, Inc., 720 F.2d 1391, 1396 (5th Cir.1983); Fordson, 25 B.R. at 509. …

[T]he courts have treated representations of counsel in a brief as admissions even though not contained in a pleading or affidavit. United States v. One Heckler-Koch Rifle, 629 F.2d 1250, 1253 (7th Cir.1980); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2723, pp. 64-66 (1983) (admissions in opponent's brief can be used to determine there is no genuine issue of fact, since they are functionally equivalent to "admissions on file"). …

The Tenth Circuit holds that briefs are not pleadings or part of the record, and statements in briefs may be considered admissions in the court's discretion. See Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc., 607 F.2d 885, 906 (10th Cir.1979), cert. denied, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980); Lockert v. Faulkner, 574 F.Supp. 606, 609 n. 3 (N.D.Ind.1983). We agree and hold that statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court.

American Title Insurance Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988)

Despite the defendant in American Title making substantial admissions in its trial brief, the plaintiff did not act upon these at the start of trial, and allowed the defendant instead to submit evidence to the contrary of its admission during trial. Therefore, the trial court did not abuse its discretion by ignoring the defendant's trial brief admissions. *Id.*, 861 F.2d at 227

Here, fortunately Plaintiffs are making no such mistake, and indeed the Court sua sponte picked up on and emphasized Defendant Trust # 2's trial brief admissions. The Court should accept Trust # 2's admissions, withdraw this issue from trial, and grant Plaintiffs' claim to quiet their Auburn property from all right, title and interest claimed by Trust # 2.

**PLAINTIFFS' REQUESTED PROFFER BRIEFING -- 2**

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington  98008
Telephone:  (425) 829-5305
E-mail:  rp98007@gmail.com

**Trust # 2 Never Had Any Right, Title or Interest in the Auburn Property**

On November 9, 2006, Plaintiff Tatyana Lysyy executed an Adjustable Rate Note for $249,500 payable to PMC Bancorp, a California corporation, secured by a Deed of Trust. (Exhibit A-1)

On November 13, 2006, Plaintiffs Tatyana and Vasiliy Lysyy executed a Deed of Trust granting a security interest in the Property to Mortgage Electronic Registration Systems ("MERS") as beneficiary, recorded on November 17, 2006, with the King County Recorder, file number 20061117002321. (Exhibit A-2)

On September 14, 2011, MERS assigned the Deed of Trust to Deutsche Bank as Trustee for Trust #1, recorded on September 19, 2011, file number 20110919000413. No further assignments are recorded. (Exhibit A-3)

Trust #1 appointed Defendant Quality Loan Service of Washington ("Quality") as trustee, executed July 20, 2015, recorded on July 31, 2015, file number 20150731002284. (Exhibit 9)

On May 19, 2017, Quality served a Notice of Default in the name of Trust #2, which was not recorded. (Exhibit 21)

Quality recorded 12 Notices of Trustee's Sale for Trust #2 as follows:

a. On September 25, 2015, recorded with file number 20150925001904, with an intended sale date of January 29, 2016. (Exhibit A-24)

b. On November 19, 2015, recorded with file number 20151119000545, with an intended sale date of March 18, 2016. (Exhibit A-25)

c. On February 4, 2016, recorded with file number 20160204000449, with an intended sale date of June 3, 2016. (Exhibit A-26)

d. On June 30, 2016, recorded with file number 20160630002175, with an intended sale date of October 28, 2016. (Exhibit A-27)

e. On October 17, 2017, recorded with file number 20171017000198, with an intended sale date of February 16, 2018. (Exhibit A-28)

PLAINTIFFS' REQUESTED
PROFFER BRIEFING -- 3

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington  98008
Telephone:  (425) 829-5305
E-mail:  rp98007@gmail.com

f. On July 24, 2018, recorded with file number 20180724000928, with an intended sale date of November 30, 2018. (Exhibit A-29)

g. On May 8, 2019, recorded with file number 20190508001163, with an intended sale date of September 13, 2019. (Exhibit A-30)

h. On February 21, 2020, recorded with file number 20200221000924, with an intended sale date of March 27, 2020. (Exhibit A-31)

i. On December 15, 2020, recorded with file number 20201215002363, with an intended sale date of April 30, 2021. (Exhibit A-32)

j. On September 10, 2021, recorded with file number 20210910001548, with an intended sale date of October 29, 2021. (Exhibit A-33)

k. On January 6, 2023, recorded with file number 20230106000014, with an intended sale date of May 19, 2023. (Exhibit A-34)

l. On June 9, 2023, recorded with file number 20230609000151, with an intended sale date of October 20, 2023. (Exhibit 24)

As the recorded documents demonstrate, the Deed of Trust (Exhibit A-2) is held by Trust # 1, from the September 19, 2011 recording (Exhibit A-3). Trust # 1 in turn appointed Quality as successor trustee by the July 31, 2015 recording. (Exhibit 9)

Trust # 2 was never transferred the Deed of Trust, as Trust # 1 is the last recorded title holder. While Quality for some bizarre reason issued a Notice of Default (Exhibit 21) and 12 Notices of Trustee's Sale in the name of Trust # 2, Trust # 2 has never held the Deed of Trust.

In previous litigation (where they were represented by one of the nation's premier law firms), a federal District Court ruled that "***Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1***" (Trust # 2) lacked legal standing to foreclose on a Deed of Trust which was assigned of record to "***Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement relating to IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates Series 2007-1***" (Trust # 1), because these were different trust entities.

PLAINTIFFS' REQUESTED
PROFFER BRIEFING -- 4

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington  98008
Telephone:  (425) 829-5305
E-mail:  rp98007@gmail.com

Deutsche Bank National Trust Co. v. Independence II Homeowners' Association, Case No. 2:16-cv-00536-MMD-GWF (D. Nev. Mar 18, 2019) (Exhibit 10, also available from PACER)

In addition to being very soundly reasoned persuasive precedent, the decision of the federal district court in this Nevada Deutsche Bank case is binding on Trust # 2 through the doctrine of collateral estoppel. Trust # 2 lost on this identical issue in the Nevada lawsuit, which was fully and fairly litigated, and must lose on this same issue in all future proceedings:

> "In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources. To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in the prior suit, the defendant's time and money are diverted from alternative uses -- productive or otherwise to relitigation of a decided issue. And, still assuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff's allocation of resources. Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.' Kerotest Mfg. Co. v. C-O-Two Co., 342 U. S. 180, 342 U. S. 185 (1952). Although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard."

Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U. S. 313, 328-29, 91 S. Ct. 1434; 28 L. Ed. 2d 788 (1971).

Collateral estoppel therefore mandates the same result for Trust # 2 in this matter, making relitigation of legal standing unnecessary in this action. Defendant Trust # 2's candid admission that it has no right, title or interest in the Auburn property should therefore be accepted by this Court, conclusively deciding this issue.

While in one sense Plaintiffs might not be suing the "correct defendant", in the Trust # 2 has no right, title or interest in the Auburn property in the first place, there is the extremely annoying issue that Trust # 2 has induced Quality to file 12 baseless foreclosure notices against Plaintiffs' property, continually placing it at threat of purported sale. Trust # 2's title should be quieted, to prevent further such abuse. Trust # 1 remains unaffected by this litigation result, but must ultimately face consequences of doing absolutely nothing for 14 years to enforce the loan.

PLAINTIFFS' REQUESTED
PROFFER BRIEFING -- 5

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington  98008
Telephone:  (425) 829-5305
E-mail:  rp98007@gmail.com

## Failure to Plead Compulsory Counterclaim

Defendant Trust #2 has failed to plead a compulsory counterclaim to enforce the promissory note or Deed of Trust in this quiet title action, thereby waiving any such claim. Plaintiffs initiated this lawsuit in King County Superior Court on July 20, 2022, seeking to quiet title to their Auburn property against Trust #2's baseless foreclosure attempts. No non-judicial foreclosure action was pending at that time. The case was removed to this Court in January 2024, and Trust #2 filed its answer on January 19, 2024 (dkt. 7), omitting any counterclaim for loan enforcement or foreclosure.

Under Federal Rule of Civil Procedure 13(a), a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and meets other criteria, including existence at the time of pleading. The U.S. Supreme Court has held that compulsory counterclaims must be asserted to avoid waiver, as they promote judicial economy by resolving related claims in one action. Southern Construction Co. v. Pickard, 371 U.S. 57, 60 (1962). The Ninth Circuit applies the "logical relationship" test, deeming claims compulsory if they share operative facts or involve the same contract. Cheiker v. Prudential Insurance Co. of America, 820 F.2d 334, 337 (9th Cir. 1987); Albright v. Gates, 362 F.2d 928, 929 (9th Cir. 1966).

Plaintiffs' quiet title claim challenges the enforceability of the 2006 promissory note and Deed of Trust, alleging that Trust #2 lacks any right, title, or interest in the property and that the statute of limitations bars enforcement. A counterclaim by Trust #2 to enforce the note or foreclose on the Deed of Trust would arise from the same transaction—the loan agreement and its alleged default. Both claims involve the same operative facts: the 2006 loan, the Deed of Trust, the assignment to Trust #1 (Ex. A-3), and Trust #2's improper foreclosure notices (Ex. A-24 to A-34, Ex. 24). Such a counterclaim is compulsory, as it is "logically related" to Plaintiffs' claim. See Cheiker, 820 F.2d at 337 (counterclaim for contract rescission compulsory in breach of contract suit); Southern Construction, 371 U.S. at 60 (counterclaim for contract damages compulsory in subcontractor's suit).

**PLAINTIFFS' REQUESTED PROFFER BRIEFING -- 6**

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com

Trust #2's failure to plead this counterclaim in its answer (dkt. 7) constitutes a waiver. <u>Southern Construction</u>, 371 U.S. at 60; *Local Union No. 11, IBEW v. G.P. Thompson Elec., Inc.*, 363 F.2d 181, 184 (9th Cir. 1966) (failure to plead compulsory counterclaim bars subsequent action). No exceptions under Rule 13(a) apply: no foreclosure action was pending on July 20, 2022, and no jurisdictional barriers exist, as the counterclaim would be against Plaintiffs, who are already parties. *See* <u>Albright</u>, 362 F.2d at 929 (compulsory counterclaims fall within ancillary jurisdiction). Trust #2's judicial admissions that it has "no right, title or interest" in the property (dkt. 138, p. 10, ll. 24-25; dkt. 88, p. 15, ll. 23-24) further undermine any potential counterclaim, but its failure to plead one is dispositive.

Trust #2's omission is particularly egregious given its 12 baseless Notices of Trustee's Sale (2015–2023) in the name of a trust with no recorded interest (Ex. A-24 to A-34, Ex. 24). Having repeatedly threatened foreclosure without legal standing, Trust #2 cannot now evade the consequences of failing to assert its claim in this action. *See* <u>Deutsche Bank Nat'l Trust Co. v. Independence II Homeowners' Ass'n</u>, Case No. 2:16-cv-00536-MMD-GWF (D. Nev. Mar. 18, 2019) (Trust #2 lacked standing to foreclose due to Trust # 1 holding Deed of Trust). The Court should hold that Trust #2 waived any right to enforce the promissory note or Deed of Trust by failing to plead a compulsory counterclaim, further supporting Plaintiffs' quiet title claim.

### **Evidence Proving Loan Acceleration**

Pursuant to the Court's order (dkt. 146), Plaintiffs proffer evidence that the 2006 promissory note and Deed of Trust were accelerated on October 15, 2010, rendering the loan unenforceable under Washington's six-year statute of limitations (RCW 4.16.040) and supporting their quiet title claim against Defendant Trust # 2. The evidence, detailed below, establishes that the statute of limitations expired on October 15, 2016 and, combined with Trust #2's judicial admissions of no right, title, or interest in the Auburn property (dkt. 138, p. 10, ll. 24-25, p. 11, ll. 12–13; dkt. 88, p. 15, ll. 23-24), warrants judgment in Plaintiffs' favor.

On September 15, 2010, Bank of America, the original loan servicer, issued a notice to Plaintiff Tatyana Lysyy stating that the loan would be accelerated in 30 days if not brought

PLAINTIFFS' REQUESTED
PROFFER BRIEFING -- 7

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington  98008
Telephone:  (425) 829-5305
E-mail:  rp98007@gmail.com

current (Exhibit 4). The notice, addressed to the Auburn property (12921 SE 318th Way, Auburn, WA 98092), demanded payment of $8,349.03 by October 15, 2010, to avoid acceleration. No evidence suggests this amount was paid, and subsequent records confirm acceleration occurred on that date. Under Washington law, acceleration makes the entire loan balance due, triggering the statute of limitations. Cedar West Owners Ass'n v. Nationstar Mortg., LLC, 7 Wn. App. 2d 473, 434 P.3d 554, 560; RCW 4.16.040.

       The loan transaction history from Bank of America (Ex. 20, pp. 2-3), prior to the loan's assignment to Trust #1 in 2011 (Ex. A-3), shows monthly late charges (code LTCANP) of normally $66.27 (sometimes varying), representing 5% of the monthly payment as per the promissory note, assessed if payments were not made within 15 days of the due date. The last late charge was assessed for the September 1, 2010, payment, for which late charges would be assessed after September 16, 2010 (15 days after due date). No late charges appear for October 2010 or subsequent months, consistent with acceleration on October 15, 2010. As an accelerated loan is fully due, no further periodic payments remain to trigger future late charges.

       Defendants' exhibits provide the same loan transaction history from Bank of America in a more readable format. (Exhibit A-35, pages 00088 to 00099)  And at Ex. A-35, p. 00090, we can see where the last six months late charges, for payments due from April 2010 to September 2010, were added to the loan account on February 8, 2013 (incidentally over 2 years after these payments were due).  It may have taken Bank of America quite a while to process exactly where the loan acceleration was required to be applied, but these February 8, 2013 accounting entries implement the effective October 15, 2010 acceleration date (no late fee allowed for October 2010 payment until October 17, 2020) perfectly.  The accumulated unpaid late charge balance after these transactions is $491.01, which perfectly matches the current total late charge balance.

       The current servicer, Select Portfolio Servicing, Inc. (SPS), which began servicing on November 16, 2016 (Ex. A-6, p. 1), confirms this in its financial breakdown statement (Ex. A-6, pp. 1-9, dated January 24, 2024). The statement lists total late charges of $491.01, all assessed by Bank of America prior to acceleration (Ex. A-6, p. 2). No additional late charges have been

PLAINTIFFS' REQUESTED  
PROFFER BRIEFING -- 8

Lake Hills Legal Services PC  
15600 N.E. 8th St., # B1-358  
Bellevue, Washington 98008  
Telephone: (425) 829-5305  
E-mail: rp98007@gmail.com

imposed from November 16, 2016, to the present date, further evidencing that the loan was accelerated before SPS's involvement. SPS's monthly statements (Ex. A-36), spanning December 5, 2016, to 2024, show no late charges and, starting with the November 15, 2017, statement, explicitly note the loan's accelerated status (Ex. A-36, pages 43 to 45, 11/15/2017 statement). Every statement thereafter reflects loan acceleration, with a due date of April 1, 2010, and the full balance demanded (Ex. A-6, p. 1; Ex. A-36, pages 46 to 295).

(It is unclear why the first 10 months of SPS statements, from 12/05/2016 to 09/15/2017, do not disclose the loan acceleration. Ex. A-36, pages 1 to 42. However, it took Bank of America, which had accelerated the loan, over two years to get its own accounting entries all correct. BOA apparently used an earlier acceleration date, and made corrections 02/08/2013 after realizing acceleration was not effective until 10/15/2010. We don't have the benefit of any BOA monthly statements from 15 years ago. But it isn't surprising that SPS took the better part of a year to make sense out of an extremely complicated loan file and properly note this fact.)

No notice of acceleration post-dates the September 15, 2010, letter (Ex. 4). SPS has provided no evidence of any later acceleration notice, and the absence of late charges since October 2010, coupled with the 2017 statements' acknowledgment, confirms that the October 15, 2010, acceleration date is the operative event. The seven-year delay in SPS's statements reflecting acceleration does not negate the 2010 notice, as the loan's status changed upon acceleration, not upon servicer reporting. *See* Merceri v. Deutsche Bank Nat'l Trust Co., 408 P.3d 366, 369 (Wash. Ct. App. 2018) (acceleration effective upon notice and non-payment).

The acceleration on October 15, 2010, pursuant to the September 15, 2010 notice, triggered Washington's six-year statute of limitations, expiring on October 15, 2016. RCW 4.16.040; Cedar West, 434 P.3d at 560. As no enforcement action was taken by Trust #2 or Trust #1 before 2016, the loan is unenforceable. Trust #2's 12 baseless Notices of Trustee's Sale (2015–2023, Ex. A-24 to A-34, Ex. 24) do not toll the limitations period, as Trust #2 lacks standing to foreclose, having no recorded interest in the Deed of Trust (Ex. A-3; Deutsche Bank Nat'l Trust Co. v. Independence II Homeowners' Ass'n, Case No. 2:16-cv-00536-MMD-GWF

PLAINTIFFS' REQUESTED
PROFFER BRIEFING -- 9

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington  98008
Telephone:  (425) 829-5305
E-mail:  rp98007@gmail.com

(D. Nev. Mar. 18, 2019)). Trust #2's admissions of no title interest (dkt. 138, 88) and failure to plead a compulsory counterclaim for enforcement (dkt. 7) further preclude any claim to the property. *See* Southern Construction Co. v. Pickard, 371 U.S. 57, 60 (1962); Cheiker v. Prudential Insurance Co. of America, 820 F.2d 334, 337 (9th Cir. 1987).

The Court should enter judgment for Plaintiffs, quieting title to the Auburn property free of Trust #2's claims, as the loan's acceleration on October 15, 2010, renders it time-barred, and Trust #2 has no enforceable interest.

### **Non-Tolling of Statute of Limitations by Foreclosure or Bankruptcy**

Even if Trust #2 held the Deed of Trust, or if Trust #1, the actual holder (Ex. A-3), had initiated the 12 Notices of Trustee's Sale (Ex. A-24 to A-34, Ex. 24), neither these actions nor the Plaintiff Tatyana Lysyy's bankruptcy filings (in 2019, 2021, and 2023) tolled the statute of limitations under RCW 4.16.040. The loan's acceleration on October 15, 2010 (Ex. 4, 20, A-6, A-36), rendered it unenforceable by October 15, 2016, as established above. This section addresses why foreclosure attempts and bankruptcy do not extend this period, further supporting Plaintiffs' quiet title claim against Trust #2's baseless assertions (dkt. 138, p. 10, ll. 24-25; dkt. 88, p. 15, ll. 23-24).

Absent acceleration, Washington law treats each promissory note installment as a separate cause of action, with its own six-year limitations period under RCW 4.16.040. Copper Creek (Marysville) Homeowners Ass'n v. Kurtz, 1 Wn.3d 711, 718, 532 P.3d 601, 606 (2023); Merritt v. USAA Federal Savings Bank, 1 Wn.3d 692, 708-09, 532 P.3d 1024 (2023); Herzog v. Herzog, 23 Wn.2d 382, 388, 161 P.2d 142 (1945). Here, the loan was accelerated on October 15, 2010 (Ex. 4), making the entire balance due and triggering a single six-year period, expiring October 15, 2016. Cedar W. Owners Ass'n v. Nationstar Mortg., LLC, 434 P.3d 554, 560 (Wash. Ct. App. 2019); Edmundson v. Bank of America, 194 Wn. App. 920, 930, 378 P.3d 272 (2016). Even without earlier acceleration, all installments from April 2010 onward (Ex. A-6, p. 9, last payment March 16, 2012) are time-barred, as they pre-date June 24, 2019 (six years before today's date), and there is clear admission of acceleration by the November 15, 2017 statement.

**PLAINTIFFS' REQUESTED
PROFFER BRIEFING -- 10**

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com

Bankruptcy does not toll the statute of limitations for installment debts or liens. The Washington Supreme Court in <u>Merritt</u> held that a bankruptcy discharge eliminates personal liability but leaves the lien and payment schedule unchanged, with each installment accruing per the original contract. <u>Merritt</u>, 1 Wn.3d at 708-09, 532 P.3d 1024; *see also* <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 83 (1991) (liens pass through bankruptcy unaffected). The automatic stay (11 U.S.C. § 362(a)) temporarily bars enforcement but does not toll the limitations period for post-petition installments. <u>In re Spirtos</u>, 221 F.3d 1079, 1080-81 (9th Cir. 2000) (30-day grace period post-stay under 11 U.S.C. § 108(c), if statute of limitations has otherwise run). Here, the bankruptcy filings in 2019, 2021 and 2023 (Ex. A-6, p. 1), post-dates the October 15, 2016, expiration, rendering it irrelevant to tolling. *See* <u>Copper Creek</u>, 1 Wn.3d at 718, 532 P.3d 601.

RCW 4.16.230, which tolls limitations during a statutory or judicial prohibition, applies only if enforcement was barred when the debt accrued. <u>Merritt</u>, 1 Wn.3d at 703-04, 532 P.3d 1024. Since the unpaid installments (or the accelerated debt) accrued before the 2019, 2021 and 2023 bankruptcies, and the stay only temporarily blocked enforcement, no tolling applies. *Id.* at 708. To the extent <u>Merceri v. Deutsche Bank AG</u>, 2 Wn. App. 2d 143, 408 P.3d 366 (2018), suggested tolling under RCW 4.16.230, <u>Merritt</u> supersedes, affirming that the payment schedule remains unchanged. <u>Merritt</u>, 1 Wn.3d at 708-09.

Nonjudicial foreclosure attempts do not toll the statute of limitations. In <u>Loun v. U.S. Bank Nat'l Ass'n</u>, 26 Wn. App. 2d 228, 240-41, 525 P.3d 1280 (2023), the Washington Court of Appeals held that neither judicial nor nonjudicial foreclosure actions constitute a statutory bar under RCW 4.16.230, disapproving contrary suggestions in <u>Bingham v. Lechner</u>, 111 Wn. App. 118, 131, 45 P.3d 562 (2002). <u>Loun</u>, 26 Wn. App. 2d at 241 n.4; *see also* <u>U.S. Bank Nat'l Ass'n v. Ukpoma</u>, 8 Wn. App. 2d 254, 260, 438 P.3d 141 (2019) (RCW 61.24.030 lacks tolling provision). Trust #2's 12 Notices of Trustee's Sale (2015–2023, Ex. A-24 to A-34, Ex. 24), issued without standing (<u>Deutsche Bank Nat'l Trust Co. v. Independence II Homeowners' Ass'n</u>, Case No. 2:16-cv-00536-MMD-GWF (D. Nev. 2019)), and any hypothetical notices by Trust #1, do not extend the limitations period.

**PLAINTIFFS' REQUESTED
PROFFER BRIEFING -- 11**

**Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com**

In conclusion, the loan's acceleration on October 15, 2010, rendered it unenforceable by October 15, 2016, under RCW 4.16.040. Neither bankruptcy nor nonjudicial foreclosure attempts tolled this period, and Trust #2's lack of standing, judicial admissions of no title interest (dkt. 138, 88), and failure to plead a compulsory counterclaim (dkt. 7) preclude enforcement. <u>Southern Construction Co. v. Pickard</u>, 371 U.S. 57, 60 (1962); <u>Cheiker v. Prudential Ins. Co. of America</u>, 820 F.2d 334, 337 (9th Cir. 1987). Even if Trust #1 held enforceable rights, its inaction for 14 years and the expired limitations period bar relief. The Court should grant Plaintiffs' quiet title claim, freeing the Auburn property from Trust #2's claims, per the court's order (dkt. 146).

Respectfully submitted this 24th day of June 2025.

/s/ Richard L. Pope, Jr.
RICHARD L. POPE, JR.
WSBA # 21118
Attorney for Plaintiffs

Lake Hills Legal Services P.C.
15600 N.E. 8th Street, Suite B1-358
Bellevue, Washington 98008
Tel: (425) 829-5305
Fax: (425) 526-5714
E-Mail: rp98007@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I caused the above document to be delivered through electronic court filing (ECF) to:

**Midori R Sagara** msagara@buchalter.com, kreger@buchalter.com, midori.sagara@gmail.com

**Richard Lamar Pope , Jr** rp98007@gmail.com

**Robert William McDonald** rmcdonald@qualityloan.com, cvnotice@mccarthyholthus.com, rockymcdonald@gmail.com

**Timothy J Feulner** tim@feulnerlawoffice.com

DATED: June 24, 2025.

/s/ Richard L. Pope, Jr.
RICHARD L. POPE, JR.

PLAINTIFFS' REQUESTED
PROFFER BRIEFING -- 12

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com