## Advocacy Dispute/Correspondence Check List

| Loan Number | | Dispute Type | State | Status | Archive/Active |
|---|---|---|---|---|---|
| | | Prior Servicer Mod_FB Dispute | WA | FC | ACTIVE |

| | |
|---|---|
| Borrower Name: | TATYANA LYSYY |
| Co-Borrower Name: | |
| Date Received by SPS: | December 20, 2016 |
| Date Received by Advocacy: | December 21, 2016 |
| Received by: | Digimail |
| Team Management: | Lampkins |
| Department: | Research |
| Dispute Party: | Customer |

### Escalated HAMP Disputes — Required Action
| | | |
|---|---|---|
| 1. Was the loan reviewed by a member of management to determine if classification is Escalated HAMP? | yes | |
| 2. Did mgmt provide 1 of the 3 specific dispute types? | Yes | |
| 3. Was either the CS008 or CS047 letter generated? | Yes | *Ensure CS008 or CS047 is sent the same day as input* |
| 4. If CORESH is opened-DO NOT input ADVCOR comment code; dispute type will receive the normal CS008/CS047 ack ltr | NO | |
| 5. If Dispute Party is either MHA Help or HSC HAMP Solution Center - open to OMB and send normal CS008/CS047 ack ltr | NO | |

### Special Handling — Required Action
| | | |
|---|---|---|
| 1. Is the loan either Fannie Mae or Freddie Mac? If so was the ADVCOR comment code entered? | **No** | |
| 2. Did the multiple dispute mention fraud? | no | |
| 3. Loan is PIF, SOLD or Service Released greater than 1 Year? | No | |
| 4. If a COR Task was opened was either the ADVCOR or CORMAN comment code documented? | no | |
| 5. If a SPS Task was opened was the SPSMAN comment code documented? | NO | |
| 6. If a QWR (ADV or INQ) task was opened was the QWRMAN comment code documented? | NO | |
| 7. Is the loan a VOD and property state MA? | NO | |

### Compliance — Required Action
| | | |
|---|---|---|
| 1. Is this issue from a Regulatory Agency (e.g. Dept.of Finance, Attorney General, etc.)? | NO | |
| 2. Is the dispute/correspondence regarding SCRA? | NO | |
| 3. Is the loan in FC status and is there a scheduled FC Sale Date within the next 30 days? | NO | |
| 4. Is the loan in FC status and is there a scheduled FC Sale Date greater than 30 days out? | NO | |

### North Carolina Review — Required Action
| | | |
|---|---|---|
| 1. Is loan(s) active with a greater than 0 balance and in the state of North Carolina? | **No** | |
| 2. Is there a Note in New Image Express?, If No then has DOCSCN task been opened? | yes | |
| 3. Does the status meet the criteria to be assigned to Advocacy? | no | |
| 4. Does the loan meet the criteria to be assigned to CDM? | NO | |
| 5. Was the NCMANU comment code placed on the loan? | no | |

### Washington Review — Required Action
| | | |
|---|---|---|
| 1. Is the property address in Washington State? | **Yes** | *Assign to Linda* |
| 2. Is there a Note in New Image Express?, If No then has DOCSCN task been opened? | yes | |
| 3. Does the loan meet the criteria to be assigned to CDM? | NO | |
| 4. Was the WAMANU comment code placed on the loan? | NO | |
| 5. Is the correspondence a request for a "in person" loss mit meeting? | NO | |

### High Risk Review — Required Action
| | | |
|---|---|---|
| 1. Does the correspondence request to respond to Linda Sadr? | NO | |
| 2. Is the correspondence from Maximum Impact, Property Logistics or RLG Financial? | NO | |
| 3. Does the correspondence reference a case number & request the response go to Property Logistics? | NO | |
| 4. Is the correspondence from an attorney included on the "Attorney Assignment" List? | NO | |
| 5. This there a "Criteria Loan" or "Pledge Loan" iIndicator on the loan? | NO | |

### Bankruptcy Review — Required Action
| | | |
|---|---|---|
| 1. Was this loan ever in BK Status? | no | |
| If yes, provide dates and BK Chapter: | no | |
| 2. Did Loan PIF WHILE it was in Active BK? | NO | |
| 3. Does loan have a zero balance? | NO | |
| 4. Did loan PIF with a 181 transaction code? | NO | |
| 5. Has a Pre-Motion for relief letter been sent (BK065/BK075) ON PL05 within the last 30 days? | NO | |
| 6. Is correspondence from Bankruptcy Trustee requesting an accounting of the payment application? | NO | |

### Litigation/Legal Review — Required Action
| | | |
|---|---|---|
| 1. Is loan(s) in Litigation Status? | **No** | |
| 2. Was loan ever in Litigation Status? | NO | |
| 3. Is dispute regarding DSI and inquiring about the amortization? | NO | |
| 4. Is loan a BK 7 or Discharged BK 7 and correspondence is received from the attorney representing the Trustee? | **No** | |

### Ombudsman Review — Required Action
| | | |
|---|---|---|
| 1. Is there an Ombudsman Flag? | NO | |
| 2. Is there an Ombudsman Task? | NO | |
| 3. Is letter addressed to CEO, Office of the President, Tim O'Brien or Darrin Dafney and is not a "Laundry List" issue | NO | |
| 4. Is letter addressed to CEO, Office of the President, Tim O'Brien or Darrin Dafney and is a "Laundry List" issue | NO | |

| | | |
|---|---|---|
| Was there a delay of 5 or more business days for the correspondence to be routed to Advocacy? | no | |
| | Department: | |

**Workflow Associate**   Girish

Tatyana Lysyy
4109 68th Ave East
Fife, WA 98424

**BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

December 11, 2016

Bank of America
PO Box 942019
Simi Valley, CA 93094-2019

DIGIMAIL    DEC 20 2016

Select Portfolio Servicing Inc
PO Box 65277
Salt Lake City, UT 84165-0277

Re:  Tatyana Lysyy
     Property address: 12921 SE 318TH Way, Auburn, Washington 98092
     Bank of America Loan #:
     **SPS  Loan #:**

Dear Bank of America, N.A. and SPS:

I write to give Bank of America, N.A ("Bank of America ") and SPS notice pursuant to paragraphs 15 and 20 of the Deed of Trust that Tatyana Lysyy requests that Bank of America pay her damages for claims arising from illegal conduct engaged in by Bank of America and/or its agents and/or contractors that occurred from 2013 to 2016.

Pursuant to Section 20 of the Deed of Trust,

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

We present this grievance without in any way acknowledging that such notice is required as a condition precedent to the filing of an action against Bank of America, and without in any

Tatyana Lysyy v. Bank of America, N.A
Page 2 of 6

way waiving any objections to the notice procedures set out in those paragraphs, including without limitation procedural unconscionability, futility, lack of consideration, and that the notice provisions violate public policy.

<u>Bank of America and/or Its Agents and/or Contractors Unlawfully Broke-in to Ms. Lysyy's Residence</u>

Ms. Lysyy has owned and occupied her home at 12921 SE 318TH WAY, Auburn, WA 98092 since 2004. Following economy downturn in 2009 Ms. Lysyy income was significantly reduced an with adjustable rate mortgage. The monthly payment became unaffordable, so Ms. Lysyy sought a loan modification from Bank of America. She submitted her loss mitigation application to Bank of America.

Ms.Lysyy arrived at her home and found her front door was locked. All locks on the front door and back doors were changed. Ms Lysyy couldn't get inside of her house.

There was a note to call the Bank of America Home Preservation Specialist Department, and Ms Lysyy called them immediately. Bank of America promised to a key in the mail to her to enable her to recover occupancy.

In the interim, Ms. Lysyy kept trying to get ahold of Home Preservation Company provided by Bank of America, to no avail.

Finally Ms. Lysyy decided to get help from her contractor and regained occupancy.

<u>The Actions of Bank of America and its Agents Directly and Proximately Cause Ms. Lysyy to Suffer Emotional and Financial Damages</u>

Upon entering her home, Ms. Lysyy found that all the pluming was taped and disabled. The kitchen sink plumbing was disconnected from underneath and all the hardware was wrapped up over and over with sticky masking tape. The dishwasher and disposal plumbing was disabled. The toilets were wrapped up in plastic packaging tape with glue. The carpets had mud tracked through the living room all the way upstairs to the bedrooms and laundry room.. The bathroom sinks were taped up and plumbing disconnected.

Ms. Lysyy made it clear to Bank of America that she could not live in the house in that state. She told them they needed to come back to undo what they did. Bank of America informed Ms. Lysyy that she had to wait a few days and someone would come to the house to restore it to its prior condition to enable her to occupy the home. Bank of America never sent a contractor to reconnect the bathroom plumbing, made no efforts to clean the mess that had been left or restore all of the plumbing.

Ms. Lysyy's friend also helped her with the front door entrance by replacing the pad lock left, and putting in a new door lock from the security company she uses.

Some of Ms. Lysyy personal property were removed or stolen from her home

Tatyana Lysyy v. Bank of America, N.A
Page 3 of 6

The break-in occurred even though Bank of America was fully aware that Ms. Lysyy was still occupying her home because her belongings were still in the home and she was in continuous contact with Bank of America about a loan modification.

In the aftermath of this invasion, destruction and burglary of her home, Ms. Lysyy remains traumatized. Even with the locks changed, she does not feel secure in her own home because she fears that Bank of America will come in and do this again.

The break-in prevented Ms. Lysyy's from fully engaging in self-employment because she utilizes her home for her cleaning business. Altogether, Ms. Lysyy estimates she incurred over $5,000 in income and personal property losses as a result of Bank of America's unlawful conduct.

<u>The Actions of Bank of America Deprived Ms. Lysyy of Possession of her Home in Violation of Washington Law.</u>

Washington is a lien-theory state, which vests the exclusive right of possession in the borrower prior to completion of a foreclosure. *Western Loan & Bldg. Co. v. Mifflin*, 162 Wash. 33, 39 (1931) (explaining that "the mortgage is nothing more than a lien upon the property to secure payment of the mortgage debt, and in no sense a conveyance entitling the mortgagee to possession or enjoyment of the property as owner."). Lenders are prohibited by statute from taking possession of the homeowner's property prior to foreclosure:

> A mortgage of any interest in real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without a foreclosure and sale according to law[.]

RCW 7.28.230(1). Importantly, the borrower's statutory right of possession is exclusive. *See e.g., Norfor v. Busby*, 19 Wash. 450, 452-453 (1898) ("The statute is also expressive of the public policy of the state vesting the right of the possession in the mortgagor *absolutely* until decree and sale." (describing the above-quoted statute, which has not been modified since its enactment in 1869)) (emphasis added).

The borrower's exclusive right to possession is so paramount that Washington courts affirm this right *even when* the borrower has abandoned the property. *Howard v. Edgren*, 62 Wn.2d 884, 885 (1963) ("A Mortgagor does not lose his right to the possession of mortgaged real property by failing to make payments on the mortgage, or by moving out of the community . . . . Nor does a mortgagee have *any* right to possession of the mortgaged real property without a foreclosure and sale .... " (citing RCW 7.28.230)) (emphasis added); *see also Coleman v. Hoffman*, 115 Wn. App. 853, 864 (2003) (explaining that RCW 7.28.230 gives the mortgagor the *sole* right to possession) (emphasis added).

In *Jordan*, the Court held that notwithstanding entry provisions contained in the Deed of Trust:
> Washington law prohibits lenders from taking possession of property prior to foreclosure. These entry provisions enable the lender to take possession after default, and the lender's action here constitutes taking possession.

Tatyana Lysyy v. Bank of America, N.A
Page 4 of 6

Therefore, the (Deed of Trust) entry provisions are in direct conflict with state law and are unenforceable.

*Jordan v. Nationstar Mortgage, LLC.,* No. 92081-8, __ Wn.2d __, __ P.3d __, 2016 Wash. LEXIS 817 (2016).

The holding in *Jordan v. Nationstar Mortgage, LLC.,* No. 92081-8, __ Wn.2d __, __ P.3d __, 2016 Wash. LEXIS 817 (2016) makes it crystal clear that: (1) third-party lock changes constitute the unlawful assumption of physical possession; and (2) lenders cannot take possession of real property prior to foreclosure notwithstanding contractual consent to the contrary. *Id.*

In Washington, property rights are constitutionally sacrosanct: "[n]o person shall be disturbed in his private affairs, **or his home invaded**, without authority of law." (emphasis added). Const. art. I, § 7.

We allege that Bank of America and/or its agents is liable to Ms. Lysyy for the following violations of law:

## DISCRIMINATION

We believe Bank of America and/or SPS discriminated against Ms. Lysyy because she is Russian.

## TRESPASS

Bank of America and/or its agents wrongfully and without authorization entered upon the Lysyy Residence. Bank of America's and/or its agents' actions constitute trespass. As a direct and proximate result of this trespass, Ms. Lysyy suffered damages.

## RCW 4.24.630 - INTENTIONAL TRESPASS

Bank of America and/or its agents intentionally and unreasonably entered upon the Lysyy residence, knowing or having reason to know that it and/or they lacked authorization to do so, and wrongfully removed existing locks from the Lysyy residence.

Bank of America and/or its agents wrongfully caused waste and/or injury to the Lysyy residence.

Bank of America and/or its agents wrongfully caused injury to Lysyy 's personal property and/or improvements Lysyy made to the residence when it and/or they wrongfully removed the existing locks at the Lysyy residence and installed the lockbox

Bank of America liable to Tatyana Lysyy for treble the amount of damages caused by Bank of America and/or its agents.

## THEFT and/or CONVERSION

Tatyana Lysyy v. Bank of America, N.A
Page 5 of 6

Bank of America and/or its agents removed and converted to their personal use personal property belonging to Ms. Lysyy, including her cutting board and orchid collection. As a direct and proximate result of this theft and/or conversion, Ms. Lysyy suffered damages.

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

Bank of America and/or its agents' actions in entering the Tatyana Lysyy residence and changing the locks without authorization constitute a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq. As a direct and proximate result of the violations of the Fair Debt Collection Practices Act, Ms. Lysyy suffered damages.

## VIOLATION OF CONSUMER PROTECTION ACT

Bank of America and/or its agents' actions in entering the Tatyana Lysyy residence and changing the locks in violation of RCW 7.28.230(1) constitute unfair or deceptive acts in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

Bank of America and/or its agents' actions in entering the Tatyana Lysyy residence in the course of loss mitigation communications with Ms. Lysyy constitute unfair or deceptive acts in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

Bank of America and/or its agents' actions in damaging the real and personal property of Ms.Lysyy constitute unfair or deceptive acts in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

Bank of America and/or SPS engaged in foreclosure mediation under Washington law in bad faith and made misrepresentations to the mediator and borrower.

As a direct and proximate result of the violations of the Consumer Protection Act, Ms. Lysyy suffered damages and entitle her to treble damages,

## BREACH OF CONTRACT

Assuming *arguendo* that the Entry Provision is enforceable, the Deed of Trust requires that Bank of America, or its agents or assigns, have reasonable cause to enter upon the Tatyana Lysyy residence. No reasonable cause existed for Bank of America and/or its agents to enter upon the Tatyana Lysyy residence or to determine the Tatyana Lysyy residence was abandoned because Ms. Lysyy maintained continuous communications with Bank of America and its attorneys at all times relevant to the events at issue. Furthermore, Bank of America and/or its agents, did not give any prior notice to Ms.Lysyy before entering her residence. As a direct and proximate result of this breach of contract, Ms Lysyy suffered damages.

## BEACH OF THE CONTRACTUAL DUTY OF GOOD FAITH AND FAIR DEALING

"Under Washington law, there is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." The duty of good faith arises in the performance of specific contractual obligations. It is not a free-floating obligation to be nice to each other, but rather

Tatyana Lysyy v. Bank of America, N.A
Page 6 of 6

a check on whatever discretionary authority is granted to the parties under the contract. *Lucero v. Cenlar, FSB*, 2015 U.S. Dist. LEXIS 112629, 17 (2015) (internal quotation marks and citations omitted). "[T]he duty varies somewhat with the context in which it arises. It may violate the duty of good faith and fair dealing to, for example, (1) evade the spirit of a bargain; (2) willfully render imperfect performance; (3) interfere with or fail to cooperate in the other party's performance; (4) abuse discretion granted under the contract; or (5) perform the contract without diligence." *Id*. Here, Bank of America breached its contractual duty of good faith and fair dealing by unlawfully entering and damaging the real and personal property of Ms. Lysyy. As a direct and proximate result of its breach of its contractual duty of good faith and fair dealing, Ms. Lysyy suffered damages.

Demand is hereby made that you take immediate corrective action, as follows:

1. Immediately grant Ms. Lysyy a loan modification with an interest rate of 2%, a 40-year term, an interest-bearing principal balance of $250,000 and treat the remaining unpaid principal balance as non-interest bearing.

2. Pay Ms. Lysyy $100,000 (one hundred thousand dollars) to compensate her for damages.

I request the corrective action specified in this letter be made by close of business on January 4, 2016. If Bank of America or its successor(s) will not commit to the requested corrective action by that date, we will file an adversary proceeding Bank of America to recover on these claims, on or shortly after January 4, 2016.

Please feel free to contact me if you have any questions.

Sincerely,


Tatyana Lysyy                                     December 11, 2016

Tatyana Lysyy
4109 68th Ave E
Fife, WA 98424






7015 0640 0002 1747 0200

U.S. POSTAGE PAID
MILTON, WA 98354
DEC 16, 16
AMOUNT
$6.68
R2303S104239-04

Select Portfolio Servicing Inc
PO Box 65277
Salt Lake City, UT 84165-0277



RETURN RECEIPT REQUESTED

84165-027777





Notes

M1 Called in   Cust Dispute   Borrower Verification entry made: ADV  referred to Atty for legal action sale date Dec 16, 2016. Borrower was Verified.  Consent to Record: Yes M1 called in disputing that he started a review with previous servicer to keep is home wanted to check status adv him we show a workout opened on 12/5/16 no docs received states this was service transferred and disputing we should have received the transfer on his review No promise made adv M1 we are unable to postpone the forclosure sale date on this property because the sale date is 12/16/16
Discussed NO promise made what can be done we will have someone call him back to discuss this dispute further